Liebler, Ivey, Conner, Berry & St. Hilaire
By:    Floyd E. Ivey
1141 N. Edison, Suite C
P.O. Box 6125
Kennewick, Washington 99336
Local Counsel for Defendant
Impulse Marketing Group, Inc.

Klein, Zelman, Rothermel, & Dichter, L.L.P.
By:    Peter J. Glantz, Esq. & Sean Moynihan, Esq.
485 Madison Avenue
New York, New York 10022
Telephone Number (212) 935-6020
Facsimile Number (212) 753-8101
Attorneys for Defendant
Impulse Marketing Group, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON
## AT RICHLAND

| | |
|---|---|
| JAMES S. GORDON, JR.,<br>an individual residing in<br>Benton County, Washington,<br><br>                Plaintiff,<br><br>        vs.<br><br>IMPULSE MARKETING GROUP, INC.,<br>A Nevada Corporation<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. CV-04-5125-FVS
MEMORANDUM OF LAW OF
IMPULSE MARKETING GROUP,
INC. IN SUPPORT OF MOTION
TO DISMISS PLAINTIFF'S
COMPLAINT

DATE: January 26th, 2005

{00068278;1}

## I.    Preliminary Statement

This Memorandum of Law is submitted by defendant Impulse Marketing Group, Inc. ("Impulse" or the "defendant") in support of its motion to dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure, §12(b)(6) on the grounds that: 1) plaintiff's claims are barred by the legal doctrine of res judicata; 2) plaintiff's claims are preempted by Federal law; and 3) plaintiff cannot possibly plead a proper violation by defendant of the State of Washington Commercial Electronic Mail Statute, RCW §§19.190.20, 19.190.30, 19.190.40(1) and the State of Washington Consumer Protection Act, RCW §19.86 et seq. as a matter of law. Defendant also respectfully requests that this Court grant such other and further relief as it deems just and proper.

## II.    Introduction and Procedural History

On December 15, 2003, plaintiff, Mr. James S. Gordon, Jr., filed a Complaint against Commonwealth Marketing Group, Inc. ("CMG") in the Superior Court of Washington in and for Benton County, Case Number 03-2-02677-5. See Exhibit "A," annexed to the Declaration of Phillip Huston, dated January 21, 2005, for a copy of this Complaint. This action was subsequently removed from the Superior Court of Washington to the United States District Court (Spokane) for the Eastern District of Washington pursuant to 28 U.S.C. §§ 1441 and 1446. See Exhibit "B," annexed to the Declaration of Phillip Huston, dated January 21, 2005, for a copy of the Court docket report. The Case Number is 2:04-cv-05003. See Exhibit "B." Plaintiff amended his Complaint on June 24, 2004 and July 25, 2004 (the "Related Action"). See Exhibit "C," annexed to the Declaration of Phillip Huston, dated January 21, 2005, for copies of these Amended Complaints. According to the court docket report, Hon. Alan A. McDonald dismissed

the Related Action <u>with prejudice</u> (emphasis supplied).  <u>See</u> Exhibit "B."  On October 20, 2004, the dismissal was entered and filed.  <u>See</u> Exhibit "B."

On November 23, 2004, plaintiff filed the instant lawsuit against Impulse.  <u>See</u> Exhibit "D," annexed to the Declaration of Phillip Huston, dated January 21, 2005, for a copy of the Complaint in the instant lawsuit (the "Instant Action").

