# EXHIBIT E

Dockets.Justia.com

# WEBSITE DEVELOPMENT AND MARKETING SERVICES AGREEMENT

THIS AGREEMENT effective as of December 10, 2001 (the "Effective Date"), by and between COMMONWEALTH MARKETING GROUP, INC., a Pennsylvania corporation with offices at One Millennium Drive, Uniontown, PA 15401 ("CMG"), and IMPULSE MARKETING GROUP, INC., a Georgia corporation with offices at 2440 Sandy Plains Road, Building #8, Marietta, GA 30066 ("IMG").

WHEREAS, CMG has established the USA Gold Card program by which persons apply for a USA Gold Card online and upon acceptance are then able to use their USA Gold Card to catalog shop online and purchase products offered by USA Shop Smart as well as receive pre-approval for a unsecured Visa credit card (the "Program"); and

WHEREAS, IMG is a designer and developer of internet web sites and provides various marketing, advertising and sales services via the internet; and

WHEREAS, IMG has agreed to contract with CMG to fully and faithfully (i) provide various services in the design, development and hosting (operation) of CMG's USA Gold Card website, and (ii) provide various marketing services designed to drive traffic to CMG's USA Gold Card website, all pursuant to and in accordance with the terms, covenants and conditions of this Agreement.

NOW, THEREFORE, the parties hereto, in consideration of their respective covenants and agreements made herein and with the intent to be legally bound, agree as follows:

1. <u>Engagement</u>. CMG agrees to and does hereby retain IMG as an independent contractor to provide CMG with such website hosting and marketing services hereinafter specified, and IMG hereby agrees to serve CMG in such capacity and to perform such services pursuant to and in accordance with the terms and conditions of this Agreement.

2. <u>Services and Duties</u>. IMG shall perform such website design, development, hosting (operation) and marketing services as CMG shall reasonably request from time to time in connection with the Program, including without limitation (i) to provide various services in the design, development and hosting (operation) of CMG's USA Gold Card website, and (ii) to provide various marketing services designed to drive traffic to CMG's USA Gold Card website. CMG shall provide IMG with all marketing material to be used by IMG on the active marketing CMG USA Gold Card website, which active marketing website shall be approved in writing by a corporate officer of CMG. All services provided hereunder shall be fully and faithfully performed by IMG in a diligent and competent manner and to the best of IMG's ability, experience and talent.

3. <u>Minimum Marketing Requirements</u>. IMG warrants and agrees to provide such marketing services hereunder so as to generate at least 10,500 and as many as 15,000 new, fully

# WEBSITE DEVELOPMENT AND
# MARKETING SERVICES AGREEMENT

THIS AGREEMENT effective as of December 10, 2001 (the "Effective Date"), by and between COMMONWEALTH MARKETING GROUP, INC., a Pennsylvania corporation with offices at One Millennium Drive, Uniontown, PA 15401 ("CMG"), and IMPULSE MARKETING GROUP, INC., a Georgia corporation with offices at 2440 Sandy Plains Road, Building #8, Marietta, GA 30066 ("IMG").

WHEREAS, CMG has established the USA Gold Card program by which persons apply for a USA Gold Card online and upon acceptance are then able to use their USA Gold Card to catalog shop online and purchase products offered by USA Shop Smart as well as receive pre-approval for a unsecured Visa credit card (the "Program"); and

WHEREAS, IMG is a designer and developer of internet web sites and provides various marketing, advertising and sales services via the internet; and

WHEREAS, IMG has agreed to contract with CMG to fully and faithfully (i) provide various services in the design, development and hosting (operation) of CMG's USA Gold Card website, and (ii) provide various marketing services designed to drive traffic to CMG's USA Gold Card website, all pursuant to and in accordance with the terms, covenants and conditions of this Agreement.

NOW, THEREFORE, the parties hereto, in consideration of their respective covenants and agreements made herein and with the intent to be legally bound, agree as follows:

1. **Engagement.** CMG agrees to and does hereby retain IMG as an independent contractor to provide CMG with such website hosting and marketing services hereinafter specified, and IMG hereby agrees to serve CMG in such capacity and to perform such services pursuant to and in accordance with the terms and conditions of this Agreement.

