Liebler, Ivey, Conner, Berry & St. Hilaire
By:     Floyd E. Ivey
1141 N. Edison, Suite C
P.O. Box 6125
Kennewick, Washington 99336
Local Counsel for Defendant
Impulse Marketing Group, Inc.

Klein, Zelman, Rothermel, & Dichter, L.L.P.
By:     Peter J. Glantz, Esq. & Sean Moynihan, Esq.
485 Madison Avenue
New York, New York 10022
Telephone Number (212) 935-6020
Facsimile Number (212) 753-8101
Attorneys for Defendant
Impulse Marketing Group, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON
### AT RICHLAND

| | |
|---|---|
| JAMES S. GORDON, JR.,<br>an individual residing in<br>Benton County, Washington,<br><br>Plaintiff,<br><br>vs.<br><br>IMPULSE MARKETING GROUP, INC.,<br>A Nevada Corporation<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **No. CV-04-5125-FVS**<br><u>REPLY MEMORANDUM OF<br>LAW IN RESPONSE TO<br>PLAINTIFF'S OPPOSITION<br>AND IN FURTHER SUPPORT<br>OF DEFENDANT'S MOTION<br>TO DISMISS PLAINTIFF'S<br>COMPLAINT</u><br><br>DATE: February 14, 2005 |

### PRELIMINARY STATEMENT

This Reply Memorandum of Law is submitted by defendant, Impulse Marketing Group,

Inc. ("Impulse" or the "Defendant") in response to Plaintiff's Opposition to Defendant's Motion

to Dismiss ("Plaintiff's Opposition") and in further support of Defendant's Motion to Dismiss

1

00066095;1

Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure, §12(b)(6). Defendant has received authority for filing of this Reply on Monday February, 14, 2005, by the telephone conference by attorney Floyd E. Ivey with Judge Van Sickle's Office on or about Monday, February 7, 2005.

Plaintiff's Opposition erroneously argues that res judicata is inapplicable to the current dispute and that, even if res judicata applies, Defendant does not meet the requisite res judicata requirements for the dismissal of Plaintiff's Complaint. In this regard, Plaintiff wrongly contends that: 1) the present claims set forth in Plaintiff's Complaint derive from a different set of facts than Mr. Gordon's prior lawsuit against Commonwealth Marketing Group, Inc. ("CMG") that was filed in Benton County Superior Court on December 15, 2003, and subsequently removed to this Federal Court and assigned to Senior Judge Alan McDonald (Pl. Opp. at 2:4-11) (the "Related Action"); 2) the claims arising from emails that were at issue in the Related Action involve different parties who were not in privity pursuant to Garvey, 383 F.3d 891 C.A.9 (Cal.), 2004, (Pl. Opp. at 10:6-10); 3) Defendant's analysis of Headwaters Inc. v. U.S. Forest Service, 382 F.3d 1025 C.A.9 (Or.), 2004 is flawed (Pl. Opp. at 13: 13-25 and 14: 1-20); and 4) Defendant and CMG are adversarial parties that are not in privity with one another (Pl. Opp. at 14: 23-24 and 15: 2-17). Plaintiff further incorrectly argues that Washington's Commercial Electronic Mail Statute, RCW 19.190 et seq. is not preempted by the federal CAN-SPAM Act of 2003 (Pl. Opp. at 15:22-24) and that Defendant's claim that it could not have violated the Washington Statute as a matter of law is "sophistry" (Pl. Opp. at 17:4-24; 18:1-22; 19:1-19).[1]

---

[1] The State of Washington legislature has defined violations of Washington's Commercial Electronic Mail Statute, RCW 19.190 et seq., as "per se" violations of the Washington Consumer Protection Act, RCW §19.86 et seq. (collectively, the "Washington Statutes").

2

First, Plaintiff's Opposition fails to identify any legitimate legal basis to reject well-established precedent regarding the applicability of the doctrine of res judicata.  Secondly, Defendant respectfully requests that Plaintiff's Compliant is barred by res judicata because: 1) Plaintiff's claims against Impulse could have, and in the exercise of reasonable diligence should have, been raised in the Related Action; 2) the present claims arise out of the very same transaction or nucleus of facts as those plead in the Related Action; 3) the majority of emails allegedly received by Plaintiff in both this lawsuit and the Related Action are the same; 4) the emails that Plaintiff allegedly received after the Related Action was dismissed with prejudice, and on its merits, arise out of the same transaction, occurrence and/or nucleus of facts as Plaintiff alleged in the Related Action; 5) Plaintiff's Opposition omits an analysis of the other factors that this Court must weigh when determining whether claims are identical; 6) Plaintiff misconstrues Garvey and the element of privity for purposes of res judicata preclusion; 7) Plaintiff's argument that Defendant's analysis of Headwaters, Inc. v. U.S. Forest Service is "flawed" is misguided; 8) the interests of Impulse and CMG are not adversarial and Impulse and CMG are in privity; and 9) the Related Action resulted in a judgment on the merits.