On or about December 10, 2001, two (2) years prior to the Related Action, Impulse and CMG entered into a Website Development and Marketing Services Agreement (the "Agreement").  <u>See</u> Exhibit "E," annexed to the Declaration of Phillip Huston, dated January 21, 2005, for a copy of the Agreement.  Pursuant to the terms of the Agreement, Impulse, a permission-based marketing company, contracted with CMG to market and advertise CMG's USA Gold Card program over the Internet (the "Program").  The Program allowed individuals to apply for a USA Gold Card online and, upon acceptance of their application, use their USA Gold Card to shop online and purchase products offered by USA Shop Smart and receive pre-approval for an unsecured Visa credit card.  <u>See</u> Exhibit "E" at p 1.  Pursuant to the terms of the Agreement, Impulse, in certain circumstances, agreed to indemnify and hold CMG harmless from and against any liability, claim, deficiency, loss, damage, penalty, or injury suffered or incurred by CMG arising from, *inter alia*, any act outside the scope of Impulse's duties in connection with the marketing or distribution of the Program.  <u>See</u> Exhibit "E" at pp 6-7.  Impulse retained the law firm of Klein, Zelman, Rothermel & Dichter, L.L.P. ("KZRD") to examine whether Impulse had a contractual obligation to indemnify CMG in the Related Action.  After examining the terms of the Agreement, an understanding between CMG and Impulse to defend and indemnify it in the Related Action could not be reached.  As such, Impulse did not defend, indemnify and/or hold CMG harmless in the Related Action.  Based upon these terms,

and its significant interest in the Related Action arising out of the Agreement, Impulse, while not a party to the Related Action, participated in the defense of the Related Action without fully assuming CMG's defense. See ¶14 of the Declaration of Phillip Huston, dated January 21, 2005 and the Declaration of David O. Klein, dated January 21, 2005.

The Instant Action brought by Mr. Gordon in his individual capacity, is based upon an asserted private right of action, for Impulse's alleged violations of the State of Washington Commercial Electronic Mail Statute, RCW §§19.190.20, 19.190.30, 19.190.40(1) and the State of Washington Consumer Protection Act, RCW §19.86 et seq. See Exhibit "D." Specifically, plaintiff's Complaint alleges that Impulse "knowingly" transmitted to him unsolicited commercial e-mail, and that he was precluded from receiving such e-mail because his Internet domain name, "Gordonworks.com," (the "Domain") was registered with the Washington Association of Internet Service Providers' ("WAISP") database. See Exhibit "D." Plaintiff further alleges that Impulse conspired with CMG to initiate the transmission, or assist in the transmission of commercial e-mail to certain e-mail addresses that used plaintiff's Domain name. See Exhibit "D." For purposes of this motion, defendant accepts the truth of the allegations contained in plaintiff's Complaint. However, even assuming plaintiff's allegations to be true, plaintiff's Complaint must be dismissed as a matter of law pursuant to Federal Rules of Civil Procedure, §12(b)(6) on the grounds that: 1) plaintiff's claims are barred by the legal doctrine of res judicata; 2) plaintiff's claims are preempted by Federal law; and 3) it is impossible for plaintiff to plead valid causes of action for any violation of the State of Washington Commercial Electronic Mail Statute, RCW §§19.190.20, 19.190.30, 19.190.40(1) and the State of Washington Consumer Protection Act, RCW §19.86 et seq.

## III.     Legal Argument

### 1.     Plaintiff's claims are barred by the legal doctrine of res judicata.

Plaintiff's Complaint must be dismissed in its entirety because his claims are barred by the legal principle of res judicata.  Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in a prior action. The doctrine is applicable whenever there is: (1) an identity of claims, (2) a final judgment on the merits: and (3) identity or privity between parties.  <u>Owens v. Kaiser Foundation Health Plan, Inc.</u>, 244 F.3d 708, 713, (9th Cir. 2001).

### A)     Plaintiff's claims are identical in the Instant Action and the Related Action.

To determine whether claims are identical, the Court must consider: (1) whether any rights or interests were established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the both actions; (3) whether both lawsuits involve infringement of the same right; and (4) whether both matters arise out of the same transaction or nucleus of facts.  <u>Feminist Women's Health Center v. Codispoti</u>, 63 F.3d 863, 867, (9th Cir. 1995).  Although not all of these elements are necessary for a finding that there is an identity of claims, it has been widely held that the most significant criteria that a court must consider is whether the two actions arise out of the same transaction or nucleus of facts.  <u>Id</u>. at 86.