2. **Services and Duties.** IMG shall perform such website design, development, hosting (operation) and marketing services as CMG shall reasonably request from time to time in connection with the Program, including without limitation (i) to provide various services in the design, development and hosting (operation) of CMG's USA Gold Card website, and (ii) to provide various marketing services designed to drive traffic to CMG's USA Gold Card website. CMG shall provide IMG with all marketing material to be used by IMG on the active marketing CMG USA Gold Card website, which active marketing website shall be approved in writing by a corporate officer of CMG. All services provided hereunder shall be fully and faithfully performed by IMG in a diligent and competent manner and to the best of IMG's ability, experience and talent.

3. **Minimum Marketing Requirements.** IMG warrants and agrees to provide such marketing services hereunder so as to generate at least 10,500 and as many as 15,000 new, fully

completed applications for a USA Gold Card per calendar month (the "Minimum Threshold") for the term of this Agreement. CMG may not assert a breach of this Agreement or invoke a termination of this Agreement unless IMG fails to meet the Minimum Threshold in two (2) consecutive months or for any four (4) months within a twelve (12) month period.

4. <u>Authority of IMG</u>. IMG's authority to act for or on behalf of CMG shall be limited to that expressly provided hereunder or as otherwise authorized by a corporate officer of CMG. IMG is not authorized to bind CMG in any manner or to incur any obligation, expenditure or liability on behalf of or against CMG, or to make any representation or warranty on behalf of CMG, without the prior written authorization of a corporate officer of CMG.

5. <u>Payment for Services and Revenue Sharing</u>. In consideration of IMG's services and so long as this Agreement remains in effect, CMG and IMG agree as follows as to the payment of IMG and other revenue sharing arrangements:

(a) CMG agrees to pay to IMG the sum of $30.00 (the "Commission") for each USA Gold Card application, excluding duplicate sales, which is fully completed with all of the primary account holder's information (all data fields are completed) and transmitted online to CMG for approval. A copy of the application is attached hereto as <u>Exhibit "A"</u> and made a part hereof. On Friday of each week, CMG shall submit a report to IMG (the "Commission Report") showing the total number of applications which were completed and transmitted to CMG during the week immediately preceding the week just ended and calculating the amount of Commission due to IMG for such week. CMG shall include the Commission payment with each Commission Report. As used herein, a "week" shall mean Saturday through Friday.

(b) ~~CMG agrees to pay to IMG fifty percent (50%) of the net profits derived by CMG from sales of products through CMG's USA Shop Smart website (the "Share of Net Profits"). Payments to IMG of its Share of Net Profits will be made monthly. Within thirty (30) days after the end of each month, CMG shall submit a report to IMG (the "Profit Report") showing a calculation of the net profits derived by CMG from sales of products through CMG's USA Shop Smart website during the month then ended and calculating the amount of IMG's Share of Net Profits for such month. CMG shall include the payment of IMG's Share of Net Profits with each Profit Report.~~

(c) CMG agrees to pay to IMG the sum of $10.00 for each offline (non-internet) sale of a USA Gold Card that is derived or generated from CMG's USA Gold Card website ("Offline Sale Commission"). On Friday of each week, CMG shall submit a report to IMG (the "Offline Sale Report") showing the total number of sales of the USA Gold Card which were completed by CMG during the week immediately preceding the week just ended and calculating the amount of Offline Sale Commission due to IMG for such week. CMG shall include the Offline Sale Commission payment with each Offline Sale Report. As used herein, a "week" shall mean Saturday through Friday.