In the alternative, Plaintiff's Complaint should be dismissed because Plaintiff's claims are preempted by Federal law and proper violations by Defendant of the Washington Statutes have not been plead with specificity.  Defendant also respectfully requests that this Court grant such other and further relief as it deems just and proper.

3

## LEGAL ARGUMENT

### THE LEGAL DOCTRINE OF RES JUDICATA IS APPLICABLE

Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based upon the same cause of action.  See Restatement (Second) of Judgments §17 (1980).  Yet, in Plaintiff's Opposition, Plaintiff argues that res judicata is inapplicable to the instant lawsuit because the Washington Statutes indicate that, "several persons may each violate separate prohibitions" of the Washington Statutes "in the transmission of a single commercial electronic mail message."  (Pl. Opp. at 17:4-24; 18:1-22; 19:1-19).  Certainly the State of Washington legislature did not intend to permit separate, continuous and repetitive private actions against those people or entities that allegedly transmitted, or were associated with, in any fashion, a single commercial email message.  Plaintiff's analogy to a prior criminal conviction is completely irrelevant to the instant private right civil cause of action.[2]  In effect, Plaintiff is requesting that this Court create an exception to the principle of res judicata for causes of action or suits arising out of violations of the Washington Statutes.  However, Plaintiff fails to cite to any precedent or express language within the Washington Statutes that exempt violations of the Washington Statutes from a res judicata legal analysis on its elements.  In fact, Plaintiff fails to cite to any case law or statutory authority that indicates that res judicata precludes any type of civil cause of action whatsoever, whether statutory, tortious, contractual, or otherwise.  The plain language of the Restatement (Second) of Judgments §17 (1980), as Plaintiff omits from his Opposition, refers to judgments

---

[2] Plaintiff disingenuously argues that just as the prior conviction of a criminal does not operate to prevent the subsequent prosecution of a different criminal, the doctrine of res judicata simply does not apply to separate entities each accused individually of violating the Washington Statutes.  (Pl. Opp. at 5:9-13).

4

on the merits in a prior "suit" barring a second "suit" involving the same parties or their privies based upon the same "cause of action."  Neither the Washington Statutes nor the Restatement (Second) of Judgments §17 (1980) differentiates between the type of "suit" or the specific "cause of action" that would be exempt for a res judicata legal analysis on its elements.  To illustrate this point, Defendant respectfully refers this Court to <u>In Re Behar v. City Bank</u>, 2004 Wash. App. LEXIS 1434 (2004), wherein the Washington Court of Appeals held that plaintiffs' claim that a bank violated the Washington Consumer Protection Act (the same statute that Plaintiff alleges Impulse violated) was precluded by the doctrine of res judicata.  Based upon this precedent, and the lack of any precedent or authority exempting the Washington Statutes from a legal analysis of res judicata on its elements, Plaintiff's argument that res judicata does not apply to bar his Complaint is completely without merit.  To carve an exception out for the Washington Statutes, where none exists, is without any legal authority.

### PLAINTIFF'S COMPLAINT IS BARRED BY RES JUDICATA

Res judicata encompasses the idea that when parties to two successive proceedings are the same, and the prior proceeding culminated in a final judgment, a matter may not be relitigated, or even litigated for the first time, if it could have been raised, and in the exercise of reasonable diligence should have been raised, in the prior proceeding.  <u>Sound Built Homes v. Windermere Real Estate/South, Inc.</u>, 118 Wn. App. 617; 72 P.3d 788, 794; 2003 Wash. App. LEXIS 1510.  The res judicata preclusion doctrine encompasses a vindication of public rights by "avoiding inconsistent results and preserving judicial economy."  <u>Clements v. Airport Auth.</u>, 69 F.3d 321, 330 (9th Cir. 1995).

5

***The present claims arise out of the very same transaction or nucleus of facts as those plead in the Related Action.***

Plaintiff argues that the present claims plead in his Complaint derive from a different set of facts than those plead in the Related Action. (Pl. Opp. at 6:11-12). Plaintiff also erroneously maintains that the claims set forth in his Complaint could not have been asserted in the Related Action (Pl. Opp. at 6:24-25). As set forth in Defendant's Motion to Dismiss, to determine whether claims are identical, the Court must consider the following factors: (1) whether any rights or interests that were established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the both actions; (3) whether both lawsuits involve infringement of the same right; and (4) whether both matters arise out of the same transaction or nucleus of facts. Feminist Women's Health Center v. Codispoti, 63 F.3d 863, 867, (9th Cir. 1995). Although not all of these elements are necessary for a finding that there is an identity of claims, it has been widely held that the most significant criteria that a court must consider is whether the two actions arise out of the same transaction or nucleus of facts. Id. at 86.