### i)     The Instant Action and the Related Action arise out of the same nucleus of facts.

Plaintiff's Complaint, in both the Instant Action and the Related Action, arise out of identical fact patterns.  In both Complaints, plaintiff, *inter alia*, alleges that: 1) he owned the

Domain; 2) the Domain was registered with the WAISP database; 3) he received commercial e-mail messages in the Related Action that were no different from the commercial e-mails he received in the Instant Action; and 4) CMG and Impulse violated the State of Washington Commercial Electronic Mail Statute, RCW §§19.190.20, 19.190.30, 19.190.40(1) and the State of Washington Consumer Protection Act, RCW §19.86 et seq.

### ii)     The evidence presented in the Instant Action and the Related Action is the same.

Secondly, Mr. Gordon must disclose precisely the same evidence to support his claims in the Instant Action that he produced during the discovery phase of the Related Action in order to satisfy his burden of proof in both lawsuits.  Both matters require the same evidence, including: 1) the testimony of those individuals utilizing the Domain; 2) production of the same unsolicited commercial e-mails; 3) any and all evidence supporting plaintiff's allegation that the Domain was registered with the WAISP registry; and 4) any and all documentation and/or testimony relating to Mr. Gordon, CMG and Impulse.

### iii)    The Instant Action and the Related Action involve infringement of the same right.

Lastly, the Instant Action and the Related Action involve an infringement of rights by both CMG and Impulse upon Mr. Gordon that is indistinguishable.  To illustrate this contention, we respectively request that this Court compare the Complaint in the Instant Action to the Amended Complaints in the Related Action.  As the Court will note, in both Complaints, plaintiff seeks to recover damages for the alleged infringement by Impulse and CMG, respectively, of plaintiff's perceived right to be precluded from receiving unsolicited e-mail pursuant to State of Washington Commercial Electronic Mail Statute, RCW §§19.190.20,

19.190.30, 19.190.40(1) and the State of Washington Consumer Protection Act, RCW §19.86 et seq. based upon plaintiff's inclusion in the WAISP database. In both the Instant Action litigation and the Related Action, plaintiff seeks to recover damages from two different defendants, in two separate lawsuits, both of which arise out of precisely the same infringement upon plaintiff's rights. In the Instant Action, plaintiff simply named a different defendant to the caption (i.e., Impulse). If plaintiff sought to recover damages from Impulse arising out of its violation of the same rights as he alleged CMG committed, his only remedy was to name Impulse as a defendant in the Related Action prior to its dismissal with prejudice. The same claims brought thereafter against impulse are barred by the doctrine of res judicata.

As such, plaintiff's claims are identical in both the Instant Action and the Related Action because: 1) both the Instant Action and the Related Action arise out of the same nucleus of facts; 2) the same evidence disclosed and used in the Related Action will need to be presented in the Instant Action in order for plaintiff to sustain his burden of proof; and (3) the Instant Action and Related Action involve the infringement of the same rights against plaintiff.

**B)      The Related Action resulted in a judgment on the merits.**

There has been a final judgment on the merits in the Related Action. "The dismissal of an action with prejudice constitutes a final judgment on the merits and precludes a party from reasserting the same claims in a subsequent action." Headwaters, Inc. v. Forest Conservation Council, 2004 U.S. App. LEXIS 18930, at *9 (9th Cir. 2004) *citing,* International Union of Operating Engineers v. Karr, 994 F.2d 1426, 1429 (9th Cir. 1993); *see* Lawrence v. Steinford Holding B.V. (In re Dominelli), 820 F.2d 313, 316-17 (9th Cir. 1987) (dismissal of action with prejudice pursuant to a settlement agreement constitutes a final judgment on the merits and precludes parties from reasserting the same claims in a subsequent action).