(d) Any revenues generated by either party from lead sales or "leases" of leads, shall be split fifty percent (50%) to CMG and fifty percent (50%) to IMG, after deduction of all expenses incurred by the parties. All leads (defined as an incomplete USA Gold Card

application and/or an incomplete Visa card application with Plains Commerce Bank, formerly known as Bank of Hoven) shall be sold or leased exclusively to NewWorld Marketing, L.L.C. ("NewWorld") who will be solely responsible for marketing and distributing the leads. Each party agrees that it will not use such leads for its own purposes outside the scope of this Agreement, and will not sell or lease the leads to anyone other than NewWorld, unless otherwise agreed to in writing by the other party. All of the foregoing revenues generated pursuant to this Paragraph 5(d) shall hereinafter be referred to as "Lead Revenues".

(e)  Any revenues generated by either party from sales of offers on the exit consoles to the USA Gold Card website or the Plains Commerce Bank Visa card website, shall be split twenty-five percent (25%) to CMG and seventy-five percent (75%) to IMG.

(f)  In the event IMG disagrees with the calculation of any payment in any Commission Report, Profit Report, or Offline Sales Report, then IMG shall give written notice thereof to CMG no later than sixty (60) days after receipt of the applicable report, which notice shall set forth the basis of IMG's disagreement. Failure to so notify CMG shall constitute a waiver of IMG's right to contest or seek any remedy with respect to the payment amount received by IMG for the period covered by such report. In the event written notice of IMG's disagreement is timely received by CMG, the parties shall immediately meet and make a good faith effort to resolve the disagreement. If the parties cannot resolve the disagreement within ten (10) days after delivery of the written notice from IMG to CMG, then, within twenty (20) days after delivery of said written notice, the issue shall be submitted to a certified public accountant mutually agreeable to IMG and CMG. If IMG and CMG cannot mutually agree upon a certified public accountant then, within thirty (30) days after delivery of said written notice, such certified public accountant shall be chosen by a panel of three (3) persons, which panel shall consist of one (1) person selected by IMG ("IMG Panel Member"), one (1) person selected by CMG ("CMG Panel Member"), and a third person mutually agreeable to IMG Panel Member and CMG Panel Member. The determination of the certified public accountant chosen pursuant to this subsection shall be conclusive.

(g)  All payments by CMG to IMG hereunder shall be paid without deduction or withholding of federal or state taxes of any kind or nature. In the event of the termination of this Agreement, the payments provided for hereunder shall be made for all sales or revenues generated through the effective date of termination.

6.  Term. The initial term of this Agreement shall begin on the Effective Date of this Agreement and shall continue until December 31, 2003 (the "Initial Term"), and shall automatically renew from year to year thereafter (the "Renewal Term(s)"), unless either party gives written notice to the other of an intention not to renew this Agreement at least ninety (90) days prior to the expiration of the Initial Term or any subsequent one-year Renewal Term, or unless sooner terminated as hereinafter provided.

7.  Termination. This Agreement may be terminated as follows:

(a)  Upon the written agreement of CMG and IMG; or

-3-

91

(b) By IMG in the event of the failure by CMG to pay any Commission, Share of Net Profits or Offline Sale Commission payment when due under the terms of this Agreement, and such nonpayment shall continue unremedied for a period of ten (10) calendar days after IMG has given written notice of such nonpayment to CMG; or

(c) By IMG, for cause, immediately upon written notice to CMG. As used herein, "cause" shall be deemed to include, without limitation, the following: (i) any default or breach by CMG in the observance or performance of any obligation, covenant, condition or provision hereof, and such default or failure shall continue unremedied for a period of twenty (20) calendar days after IMG has given written notice of such default or failure to CMG; (ii) CMG's failure to abide by the provisions set forth in Paragraph 11(a) which provides that IMG shall be CMG's sole and exclusive provider of internet marketing services for the Program or any similar online catalog shopping charge card program; (iii) CMG's gross negligence in connection with the conduct of the Program; (iv) a determination by a court of competent jurisdiction that CMG has violated or failed to comply with any law, rule, regulation, code, or ordinance of any governmental authority relating to the conduct of the Program; or (v) the initiation of any administrative or judicial proceeding by a state or federal governmental agency asserting that CMG has violated or failed to comply with any law, rule, regulation, code, or ordinance of any governmental authority relating to the conduct of the Program.