In the Related Action, Plaintiff alleges the following facts in his First Amended Complaint annexed to the Declaration of Phillip Huston, dated January 21, 2005, as Exhibit "C": 1) that Plaintiff is the registrant of the internet domain name "Gordonworks.com" (the "Domain"); 2) that Plaintiff's status as a Washington resident is and was available, upon request, from Plaintiff; 3) that Plaintiff's Domain has been, and is registered with, the Washington Association of Internet Service Providers' ("WAISP") database; 4) that CMG initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission, of thousands of commercial electronic mail messages to Plaintiff at the Domain; 5) that the

6

commercial electronic mail messages violated at least one prohibition of the Washington Statutes because each of the electronic mail messages misrepresented or obscured information identifying its point of origin and the transmission path; 6) that the commercial electronic mail messages contained false or misleading information in the subject line of the message; and 7) that CMG knew or consciously avoided knowing that the initiator of the commercial email messages was engaged in a practice that violated the Washington Statutes  See Exhibit "C," ¶¶ 3.2, 3.3, 3.4, 3.6, 3.8, 3.9., and 3.10.

Plaintiff pleads the exact same allegations and claims in his Complaint against Impulse. See Exhibit "D," annexed to the Declaration of Phillip Huston, dated January 21, 2005 ¶¶ 3.1, 3.2, 3.3, 3.4, 3.6, 3.7, 3.8, 3.9, 3.10, and 3.12 for a verbatim rendition of the allegations contained in Plaintiff's Complaint in the Related Action.

***The majority of emails allegedly received by Plaintiff in both this lawsuit and the Related Action are the same and Plaintiff could have, and in the exercise of reasonable diligence should have, sued Impulse for claims arising out of his alleged receipt of such emails in the Related Action.***

In Plaintiff's Opposition, he attempts to confuse this simple motion.  Plaintiff's attempt to argue that the claims arising out of the emails that form the basis of recovery in this lawsuit could not have been raised against Impulse in the Related Action is false.  Plaintiff's effort to distinguish and organize the emails that he allegedly received into three (3) categories,[3] disguises the fact that Plaintiff's receipt of any and all emails arise out of the same transaction or

---

[3] Plaintiff's Opposition divides the emails that he allegedly received into the following categories: 1) those claims arising from email messages that were allegedly transmitted by Impulse that offered products from companies other than CMG; 2) claims related to email that were sent after the Related Action was dismissed; and 3) claims against Impulse that were part of the claims in the Related Action (Pl. Opp. at 8-9) (hereinafter, "Category 1, 2 or 3, respectively").

7

occurrence and/or nucleus of facts that forms the basis for both this lawsuit and the Related Action.[4]  Moreover, Plaintiff has already been compensated for the alleged violations of his rights, however fabricated and pretextual.

Plaintiff admits that those claims arising from the receipt of email messages that fall within Category 1 and 3 were: a) emails allegedly transmitted by Impulse that offered products from companies other than CMG; and b) emails for claims against Impulse that formed the basis of the Related Action (Pl. Opp. at 8-9).  Accordingly, it is Defendant's contention that these claims, arising out of Plaintiff's receipt of these emails, could have, and in the exercise of reasonable diligence should have, been raised against Impulse as a co-defendant in the Related Action.  Plaintiff admits that the Category 1 emails were allegedly transmitted by Impulse – not CMG. (Pl. Opp. at 8-9).  As such, Plaintiff had actual knowledge of Impulse's alleged involvement in transmitting the Category 1 emails at the time of his Complaint in the Related Action.

As to the Category 3 emails, Plaintiff further admits that these email messages were claims "against Impulse that "formed the basis for Plaintiff's recovery in the Related Action." (Pl. Opp. at 9:16-19).  Why were Plaintiff's claims arising out of the Category 3 emails not raised against Impulse in the Related Action, when, Plaintiff had actual knowledge (above and beyond the exercise of "reasonable diligence") that Impulse was the exclusive marketing partner for CMG products?   Plaintiff had already completed his "reasonable diligence" at the time the Complaint in the Related Action was filed and served or, at the very least, during the discovery

---

[4] Both this lawsuit and the Related Action arise out of the fact that Plaintiff repeatedly "opted in" to receive email messages from CMG, Impulse or their marketing partners.

8

phase of the Related Action.  Plaintiff's failure to initially sue, or subsequently implead, Impulse in the Related Action for those claims arising out of the emails set forth in Category 3 bars him from recovering from Impulse in the instant lawsuit based upon res judicata principles.    To allow Plaintiff to sue Impulse now, in a separate action, once the Related Action has been dismissed, with prejudice and on its merits, is completely contrary to the principle of res judicata.