According to the Court docket report, Hon. Alan A. McDonald dismissed the Related Action with prejudice (emphasis supplied). See Exhibit "B."  The dismissal was entered by the Court on or about October 20, 2004 and was filed as a "text-only entry."  See Exhibit "B." Accordingly, the Related Action was disposed of by a "judgment on the merits."

**C)     There is privity between the parties.**

Lastly, the Court must examine whether there is privity between the parties in both the Instant Action and the Related Action.  "Privity between parties exists when a party is so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." Headwaters, Inc., at *12 *citing* Stratosphere Litigation L.L.C. v. Grand Casinos, Inc., 298 F.3d 1137, 1142 n.3 (9th Cir. 2002) (*quoting* In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997)).  The Ninth Circuit also held that:

> First, a non-party who has succeeded to a party's interest in property is bound by any prior judgment against the party. Second, a non-party who controlled the original suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit.  In addition, "privity" has been found where there is a "substantial identity" between the party and non-party, where the non-party "had a significant interest and participated in the prior action," and where the interests of the non-party and party are "so closely aligned as to be virtually representative."  Finally, a relationship of privity can be said to exist when there is an "express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues. Headwaters, Inc., at * 10 *quoting* In re Schimmels, 127 F.3d at 881.

Impulse had a significant interest in the Related Action based upon the terms and conditions set forth in the Agreement.  In fact, an express legal relationship between CMG and Impulse continues to exist whereby CMG and Impulse are legally accountable to one another.  As set forth above, the Agreement permitted Impulse to market and advertise the CMG Program. See Exhibit "E" at p 1.  Pursuant to the terms of the Agreement, Impulse, in certain

circumstances, agreed to indemnify and hold CMG harmless, in certain instances, from and against any liability, claim, deficiency, loss, damage, penalty, or injury suffered or incurred by CMG arising from, *inter alia*, any act outside the scope of Impulse's duties in connection with the marketing or distribution of the Program.  <u>See</u> Exhibit "E" at pp 6-7.  Based upon this indemnification provision, Impulse has a legal relationship with CMG and a significant interest in the Related Action.  While Impulse was not a party to the Related Action, Impulse participated in the Related Action by: 1) providing CMG's counsel with documentation establishing that plaintiff had consented to receiving the commercial e-mail at issue; 2) examining pleadings and discovery disclosures and their effect on Impulse; and 3) communicating with CMG's counsel to protect Impulse's potential legal obligations toward CMG.  <u>See</u> Declaration of David O. Klein, dated January 21, 2005.

Based upon the Agreement between CMG and Impulse a legal relationship exists between Impulse and CMG by which Impulse is potentially accountable to CMG based upon Impulse's perceived duty to indemnify and hold CMG harmless in the Related Action.  Additionally, Impulse had a significant interest in the Related Action to warrant Impulse's participation throughout the course of the Related Action.  As such, sufficient privity exists between CMG and Impulse.

Since Impulse meets all the res judicata elements established by the Ninth Circuit, plaintiff should be estopped from asserting any and all claims against Impulse in the Instant Action and, therefore, plaintiff's Complaint must be dismissed in its entirety, as a matter of law, pursuant to Federal Rules of Civil Procedure 12(b)(6).

**2.     The allegations contained in plaintiff's Complaint are preempted by federal law.**

Plaintiff allegations that defendant violated the State of Washington Commercial Electronic Mail Statute, RCW §§19.190.20, 19.190.30, 19.190.40(1) and the State of Washington Consumer Protection Act, RCW §19.86 et seq. are pre-empted by federal law. The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), effective January 1, 2004, imposes limitations and penalties on the transmission of unsolicited commercial e-mail via the Internet. Congresses intent in passing this federal legislation was to regulate or reduce unsolicited commercial e-mail. Congress found that state statutes that attempted to regulate this area imposed different standards and requirements. As a result, state statutes were unsuccessful in addressing the problems associated with unsolicited commercial e-mail, in part because, an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of the disparate state statutes they were required to comply. Nevertheless, Section (8)(b) of CAN-SPAM specifically states that, "[t]his Act supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages...." Accordingly, since plaintiff's Complaint was filed and served against Impulse after the effective date of CAN-SPAM, plaintiff's causes of action for defendant's alleged violations of the State of Washington Commercial Electronic Mail Statute, RCW §§19.190.20, 19.190.30, 19.190.40(1) and the State of Washington Consumer Protection Act, RCW §19.86 et seq. are expressly pre-empted by federal legislation.