(d) By CMG, for cause, immediately upon written notice to IMG. As used herein, "cause" shall be deemed to include, without limitation, the following: (i) any default or breach by IMG in the observance or performance of any obligation, covenant, condition or provision hereof, and such default or failure shall continue unremedied for a period of twenty (20) calendar days after CMG has given written notice of such default or failure to IMG; (ii) IMG's failure to fulfill its services hereunder in a competent manner or IMG's failure to adhere to the sales and marketing policies and requirements of CMG in performing its services hereunder; (iii) IMG's failure to meet the Minimum Threshold in two (2) consecutive months or for any four (4) months within a twelve (12) month period; (iv) IMG's failure to abide by the provision prohibiting the marketing or selling of a Competing Program (as set forth in Paragraph 11(b)); (v) a determination by a court of competent jurisdiction that IMG has violated or failed to comply with any law, rule, regulation, code, or ordinance of any governmental authority relating to the conduct of the Program; or (vi) the initiation of any administrative or judicial proceeding by a state or federal governmental agency asserting that IMG has violated or failed to comply with any law, rule, regulation, code, or ordinance of any governmental authority relating to the conduct of the Program.

(e) By CMG or IMG immediately upon the termination or cessation of the Program for any reason.

8. Ownership of Program. IMG expressly recognizes that all right, title and interest in and to the Program is and shall be vested at all times in CMG. IMG agrees that nothing herein, nor use hereunder, shall give IMG any right, title or interest in or to the Program except as set forth in this Agreement. IMG agrees that it shall not, directly or indirectly, during the term of this Agreement or thereafter attack the ownership by CMG of the Program. IMG shall at any time upon request execute any documents reasonably required by CMG to confirm the

provisions of this Paragraph. The provisions of this Paragraph 8 shall survive the termination of this Agreement.

9. <u>Confidentiality</u>. The parties acknowledge that in the course of carrying out the terms of this Agreement they may disclose and/or receive proprietary and confidential information concerning the other party and its activities (the "Confidential Information"). Accordingly, each party hereby agrees and covenants with the other that it will preserve and protect the confidentiality of the other party's Confidential Information, and will not disclose, divulge, furnish or make accessible to any third party, or use for its own purposes other than to perform under this Agreement, any Confidential Information of such other party, other than to their legal counsel, tax advisors and accountants, and such other persons as the parties shall mutually agree upon; provided, however, either party shall have the right to disclose, divulge, furnish or make accessible to any third party, or use for its own purposes the list of the applicants or account holders under the Program. The provisions of this Paragraph 9 shall survive the termination of this Agreement.

10. <u>List of USA Gold Card Customers</u>. Although CMG retains the ownership of the list of USA Gold Card customers, CMG and IMG agree that revenues generated from the lead sales or leases of leads shall be split and distributed in accordance with Paragraph 5(d).

11. <u>Exclusivity and Noncompetition</u>.

(a) During the term of this Agreement and provided IMG doesn't fail to meet the Minimum Threshold in two (2) consecutive months or for any four (4) months within a twelve (12) month period or is otherwise in breach of this Agreement, CMG agrees and covenants with IMG that (i) IMG shall be CMG's sole and exclusive provider of internet marketing services for the Program, or any similar internet catalog shopping charge card program whether alone or in combination with a Visa or MasterCard program, and (ii) CMG shall not, directly or indirectly, engage any other person or entity to provide internet marketing services of any kind or nature in connection with an internet catalog shopping charge card program the same as or similar to the Program, whether alone or in combination with a Visa or MasterCard program (a "Competitive Program").

(b) During the term of this Agreement, IMG agrees and covenants with CMG that IMG shall not, directly or indirectly, market, offer, sell or provide internet marketing services to any other person or entity in connection with a Competitive Program.

(c) Each party agrees and covenants with the other party that during the term of this Agreement and for a period of six (6) months after the termination of this Agreement, neither party shall circumvent the other party by contacting or soliciting any vendor, distributor or other party with whom such other party has a contractual relationship for the purpose of entering into a contract or any other business relationship for the marketing, sale and/or distribution of a Competitive Program, without the express written consent of such other party. The provisions of this Paragraph 11(c), as supplemented by Paragraph 11(d), shall survive the termination of this Agreement for the period specified.