***The Category 2 emails that Plaintiff allegedly received after the Related Action was dismissed with prejudice, and on its merits, arise out of the same transaction, occurrence and/or nucleus of facts as Plaintiff alleged in the Related Action.***

Plaintiff's receipt of any and all Category 2 email messages (those allegedly arising after the dismissal of the Related Action), arise out of one simple transaction that is common to both this lawsuit and the Related Action.  The foundation of both lawsuits arises from Plaintiff, on dozens of occasions, "opting in" to receiving email messages from CMG, Impulse and/or their marketing partners[5] so that he can eventually sue these businesses for violations of the Washington Statutes.  Without this single transaction, Plaintiff would not, and could not, have received any emails from Impulse, CMG or their marketing partners.  The Category 2 emails allegedly received by Plaintiff also arise out of the following facts and allegations that are common to this lawsuit and the Related Action: 1) that Plaintiff is the registrant of the Domain; 2) that Plaintiff's status as a Washington resident is and was available, upon request, from Plaintiff; and 3) that Plaintiff's Domain has been, and is registered with, the Washington Association of Internet Service Providers' ("WAISP") database.  As such, the Category 2 emails

---

[5] Plaintiff has admitted "opting in" on dozens of occasions to receive commercial emails from CMG and its marketing partners.  The clear intent of Plaintiff's action is to use stalking horses to fabricate a liability situation.  This was clearly not the intent of the State of Washington legislature in enacting the Washington Statutes.

9

that Plaintiff allegedly received after the Related Action was dismissed, arise out of these material facts that are common to the instant lawsuit and the Related Action and any such claims arising out of the Category 2 emails should also be barred from being asserted.

***Plaintiff's Opposition conveniently omits an analysis of the other factors that this Court must weigh when determining whether claims are identical.***

When determining whether claims are identical, the Court must also consider whether substantially the same evidence is presented in both actions and if both lawsuits involve infringement of the same right. Plaintiff fails to provide any response in his Opposition to these factors and thereby admits Defendant has satisfied these factors. Mr. Gordon must disclose the same evidence to support his claims in this lawsuit as he produced during the discovery phase of the Related Action in order to satisfy his burden of proof here. Both matters require the testimony of Plaintiff, individuals utilizing the Domain and both CMG and Impulse employees. Moreover, Plaintiff will need to produce the Website Development and Marketing Services Agreement (the "Agreement") annexed to the Declaration of Phillip Huston, dated January 21, 2005, as Exhibit "E," and any and all evidence pertaining to Plaintiff's common allegation that the Domain was registered with the WAISP database.

Additionally, Plaintiff offers no response to Defendant's contention that the instant lawsuit and the Related Action involve an alleged infringement of Plaintiff's rights by CMG and Impulse that are indistinguishable. Plaintiff fails to refute that he seeks to recover damages for the alleged infringement by Impulse and CMG, respectively, of Plaintiff's perceived right to be precluded from receiving email messages pursuant to the Washington Statutes based upon Plaintiff's inclusion in the WAISP database. In both the instant matter and the Related Action, Plaintiff seeks to recover damages from two different defendants, in two separate lawsuits, both

10

of which arise out of precisely the same infringement upon Plaintiff's rights.[6]  Such rights could have, and in the exercise of reasonable diligence should have, been raised against Impulse in the Related Action.   Since Plaintiff fails to refute that Defendant satisfies these two factors, Plaintiff's claims in both the instant litigation and the Related Action are identical for purposes of res judicata.  Therefore, Plaintiff's attempt to sue Impulse in the instant litigation for the same claims he raised in the Related Action tramples on the public policy reasoning behind the res judicata preclusion doctrine that is supposed to vindicate public rights by avoiding inconsistent results and preserving judicial economy.  Plaintiff's Complaint is no more than a simple instance of "double dipping."

***Plaintiff misconstrues <u>FTC v. Garvey</u> and the element of privity for purposes of res judicata preclusion.***

Plaintiff's analysis of <u>FTC v. Garvey</u>, 383 F.3d 891 C.A.9 (Cal.), 2004, is flawed and omits significant differences between the instant situation and that of <u>Garvey</u>.  Defendant does not contest Plaintiff's recitation of the procedural history of <u>Garvey</u> contained in his Opposition.

However, Plaintiff's Opposition misconstrues the Ninth Circuit's holding in <u>Garvey</u> by omitting the Court's primary reason for its holding.  In <u>Garvey</u>, the Ninth Circuit held that the defendants in the first action were "not sufficiently connected" to the Modern Interactive defendants to justify barring the FTC's claims against the Modern Interactive defendants because "there was no indication that the defendants in the Enforma action were acting on behalf of the Modern Interactive defendants." <u>Id</u>.

The instant matter is clearly distinguishable from <u>Garvey</u> because the Agreement between CMG and Impulse evidences Defendant's contractual duty to act and provide various

---

[6] Plaintiff has been compensated for the alleged infringement of his rights.