3.      **Impulse could not have violated the State of Washington Commercial Electronic Mail Statute, RCW §§19.190.20, 19.190.30, 19.190.40(1) and the State of Washington Consumer Protection Act, RCW §19.86 et seq. as a matter of law.**

A)      **Plaintiff consented to receiving commercial e-mail.**

Impulse conducts only permission based marketing.  As such, its database of e-mail addresses indicates for each e-mail address: (1) the website at which a person has signed up to receive offers from Impulse or its marketing partners; (2) the date on which the sign up took place; and (3) the e-mail address of the user. Sometimes, additional information is gathered including, but not limited to, the IP Address being used when the person signed up.  Upon searching its database of e-mail addresses, Impulse discovered that plaintiff registered with certain websites to receive the Program that was marketed by Impulse and/or CMG.  The documentary evidence establishes that Mr. Gordon consented to receiving commercial e-mail from defendant.  See Exhibit "F."  Therefore, Impulse could not have violated the State of Washington Commercial Electronic Mail Statute, RCW §§19.190.20, 19.190.30, 19.190.40(1) and the State of Washington Consumer Protection Act, RCW §19.86 et seq. as a matter of law.

The documentary evidence establishes that plaintiff consented[1] or "opted-in" to receiving commercial e-mail from Impulse or one of its marketing partners on January 7, 2002, August 30, 2002, April 9, 2003, September 3, 2003, September 10, 2003, September 15, 2003, September 17, 2003, October 20, 2003 and January 14, 2004.  The precise times of these "opt-ins" are set

---

[1] In addition to plaintiff, the documentary evidence demonstrates that other individuals owning e-mail addresses at plaintiff's Domain, consented to receive commercial e-mail from Impulse and/or CMG, including: msm@gordonworks.com,     jim@gordonworks.com,     sd@gordonworks.com,     business@gordonworks.com, jobs@gordonworks.com,     bonniegg@gordonworks.com,     james@gordonworks.com,     jay@gordonaworks.com, faye@gordonworks.com, and jamila@gordonworks.com.

forth in Exhibit "F." The submission by plaintiff of his e-mail addresses on certain websites[2]

serves as affirmative consent to the receipt of commercial e-mail from Impulse, CMG and/or

their marketing partners. By "opting-in" and, upon plaintiff's consent, plaintiff expressly agreed

to the terms of the Privacy Policies set forth on the websites (set forth hereinbelow). The Privacy

Policies allow for the disclosure of plaintiff's e-mail address to third parties for marketing

purposes. The State of Washington Commercial Electronic Mail Statute, RCW §§19.190.20,

states, in pertinent part, that no person may transmit, conspire with another to transmit, or assist

in the transmission of commercial e-mail to an e-mail address held by a Washington resident that

uses a third party's domain name without the permission of the third party. Therefore, plaintiff's

consent and/or permission to receiving the commercial e-mail at issue precludes any cause of

action against Impulse for a violation of the State of Washington Commercial Electronic Mail

Statute, RCW §§19.190.20 as a matter of law.