-5-



(d) Each party's covenants in this Paragraph 11 are made for themselves and their respective shareholders, directors, officers, employees, affiliates, successors, and assigns, and shall be binding upon any individual, partnership, corporation, trust, association or other entity or group (collectively "person") that directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with such party. "Control" (and with correlative meanings, the terms "controlled by" and "controlled with") means the possession of power to direct or cause the direction of the management and policies of such person whether through the ownership of voting stock, by contract or otherwise.

12. **Reformation.** Each of CMG and IMG expressly acknowledge and agree that the foregoing agreements and covenants made in paragraph 11 above are reasonably required in order to protect the legitimate business interests of each party and that should a court of competent jurisdiction determine that the foregoing agreements and covenants are unenforceable, in whole or in part, then such court is authorized to modify such agreements and covenants in such respects as such court determines to be required in order that they shall, as so modified, be enforceable.

13. **Equitable Remedies.** In making the agreements and covenants contained in paragraph 11 above, each of CMG and IMG expressly acknowledge and agree that (i) the covenants made by each herein are of a unique and special nature, (ii) any breach or violation of such covenants by one party will result in irreparable harm to the other party for which there is no adequate remedy at law, (iii) in addition to all other remedies, the harmed party shall be entitled as a matter of right to injunctive relief in any court of competent jurisdiction, and (iv) the violating party shall not assert as a defense to any petition or request for injunctive or other equitable relief the claim that the harmed party has an adequate remedy at law. The provisions of Paragraphs 12 and 13 shall survive the termination of this Agreement for as long as the provisions of Paragraph 11 remain applicable.

14. **Right of Offset.** In the event that CMG or IMG fails or is unable to make payments to the other party as set forth and required in Paragraph 5 of this Agreement then in addition to any other rights and remedies that the parties may have against one another, the harmed party shall be entitled to offset any funds or revenues received from other funds and revenues generated together as part of their overall business relationship regardless of source.

15. **No Waiver.** The failure of a party to object to any conduct or violation of any of the agreements or covenants made by the other party under this Agreement will not be deemed a waiver of any rights or remedies. No waiver of any right or remedy arising under this Agreement will be valid unless set forth in an appropriate writing signed by the party to be charged.

16. **Indemnification.**

(a) IMG shall indemnify, defend, (with legal counsel reasonably acceptable to IMG), and hold CMG and its officers, directors, shareholders, agents, affiliates and assigns ("CMG et al") harmless at all times after the Effective Date of this Agreement, from and against and in respect of, any liability, claim, deficiency, loss, damage, penalty, or injury, and all reasonable costs and expenses (including reasonable attorneys' fees and costs of any suit related thereto) suffered or incurred by CMG et al arising from (i) any breach or default on the part of

-6-

IMG in the observance or performance of any obligation, covenant, condition or provision of this Agreement, (ii) any act outside the scope of IMG's duties in connection with the marketing or distribution of the Program or (iii) any misrepresentation by, or breach of any covenant or warranty of IMG contained in this Agreement or any instrument furnished or to be furnished by IMG hereunder.

      (b)    CMG shall indemnify, defend (with legal counsel reasonably accepted to CMG) and hold IMG and its officers, directors, shareholders, agents, affiliates, and assigns ("IMG et al") harmless at all times after the Effective Date of this Agreement, from and against and in respect of, any liability, claim, deficiency, loss, damage, penalty, or injury, and all reasonable costs and expenses (including reasonable attorneys' fees and costs of any suit related thereto) suffered or incurred by IMG et al arising from (i) any breach or default on the part of CMG in the observance or performance of any obligation, covenant, condition or provision of this Agreement, (ii) any and all liability arising out of or from the marketing or distribution by IMG of the Program, so long as the Program is marketed and distributed by IMG pursuant to and in accordance with the material previously provided by CMG and as set forth on the USA Gold Card website as approved in writing by a corporate officer of CMG, and in accordance with its duties under this Agreement, (iii) any misrepresentation by, or breach of any covenant or warranty of CMG contained in this Agreement or any instrument furnished or to be furnished by CMG hereunder, (iv) any nonfulfillment of the Program by CMG, or (v) any suit, action, proceeding, claim or investigation against IMG which arises from or which is based upon or pertaining to CMG's illegal conduct or operation of the Program, if the Program is marketed and distributed by IMG on the active marketing CMG USA Gold Card website, which active marketing website shall be approved in writing by a corporate officer of CMG, and in accordance with its duties under this Agreement.