11

services in the design, development and hosting (operation) of CMG's USA Gold Card Website and to supply CMG with various marketing services designed to drive traffic to CMG's USA Gold Card Website pursuant to the express language of Section 2 of the Agreement. Additionally, Section 4 of the Agreement expressly authorizes Impulse to "act for or on behalf of" CMG for purposes of the services contemplated under the Agreement and Impulse acted on behalf of CMG with respect to Defendant's duties to: a) secure confidential information; b) indemnify CMG in certain instances; and c) provide CMG with minimum marketing requirements.

Secondly, <u>Garvey</u> involves the protection of public rights. The instant litigation is a private right of action that is clearly distinguishable. Based upon these strong distinctions, <u>Garvey</u> is completely different from the case at bar and not controlling.

***Plaintiff's argument that Defendant's analysis of <u>Headwaters, Inc. v. U.S. Forest Service</u> is "flawed" is misguided.***

In Defendant's Motion to Dismiss, Defendant cites to <u>Headwaters, Inc. v. U.S. Forest Service</u>, 382 F.3d 1025 C.A.9 (Or.) 2004 to merely set forth the factors that this Court must look at to determine whether privity exists for purposes of a res judicata analysis. Despite Plaintiff's assertions to the contrary, <u>Headwaters</u> is eerily similar to the situation herein. In <u>Headwaters</u>, days after the complaint that Klamath-Siskiyou filed, a named party in a prior litigation, was dismissed, Headwaters filed a virtually identical complaint with much of the same language taken verbatim from the complaint filed and served in the first action. Headwaters' attorney, who was also the attorney for Klamath-Siskiyou, filed the second complaint with the only appreciable difference between the documents being the names of the litigants. In the case at bar, Mr. Gordon filed a virtually identical Complaint against Impulse, with much of the same

12

language taken verbatim from the Complaint filed in the Related Action. The only appreciable difference between the two Complaints was that CMG was the defendant in the Related Action and Impulse was the named defendant in this lawsuit. Moreover, Mr. Gordon's attorney in the first action was also Mr. Gordon's attorney in the Related Action.

Notwithstanding the striking resemblance between these two cases, the court in Headwaters held that, "when a tactical decision is made to manipulate the court's decision and avoid the preclusive effect of a prior judgment, privity can be properly found." The Headwaters court went on to state that, "refiling a decided action wastes scarce judicial resources but also shows corrosive disrespect for the finality of the decision." Id. "Were the court to hold otherwise, groups would be free to attack a judgment *ad infinitum* by arranging for successive actions." Id. Further, the ability of plaintiff's to continually bring successive suits against parties in privity based upon the same cause of action and nucleus of facts, calls into question the courts' ability to ever settle a case. (emphasis supplied) Id.

***The interests of Impulse and CMG are not adversarial and Impulse and CMG are in privity.***

In Plaintiff's Opposition, he misleads the Court by falsely asserting that any claim of privity between Impulse and CMG is in direct contradiction to Defendant's own conduct in "refusing" to indemnify CMG. (Pl. Opp. at 15:11-14). Such an assertion is false. According to the Declaration of David O. Klein, dated January 25, 2005, "[A]fter examining the terms of the Agreement, an understanding between CMG and Impulse to defend and indemnify it in the Related Action could not be reached. As such, Impulse did not defend, indemnify and/or hold CMG harmless in the Related Action." As the Court will acknowledge, nowhere did Defendant ever admit that it "refused" to indemnify CMG. In truth, the possibility exists, that Impulse may

13

have to indemnify CMG.  Notwithstanding this contention, Plaintiff has no standing whatsoever

to assert and determine whether or not CMG was entitled to be indemnified in the Related

Action, nor has Plaintiff the right to interpret the express language of the indemnification clause

located within the Agreement as Plaintiff was neither a party, nor a third party beneficiary to the

Agreement.

Moreover, Plaintiff cites to <u>Bianchi v. Walker</u>, 163 F.3d 564, (9th Cir. 1998) in support of

his fallacious belief that Impulse and CMG are "adversarial parties."  However, <u>Bianchi</u> is clearly

distinguishable from the case at bar because in <u>Bianchi</u>, the Bank actually filed an action against

the Government disrupting any claim that the two parties were in privity with one another for

purposes of res judicata.  No such litigation has ever ensued between Impulse and CMG.