**B)     The WAISP Database is insufficient to establish that Impulse knew, or had reason to know that Mr. Gordon's e-mail address was located in it.**

        The WAISP database verifies e-mail addresses one at a time, by a time consuming

process that is not reasonable for an Internet marketer, and does not allow for aggregate queries

of e-mail addresses. The availability of this interactive process is insufficient to establish that

Impulse knew, or had reason to know that Mr. Gordon's e-mail address was located in the

WAISP database. Plaintiff alleges that Impulse knew or had reason to know that Mr. Gordon's

Domain was in the WAISP database because this information could be determined by inputting

the e-mail address into the website operated by the WAISP registry. While the WAISP website

---

[2] The documentary evidence also establishes that plaintiff consented to receive commercial e-mail from Impulse and/or CMG on the following websites: www.tigeremaildirect.com, www.emaildirect.com, www.americangreeting.com, www.fridaysales.com and www.emailprize.com.

permits registered users to input an e-mail address and individually verify whether the particular e-mail address is contained in the WAISP Registry (i.e., registered to a Washington resident), the fact that the WAISP Registry contained Mr. Gordon's e-mail address does not necessarily lead to the conclusion that Impulse knew or had reason to know that Mr. Gordon's e-mail address was listed in the WAISP database.  The case of Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir. 1997), presented a similar situation.  In Cybersell, Defendant Cybersell, Inc., a Florida corporation ("Cybersell FL") registered the domain name "cybersell.com."  Plaintiff Cybersell, Inc., an Arizona corporation ("Cybersell AZ") had submitted an application to register the name "Cybersell" as a service mark, and had previously operated a website using the mark. When Cybersell AZ discovered Cybersell FL's website, it filed a trademark infringement action in the District of Arizona.  In Cybersell, the plaintiff argued that the defendant should be deemed to have knowledge that Cybersell FL's website injured Cybersell AZ since Cybersell FL could have simply performed a trademark search to determine the identity of the potential plaintiff.  The court held that constitutional due process principles did not impose such a burden on those making information available over the Internet.  Cybersell, 130 F.3d at 420.  Similarly, in the present case, traditional due process principles do not impose upon out-of-state e-mail marketers[3] the unreasonable and impossible duty to search each e-mail address on its marketing list at the WAISP Registry or anywhere else.  Callaway Golf Corp. v. Royal Canadian Golf Ass'n, 125 F. Supp. 2d 1194, 1200 (C.D. Cal. 2000) (rejecting requirement that non-resident defendant investigate plaintiff's place of business or incorporation).  Any requirement to the contrary would violate Due Process.  Accordingly, Impulse could not have violated State of Washington Commercial Electronic Mail Statute, RCW §§19.190.20, 19.190.30, 19.190.40(1) and the State

---

[3] Impulse Marketing Group, Inc. is a Nevada Corporation with its principle place of business located in Atlanta, Georgia.

{00068278;1}                                    12

of Washington Consumer Protection Act, RCW §19.86 et seq. as a matter of law because it had

no knowledge that plaintiff's e-mail address was listed in the WAISP database.

## IV.     Conclusion

Based upon the foregoing, Impulse respectfully requests that this Court dismiss plaintiff's

Complaint in its entirety pursuant to Federal Rules of Civil Procedure, 12(b)(6) on the grounds

that: 1) plaintiff's claims are barred by the legal doctrine of res judicata; 2) plaintiff's claims are

preempted by Federal law; and 3) plaintiff cannot possibly plead a proper violation by defendant

of the State of Washington Commercial Electronic Mail Statute, RCW §§19.190.20, 19.190.30,

19.190.40(1) and the State of Washington Consumer Protection Act, RCW 19.86 et seq. as a

matter of law.  Defendant also respectfully requests that this Court grant such other and further

relief as it deems just and proper.

Dated:  New York, New York
           January 21, 2005

Liebler, Ivey, Conner, Berry & St. Hilaire
By:     Floyd E. Ivey
1141 N. Edison, Suite C
P.O. Box 6125
Kennewick, Washington 99336
Local Counsel for Defendant
Impulse Marketing Group, Inc.

Sean A. Moynihan
Peter J. Glantz
Klein, Zelman, Rothermel & Dichter, LLP
485 Madison Avenue, 15th Floor
New York, New York 10022
(212) 935-6020
(212) 753-8101 (fax)

{00068278;1}                                    13