      (c)    If any lawsuit or enforcement action is filed against any party entitled to the benefit of indemnity hereunder, written notice thereof shall be given to the indemnifying party as promptly as practicable (and in any event not less that fifteen (15) days prior to any hearing date or other date by which action must be taken); provided that the failure of any indemnified party to give timely notice shall not affect rights to indemnification hereunder except to the extent that the indemnifying party demonstrates actual damage caused by such failure. After such notice, the indemnifying party shall be entitled, if it so elects, to take control of the defense and investigation of the lawsuit or action and to employ and engage attorneys of its own choice to handle and defend the same, at the indemnified party's cost, risk and expense; and such indemnified party shall cooperate in all reasonable respects, at its cost, risk and expense, with the indemnifying party and such attorney in the investigation, trial and defense of such lawsuit or action and any appeal arising therefrom; provided, however, that the indemnifying party shall, at its own cost, participate in such investigation, trial and defense of such lawsuit or action and any appeal arising therefrom. The indemnifying party shall not, without the prior written consent of the indemnified party, effect any settlement of any proceeding in respect of which any indemnified party is a party and indemnity has been sought hereunder unless such settlement of a claim, investigation, suit, or other proceeding only involves a remedy for the payment of money by the indemnifying party and includes an unconditional release of such indemnified party from all liability on claims that are the subject matter of such proceeding.



(d) If an entity having an indemnification, defense and hold harmless obligation, as above provided, shall fail to assume such obligation, then the party or entities or both, as the case may be, to whom such indemnification, defense and hold harmless obligation is due shall have the right, but not the obligation, to assume and maintain such defense (including reasonable counsel fees and costs of any suit related thereto) and to make any settlement or pay any judgment or verdict as the individual or entities deem necessary or appropriate in such individual's or entities' absolute sole discretion and to charge the cost of any settlement, payment, expense and costs, including reasonable attorneys' fees, to the entity that had the obligation to provide such indemnification, defense and hold harmless obligation and the same shall constitute an additional obligation of the entity. The provisions of this Paragraph 16 shall survive the termination of this Agreement.

17. **Relationship of Parties**. Neither party shall have any authority whatsoever to create, or to assume in the name of the other party or on its behalf, any obligations, expressed or implied, for any purpose. Each party shall have complete control of it's activities and business and of the nature, extent and methods of conducting the same, except as otherwise provided herein, and shall be responsible for payment of all costs and expenses incurred in connection with it's performance under this Agreement.

18. **Compliance With Laws**. Each party agrees to comply with all applicable laws, governmental rules, regulations, orders, decrees and ordinances relating to the performance of this Agreement, including but not limited to CMG's and its officers' and directors' compliance with all Federal Trade Commission orders directly related to them.

19. **Entire Agreement**. This Agreement and all exhibits attached hereto constitutes the entire understanding and agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, pertaining to the subject matter hereof.

20. **Amendments**. This Agreement may not be amended, modified, or supplemented in whole or in part except by a subsequent written instrument executed by the parties hereto.

21. **Severability**. If any term or provision of this Agreement is held to be invalid or unenforceable by any judicial or administrative authority, the remainder of this Agreement shall not be affected thereby, but shall remain valid and enforceable to the fullest extent permitted by law.