Ironically, Plaintiff cites to <u>Garvey</u> in support of his contention that Impulse and CMG are

not in privity with one another.  However, this matter case actually supports Defendant's

argument that for purposes of res judicata, "privity is a flexible concept dependent on the

particular relationship between the parties in each individual set of cases." <u>FTC v. Garvey</u> 383

F.3d 891, 899.  In <u>Garvey</u>, the Ninth Circuit referred to the following holding:

> First, a non-party who has succeeded to a party's interest in property is bound by any prior judgment against the party. Second, a non-party who controlled the original suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit.  In addition, "privity" has been found where there is a "substantial identity" between the party and non-party, where the non-party "had a significant interest and participated in the prior action," and where the interests of the non-party and party are "so closely aligned as to be virtually representative."  Finally, a relationship of privity can be said to exist when there is an "express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues. <u>Headwaters, Inc.</u>, at * 10 *quoting* <u>In re Schimmels</u>, 127 F.3d at 881.

14

Contrary to Plaintiff's assertions, Impulse had, and still has, an express legal relationship with CMG, irrespective of the indemnification clause contained in the Agreement and, throughout the course of the Related Action, maintained a significant interest in the outcome, and participated in the Related Action. See, Declaration of David O. Klein, dated January 25, 2005. In fact, other provisions within the Agreement establish that CMG and Impulse have an express legal relationship with one another. Plaintiff's Opposition fails to refute these assertions contained in Defendant's Motion to Dismiss. The Agreement between CMG and Impulse evidences Defendant's contractual duty to act and provide various services in the design, development and hosting (operation) of CMG's USA Gold Card Website. Further, Impulse legally agreed to supply CMG with various marketing services designed to drive traffic to CMG's USA Gold Card Website. The Agreement also expressly authorized Impulse to "act for or on behalf of" CMG for purposes of the services contemplated under the Agreement. Lastly, Impulse acted on behalf of CMG with respect to Defendant's duties to secure confidential information and provide CMG with minimum marketing requirements. Therefore, these other provisions within the Agreement establish that CMG and Impulse have an express legal relationship and are in privity with one another above and beyond the language set forth in the indemnification clause contained in the Agreement.

While Impulse was not a party to the Related Action, Impulse participated in the Related Action. Impulse provided CMG's counsel with documentation establishing that Plaintiff had consented to receiving the commercial email at issue, examined pleadings and discovery disclosures and their effect on Impulse and communicated with CMG's counsel to protect

15

Impulse's potential legal obligations toward CMG.  <u>See</u> Declaration of David O. Klein, dated January 21, 2005.

Based upon the Agreement between CMG and Impulse a legal relationship exists between Impulse and CMG by which Impulse is potentially accountable to CMG.  Additionally, Impulse had a significant interest in the Related Action to warrant Impulse's participation throughout the course of the Related Action.  As such, sufficient privity exists between CMG and Impulse.

***The Related Action resulted in a judgment on the merits.***

There has been a final judgment on the merits in the Related Action despite Plaintiff's contention to the contrary.  "The dismissal of an action with prejudice constitutes a final judgment on the merits and precludes a party from reasserting the same claims in a subsequent action." <u>Headwaters, Inc. v. Forest Conservation Council</u>, 2004 U.S. App. LEXIS 18930, at *9 (9th Cir. 2004) *citing,* <u>International Union of Operating Engineers v. Karr</u>, 994 F.2d 1426, 1429 (9th Cir. 1993); *see* <u>Lawrence v. Steinford Holding B.V. (In re Dominelli)</u>, 820 F.2d 313, 316-17 (9th Cir. 1987) (dismissal of action with prejudice pursuant to a settlement agreement constitutes a final judgment on the merits and precludes parties from reasserting the same claims in a subsequent action).  According to the Court docket report, Hon. Alan A. McDonald dismissed the Related Action <u>with prejudice</u> (emphasis added).  <u>See</u> Exhibit "B" annexed to the Declaration of Phil Huston, dated January 21, 2005.  The dismissal was entered by the Court on or about October 20, 2004 and was filed as a "text-only entry." <u>See</u> Exhibit "B."  Accordingly, the Related Action was disposed of by a "judgment on the merits."

Since Impulse meets all the res judicata elements established by the Ninth Circuit, and Plaintiff could have, and in exercising reasonable diligence, should have, raised these identical

16

claims in the Related Action, Plaintiff should be estopped from asserting any and all claims against Impulse in the instant action and, therefore, Plaintiff's Complaint must be dismissed in its entirety, as a matter of law, pursuant to Federal Rules of Civil Procedure 12(b)(6).