22. **Binding Effect**. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. This Agreement and the rights and obligations hereunder shall not be assigned by either party without the prior written consent of the other party; provided, however, CMG shall have the right to assign this Agreement and its rights and obligations hereunder to a new business entity owned by Frederick F. Zeigler III and Robert E. Kane, or their respective trusts, provided such entity assumes all of the obligations of CMG hereunder. Any such assignment shall not release CMG of any financial obligations hereunder unless otherwise agreed to by IMG.

23. <u>Notices</u>. Any notice, demand, or requests required, permitted or provided for hereunder shall be effective only if given in writing and sent to the requested party at the address set forth above in the first paragraph of this Agreement by (i) United States certified or registered mail, return receipt requested, (ii) a nationally recognized overnight courier service, (iii) facsimile or email transmission, or (iv) personal delivery, and addressed to such party at the address set forth at the beginning of this Agreement (or at such other addresses as may be given by written notice hereunder). Any such communication shall be deemed given (i) if by certified or registered mail, upon receipt (or refusal to receive) as evidenced by the return receipt (or the refusal to accept delivery), (ii) if by an overnight courier, upon receipt (or refusal to receive) as evidenced by the receipt of the courier service (or evidence of the refusal to accept delivery), (iii) if by facsimile or email transmission, upon receipt as evidenced by a delivery confirmation, or (iv) if by personal delivery, upon receipt or refusal to receive.

24. <u>Headings</u>. The headings preceding the text of the paragraphs of this Agreement are inserted solely for convenience of reference and shall not constitute a art of this Agreement nor shall they affect its meaning or effect.

25. <u>Governing Law</u>. This Agreement shall be governed by and interpreted in accordance with the laws of the Commonwealth of Pennsylvania without giving effect to any conflict of laws provisions if an action is brought under this Agreement by IMG. This Agreement, however, shall be governed by and interpreted in accordance with the laws of the State of Georgia without giving effect to any conflict of laws provision if an action is brought under this Agreement by CMG. Each party hereto expressly agrees that any action or proceeding arising out of or relating to this Agreement may be commenced in the state and federal courts of the Commonwealth of Pennsylvania in Pittsburgh, Pennsylvania, if such action is initiated by IMG, and if such action is initiated under this Agreement by CMG, then each party hereto expressly agrees that such action or proceeding may be commenced in the state and federal courts of the State of Georgia in Atlanta, Georgia or Marietta, Georgia. Each party agrees that a summons and complaint commencing an action or proceeding in such courts shall be properly served and shall confer personal jurisdiction if served personally or by certified mail, or as otherwise provided under the laws of the Commonwealth of Pennsylvania or the State of Georgia, respectively, or the United States of America.

26. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts and all such counterparts shall together constitute one agreement binding on all the parties notwithstanding that all of the parties are not signatories to the original or the same counterpart.

27. <u>Authority to Enter into Agreement</u>. Each of the parties covenants and represents in respect of itself that it is authorized to enter into this Agreement and that in so doing it is not in violation of the terms or conditions of any contract or other agreement to which it may be a party.

28. <u>Construction and Authorship</u>. The parties hereto agree that the terms and language of this Agreement were the result of negotiations between the parties and, as a result, there shall be no presumption that any ambiguities in this Agreement shall be resolved against

either party merely because of their efforts in its preparation. Any controversy over construction of this Agreement shall be decided without regard to events of authorship or negotiation.

29. <u>Facsimile Signatures</u>. Each party agrees to accept the facsimile signature of the other parties to this Agreement as evidence of the execution and delivery of this Agreement. Such facsimile signature will be deemed to be binding upon the parties sending such facsimile signature. In addition, CMG and IMG agree that facsimile signatures will be deemed to be binding on the parties sending such facsimile signature with respect to the approval required in Sections 2 and 16 regarding the CMG USA Gold Card website

IN WITNESS WHEREOF, the duly authorized representatives of each party have executed this Agreement effective as of the date first written above.

COMMONWEALTH MARKETING GROUP, INC.

By:_____
  (signature)

Name:_____
Title:_____

IMPULSE MARKETING GROUP, INC.

By:_____
  (signature)

Name:_____
Title:_____