## PLAINTIFF'S ARGUMENT THAT THE WASHINGTON STATUTES ARE NOT PREEMPTED BY FEDERAL LAW IS INCORRECT

Plaintiff's argument that the Washington Statutes are not pre-empted by federal law is misguided because Plaintiff failed to cite to any precedent or authority that holds that The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), effective January 1, 2004, does not preempt the Washington Statutes. In fact, CAN-SPAM was passed to impose limitations and penalties on the transmission of unsolicited commercial email via the Internet, which is precisely what Plaintiff alleges against Impulse and CMG and forms the basis of Plaintiff's Complaint in this lawsuit and the Related Action. Congresses intent in passing this federal legislation was to regulate or reduce unsolicited commercial email. Congress found that state statutes that attempted to regulate this area imposed different standards and requirements. As a result, state statutes were unsuccessful in addressing the problems associated with unsolicited commercial email, in part because, an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of the disparate state statutes they were required to comply. Accordingly, Section (8)(b) of CAN-SPAM specifically states that, "[t]his Act supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages...." Since Plaintiff's Complaint was filed and served against Impulse after the effective date of CAN-SPAM,

17

Plaintiff's causes of action for Defendant's alleged violations of the Washington Statutes are expressly pre-empted by federal legislation.

### <u>PLAINTIFF FAILS TO PLEAD WITH SPECIFICITY ALLEGATIONS THAT DEFENDANT VIOLATED THE WASHINGTON STATUTES AND THE WAISP DATABASE IS INSUFFICIENT TO IMPUTE KNOWLEDGE ON AN OUT-OF-STATE MARKETER</u>

Even assuming that the Washington Statutes are not preempted by CAN-SPAM, which Defendant vehemently opposes, Plaintiff still fails to plead, with specificity, allegations that Defendant violated the Washington Statutes as required by Fed. R. Civ. P. 9(b).  Pursuant to <u>Fidelity Mortgage Corp. v. Seattle Times Company</u>, 213 F.R.D. 573; 2003 U.S. Dist. LEXIS 4508; 32 Media L. Rep.1094, cases that are "grounded in fraud" or "sound in fraud" must satisfy the particularity requirement of Fed. R. Civ. P. 9(b).  In <u>Fidelity Mortgage Corp.</u>, Plaintiff's claims rested on the allegation that defendant, Seattle Time Co., "knowingly" published false, deceptive, and/or misleading Interest Rates in their print and online publications. <u>Id</u>. at 576.  The court held that plaintiff's complaint failed to allege, *inter alia*, why the information published by the defendant was false or misleading.  The court went on to dismiss plaintiff's complaint because of the heightened-pleading requirements under Fed. R. Civ. P. 9(b).

The case at bar is remarkably similar.  Plaintiff's claim rests on allegations that Impulse "knew" or "consciously avoided knowing" that the emails at issue violated the Washington Statutes and that the emails simply "misrepresented or obscured information."  Plaintiff's Complaint fails to allege: a) what is deceptive and misleading about the emails; b) why the emails are misleading; c) the time, place, and statements contained in the emails that are deceptive or misleading; d) an explanation of how the emails are misleading and/or deceptive; e)

18

how the subject line of the emails contained false or misleading information; and f) how the

point of origin or the transmission path of the emails were obscured or misrepresented.

Plaintiff's Complaint is surreptitiously void of any of these details.  Accordingly, Defendant

questions whether the lack of particularity of Plaintiff's Complaint in this regard, is an attempt

by Plaintiff to shield Defendant from definitively establishing that Plaintiff's claims are identical

to the Related Action and are barred by res judicata.

  Since there is no indication anywhere in Plaintiff's Complaint as to the misleading and/or

deceptive nature of the subject line or point of origin of the emails, Defendant would be remiss

not to also point out that Plaintiff provided Impulse with his express permission to receive emails

from Impulse, CMG or one of their marketing partners.[7]  How can Plaintiff, on the one hand,

give his express permission to receive commercial email from Impulse, CMG or one of their

marketing partners while, simultaneously, alleging that his Domain is protected from the receipt

of commercial email based upon the Domain's inclusion in the WAISP database?

  Even assuming that Impulse had to "scrub" against the WAISP database before sending

commercial email and after receiving the express permission from the registrant, the WAISP

database verifies email addresses one at a time, by a time consuming process that is not

---

   [7] Impulse's database of e-mail addresses indicates for each e-mail address: (1) the website at which a person has signed up to receive offers from Impulse or its marketing partners; (2) the date on which the sign up took place; and (3) the e-mail address of the user. Sometimes, additional information is gathered including, but not limited to, the IP Address being used when the person signed up.  Upon searching its database of e-mail addresses, Impulse discovered that Plaintiff registered with certain websites to receive products and/or services that were marketed by Impulse and/or CMG.  The documentary evidence establishes that Mr. Gordon gave Impulse his express permission to receive commercial email from Defendant.  See Exhibit "F" annexed to the Declaration of Phil Huston, dated January 21, 2005. The documentary evidence establishes that people using Plaintiff's Domain consented or "opted-in" to receiving commercial email from Impulse, CMG or one of their marketing partners on numerous occasions.  The submission by Plaintiff of his email addresses on several websites serves as affirmative consent to the receipt of commercial email from Impulse, CMG and/or their marketing partners.  By "opting-in" and, upon Plaintiff's consent, Plaintiff expressly agreed to the terms of the Privacy Policies set forth on the websites (set forth hereinbelow).  The Privacy Policies allow for the disclosure of Plaintiff's email address to third parties for marketing purposes.

19

reasonable for an Internet marketer, and does not allow for aggregate queries of email addresses. The availability of this interactive process is insufficient to establish that Impulse knew, or had reason to know that Mr. Gordon's email address was located in the WAISP database, especially after Mr. Gordon "opted in" to receive commercial email from Impulse, CMG or one of their marketing partners. Plaintiff alleges that Impulse knew or had reason to know that Mr. Gordon's Domain was in the WAISP database because this information could be determined by inputting the email address into the website operated by the WAISP database. While the WAISP website permits registered users to input an email address and individually verify whether the particular email address is contained in the WAISP Registry (i.e., registered to a Washington resident), the fact that the WAISP Registry contained Mr. Gordon's e-mail address does not necessarily lead to the conclusion that Impulse knew or had reason to know that Mr. Gordon's email address was listed in the WAISP database. In this regard, Plaintiff fails to adequately distinguish <u>Cybersell, Inc. v. Cybersell, Inc.</u>, 130 F.3d 414, 416 (9th Cir. 1997), from the instant lawsuit. While Defendant agrees with Plaintiff that <u>Cybersell</u> involved a violation of Due Process rights in terms of personal jurisdiction, the case is still applicable, and very similar to the instant situation. Defendant Cybersell, Inc., a Florida corporation ("Cybersell FL") registered the domain name "cybersell.com." Plaintiff Cybersell, Inc., an Arizona corporation ("Cybersell AZ") had submitted an application to register the name "Cybersell" as a service mark, and had previously operated a website using the mark. When Cybersell AZ discovered Cybersell FL's website, it filed a trademark infringement action in the District of Arizona. In <u>Cybersell</u>, the plaintiff argued that the defendant should be deemed to have knowledge that Cybersell FL's website injured Cybersell AZ since Cybersell FL could have simply performed a trademark search to

20

determine the identity of the potential plaintiff.  The court held that Constitutional Due Process principles did not impose such a burden on those making information available over the Internet. Cybersell, 130 F.3d at 420.  Similarly, in the present case, traditional due process principles do not impose upon out-of-state e-mail marketers[8] the unreasonable and impossible duty to search each email address on its marketing list at the WAISP Registry or anywhere else, especially since Plaintiff gave his permission to receive such emails.  Callaway Golf Corp. v. Royal Canadian Golf Ass'n, 125 F. Supp. 2d 1194, 1200 (C.D. Cal. 2000) (rejecting requirement that non-resident defendant investigate plaintiff's place of business or incorporation).  Any requirement to the contrary would violate Impulse's Due Process rights whether for purposes of personal jurisdiction, as these cases hold, or for other constitutional Due Process protections such as proper notice to Impulse that Plaintiff's Domain was located in the WAISP database.

Accordingly, Plaintiff has failed to sufficiently plead with specificity, allegations that Defendant violated the Washington Statutes as required by Fed. R. Civ. P. 9(b).  Since there is no indication anywhere in Plaintiff's Complaint as to the misleading and/or deceptive nature of the subject line or point of origin of the emails and Plaintiff provided Impulse with his express permission to receive emails from Impulse, CMG or one of their marketing partners, Impulse could not have violated the Washington Statutes as a matter of law because it had no knowledge that Plaintiff's email address was listed in the WAISP database.  In truth, Impulse had actual knowledge that Plaintiff consented to receiving such email from Impulse, CMG and/or one if their marketing partners.

---

[8] Impulse Marketing Group, Inc. is a Nevada Corporation with its principle place of business located in Atlanta, Georgia.

21

## CONCLUSION

Based upon the foregoing, Impulse respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety pursuant to Federal Rules of Civil Procedure, 12(b)(6) on the grounds that: 1) Plaintiff's claims are barred by the legal doctrine of res judicata; 2) Plaintiff's claims are preempted by Federal law; 3) Plaintiff failed to sufficiently plead with specificity, allegations that Defendant violated the Washington Statutes as required by Fed. R. Civ. P. 9(b). Defendant also respectfully requests that this Court grant such other and further relief as it deems just and proper.

Dated:  February 14, 2005

s/ Floyd E. Ivey_____
Floyd E. Ivey
Liebler, Ivey, Connor, Berry & St. Hilaire


S/ Floyd e. Ivey on behalf of Sean A. Moynihan and Peter J. Glantz
Sean A. Moynihan & Peter J. Glantz
Klein, Zelman, Rothermel, & Dichter, L.L.P.


I hereby certify that a copy of the foregoing was filed by EFS on this 14th day of February, 2005, with the Federal District Court.

s/ Floyd E. Ivey_____
FLOYD E. IVEY

22