Liebler, Ivey, Conner, Berry & St. Hilaire
By:     Floyd E. Ivey
1141 N. Edison, Suite C
P.O. Box 6125
Kennewick, Washington 99336
Local Counsel for Defendant/Third-Party Plaintiff
Impulse Marketing Group, Inc.

Klein, Zelman, Rothermel & Dichter, L.L.P.
By:     Sean A. Moynihan & Peter J. Glantz
485 Madison Avenue
New York, New York 10022
Telephone Number (212) 935-6020
Facsimile Number (212) 753-8101
Attorneys for Defendant/Third-Party Plaintiff
Impulse Marketing Group, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON
## AT RICHLAND

| | |
|---|---|
| JAMES S. GORDON, JR., )<br>Plaintiff, )<br> )<br>vs. )<br>IMPULSE MARKETING GROUP, INC., )<br> )<br>Defendant, )<br> )<br>IMPULSE MARKETING GROUP, INC., )<br> )<br>Third-Party Plaintiff, )<br>vs. )<br>BONNIE GORDON, JAMES S. GORDON, III, )<br>JONATHAN GORDON, JAMILA GORDON, )<br>ROBERT PRITCHETT, EMILY ABBEY, and )<br>LEW REED, )<br> )<br>Third-Party Defendants. ) | **No. CV-04-5125-FVS** |

## DECLARATION OF PETER J. GLANTZ IN OPPOSITION TO THIRD PARTY DEFENDANTS' MOTION TO DISMISS IMPULSE MARKETING GROUP, INC.'S THIRD PARTY AMENDED COMPLAINT

Peter J. Glantz, being duly sworn, deposes and says, upon information and belief:

{00074679;1}

Dockets.Justia.com

1.     My name is Peter J. Glantz and I am an associate with the law firm of Klein, Zelman, Rothermel & Dichter L.L.P., counsel for Impulse Marketing Group, Inc. ("Impulse").

2.     I submit this declaration in opposition to the motion of third party defendants Bonnie Gordon, James S. Gordon, III, Jonathan Gordon, Jamila Gordon, Robert Pritchett and Emily Abbey ("Third Party Defendants") to dismiss Impulse's Third Party Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, 9(b) (the "Motion").

### Procedural History

3.     In 2003, Plaintiff James Gordon ("Gordon" or "Plaintiff") filed a lawsuit against Commonwealth Marketing Group, Inc. ("CMG") (the "Related Action") for alleged violations of RCW 19.190 et seq.

4.     On November 23, 2004, Plaintiff filed the instant lawsuit against Impulse (the "Instant Action") on similar grounds.[1]

5.     Plaintiff and his attorney have filed multiple actions against various defendants using similar, if not identical, theories of recovery in each action.

6.     On or about January 21, 2005, Impulse moved to dismiss the Instant Action, as a matter of law, pursuant to Rule 12(b)(6).

7.     This Court denied Impulse's motion to dismiss Gordon's complaint on or about July 11, 2005 and did not require Plaintiff to plead his Complaint with specificity pursuant to Rule 9(b).

---

[1] Plaintiff is neither a victim, nor an intended protected party under RCW 19.190 et seq. Instead, Plaintiff systematically fabricated claims against legitimate businesses with the intent to coerce economic settlements.

8.      Accordingly, Impulse did not have an opportunity, until recently, to begin its examination of the voluminous e-mails at issue in the Instant Action.

9.      On September 7, 2005, Impulse filed a Third Party Amended Complaint against each of the Third Party Defendants arising out of Third Party Defendants' wrongful and fraudulent conduct in connection with Plaintiff's claims false and fabricated against Impulse in the Instant Action.

10.     Third Party Defendants have failed to interpose a timely Answer to the Third Party Amended Complaint.

11.     Instead, pro se Third Party Defendants now, after the time respond to the Third Party Amended Complaint has long since expired, move to dismiss the Third Party Amended Complaint arguing that: (1) no factual basis exists for Impulse's Third Party Amended Complaint; and (2) even if one assumes the truth of all of Impulse's factual allegations contained in its Third Party Amended Complaint, Impulse still fails to state claims upon which relief can be granted.

### Introduction

12.     Impulse is a permission-based on-line marketing company that collects personally identifiable information from individuals who sign up to receive free products and/or services at websites run by Impulse and/or its marketing partners. (Second Am. Compl. ¶1.)

13.     In reciprocal consideration for receiving free products and/or services from an Impulse-related website, Impulse requires that individuals using its websites agree to submit to Impulse accurate personal subscriber information ("Registration Information" or "Subscriber Profile"). (Second Am. Compl. ¶2.)

14.    By submitting their Subscriber Profile to Impulse, individuals explicitly grant Impulse the right to use their Subscriber Profile for, *inter alia*, transferring the Subscriber Profile to third parties for marketing purposes. (Second Am. Compl. ¶3.)

15.    Impulse derives substantial revenue from the licensing and/or use of accurate Subscriber Profiles. This quid pro quo is the fundamental business model of on-line marketing. (Second Am. Compl. ¶4.)

16.    An accurate and truthful Subscriber Profile for the products and/or services located at the applicable Impulse-related website is therefore of utmost significance to Impulse. Any failure of an individual to provide Impulse with an accurate and truthful Subscriber Profile, in violation of the applicable website Terms and Conditions, adversely impacts Impulse's business revenue because an inaccurate Subscriber Profile in the open market is considered a bad lead for other third party marketing companies. (Second Am. Compl. ¶¶5-6.)

17.    Licensing or using inaccurate Subscriber Profiles damages Impulse's reputation and negatively impacts Impulse's relationships with its third party marketing partners. Third Party Defendants are complicit in a premeditated and systematic effort to cause harm to Impulse by: (a) providing Impulse with false and/or inaccurate Subscriber Profiles at various Impulse-related websites; (b) conspiring with Plaintiff to provide Impulse with false and/or inaccurate Subscriber Profiles; (c) conspiring with Plaintiff to have Mr. Gordon claim to be said third parties when in fact, the individual certifying their identity and accuracy of their Subscriber Profile was in fact someone else, to wit, Plaintiff; (d) repeatedly soliciting, unsubscribing and then repeatedly re-soliciting email from Impulse and/or its marketing partners in a scheme to fabricate and exacerbate

claims against Impulse based upon their subjective belief that Impulse violated RCW 19.190 et seq.; (e) failing to give Impulse the benefit of the bargain, particularly after Third Party Defendants received free products and/or services from the applicable Impulse-related website while Impulse received inaccurate, untruthful, or otherwise incomplete Subscriber Profiles in return; (f) having specific intent to drive email messages to the "gordonworks.com" domain (the "Domain") which emails Third Party Defendants subjectively believed violated RCW 19.190 et seq., solely for the purposes of causing Impulse pecuniary and reputational harm while deliberately attempting to fabricate and exacerbate legal claims; and (g) interfering with existing agreements between Impulse and its third party marketing partners. (Second Am. Compl. ¶7.)

18.     Third Party Defendants' actions were undertaken in deliberate bad faith and there was no legitimate reason for Third Party Defendants to engage in such a premeditated and systematic scheme to cause harm to Impulse.

## Questions of Fact That Preclude Dismissal Under 12(b)(6)

19.     In addition to the explicit and exhaustive factual allegations contained in Impulse's Third Party Amended Complaint Plaintiff's declaration dated August 15, 2005 in support of Plaintiff's Motion to Dismiss Impulse's Amended Counterclaims (the "Gordon Declaration") contains several admissions that implicate Third Party Defendants. The Gordon Declaration asserts, under penalties of perjury, that:

- Gordon created numerous e-mail addresses by fictitiously using the names of his friends and family members that he identified as witnesses in his Initial Disclosures in the Related Action (the "Gordon Initial Disclosures"). See Exhibit "A" ¶3, that was previously annexed to the Declaration of James Bodie, dated September 23, 2005, for a copy of the Gordon Initial Disclosures in the Related Action[2] (the "Bodie Declaration");

---

[2] This Court has already taken judicial notice of the Related Action in its Order Denying Defendant's Motion To Dismiss, dated July 11, 2005.

- Although the e-mail addresses related to Gordon's family members, all of the e-mail addresses were purportedly "created and maintained" by Gordon, <u>and e-mails sent to any of those e-mail addresses were "received" by Gordon himself</u>. <u>See</u> Exhibit "A" previously annexed to the Bodie Declaration ¶7 (emphasis added); and

- Gordon "used" certain e-mail addresses that belonged to his family and other witnesses. <u>See</u> Exhibit "A" previously annexed to the Bodie Declaration ¶9.

20.    By contrast, the Gordon Initial Disclosure in the Related Action reveals a factual inconsistency.    Specifically, the Gordon Initial Disclosures state that Robert Pritchett and Emily Abbey, rather than Gordon himself, <u>received commercial e-mail</u>.  <u>See</u> Exhibit "A" previously annexed to the Bodie Declaration ¶¶ 2-7 (emphasis added).

21.    As the Gordon Initial Disclosures were subject to Rule 11 requiring, at the time of the disclosure, reasonable inquiry and evidentiary support, the contradictory representations in the Gordon Declaration and the Gordon Initial Disclosures raise triable issues of fact in the Third Party action.  Such questions include:

- Whether or not Third Party Defendants, and not Gordon himself, received the commercial e-mail messages at issue in the Instant Action;

- Whether Third Party Defendants provided Impulse, and/or its marketing partners, with untruthful and inaccurate Subscriber Profiles in violation of the terms of the applicable Impulse-related website Terms and Conditions and Privacy Policy; and

- Whether Third Party Defendants directed or conspired with Plaintiff to misrepresent their identities to Impulse and/or its marketing partners.

- Whether Third Party Defendants derive pecuniary benefit from permitting Plaintiff to misuse their Subscriber Profiles.



### Contribution and Indemnification

22.     Initially, Third Party Defendants admit that Impulse properly plead a cause of action for contribution and indemnification.

23.     Notwithstanding the foregoing, Third Party Defendants maintain that because Impulse's pleading does not include an admission that the e-mails in question violated RCW 19.190, it fails to state a claim upon which relief can be granted. Apparently, Third Party Defendants misinterpret Impulse's Third Party cause of action against them for contribution and indemnification because under Washington law, contribution distributes loss among parties by requiring each to pay his proportionate share, while indemnity shifts the entire loss from one party who has been compelled to pay damages to the shoulders of another who should bear it instead.

24.     As this Court recalls, Plaintiff sued Defendant/Third Party Plaintiff on the theory that he received email messages that allegedly violated RCW 19.190 et seq. Impulse has asserted factual allegations against Third Party Defendants that demonstrate that in the event Defendant/Third Party Plaintiff is found to be in any way liable to Plaintiff, which liability Defendant/Third Party Plaintiff wholly denies, then will Defendant/Third Party Plaintiff demands judgment over and against, Third Party Defendants, for indemnity and contribution for the full amounts of said liability because: (a) Third Party Defendants specifically intended to drive email messages to the Domain which emails they subjectively believed violated RCW 19.190 et seq.; and (b) Third Party Defendants repeatedly solicited, unsubscribed and then repeatedly re-solicited email from Impulse and/or its marketing partners with the sole intention to fabricate and

exacerbate claims against Impulse based upon their subjective belief that Impulse violated RCW 19.190 et seq. (First Am. Compl. ¶¶1-6.; Second Am. Compl. ¶¶17-20.)

25.     Such improper and inequitable conduct violates conscience, good faith and other equitable principles.

26.     Further, such impermissible behavior raises a question of fact.

27.     Accordingly, the Motion to dismiss Impulse's contribution and indemnification cause of action pursuant to Rule 12(b)(6) should be denied in its entirety.

<b>Fraud and Deceit</b>

28.     With respect to Impulse's Third Party Amended Complaint, Impulse has alleged sufficient facts tending to show all of the above-mentioned elements of a prima facie fraud and deceit cause of action.

29.     Specifically, Impulse alleges facts tending to show that Third Party Defendants are complicit in a premeditated and systematic effort to cause harm to Impulse by: (a) knowingly providing Impulse with false Subscriber Profiles at various Impulse-related websites; (b) directing and conspiring with Plaintiff to provide Impulse with false and/or inaccurate Subscriber Profiles; (c) falsely claiming to be said third parties when in fact, the individual certifying their identity and accuracy of their Subscriber Profile was in fact someone else, to wit, Plaintiff; (d) having specific intent to fraudulently drive email messages to the Domain which emails they subjectively believed violated RCW 19.190 et seq. solely for the purpose of causing Impulse pecuniary and reputational harm while deliberately attempting to fabricate and exacerbate legal claims; (e) fraudulently interfering with existing agreements between Impulse and its third party marketing partners; and (f) repeatedly soliciting, unsubscribing and then repeatedly re-

{00074679;1}                                    8

soliciting email from Impulse and/or its marketing partners in an effort to fabricate and exacerbate claims against Impulse based upon their subjective belief that Impulse violated RCW 19.190 et seq. (Second Am. Compl. ¶¶22-30.)

30.     This conduct was deliberate and deceitful and at the time such conduct occurred, Third Party Defendants knew that this conduct was deceitful. (Second Am. Compl. ¶28.)

31.     Third Party Defendants fraudulent conduct was for their own benefit and to Impulse's detriment. (Second Am. Compl. ¶29.)

32.     Third Party Defendants deceitful actions were undertaken to induce Impulse and/or its marketing partners to incur excessive business operational costs and associated expenditures with running its business and to fabricate and exacerbate legal claims against Impulse based upon their subjective belief that Impulse violated RCW 19.190 et seq. (Second Am. Compl. ¶30.)

33.     There is no legitimate reason for Third Party Defendants to be complicit in such a premeditated and systematic effort to fraudulently cause harm to Impulse. Third Party Defendants' actions were undertaken in deliberate bad faith.

34.     Impulse respectfully refers the Court to its Second Cause of Action contained in its Third-Party Amended Complaint at paragraphs 8 through 14 that details the elements of fraud and deceit.[3] Such allegations demonstrate that Impulse sufficiently pled all of the elements required to sustain its fraud and deceit cause of action.

35.     Specifically, Impulse alleges, *inter alia*, that Third Party Defendants misrepresented their identity and Subscriber Profile to Impulse, and/or its marketing

---

[3] To the extent that Impulse failed to properly allege a valid fraud and deceit cause of action against Third Party Defendants, Impulse has sought leave to amend its Third Party Complaint for a second time prior to Third party Defendants' filing and serving a responsive pleading.

partners, by permitting Third Party Defendants to use their Subscriber Profile in an untruthful and inaccurate manner. Among other allegations, Impulse alleges facts that create a question of fact as to the identity of the recipient of the commercial e-mail at issue. (First Am. Compl. ¶¶8-14.); (Second Am. Compl. ¶22-30.)

36.    As stated above, any intentional failure of an individual to provide Impulse with accurate and truthful Registration Information significantly impacts Impulse's business revenue because inaccurate and untruthful Registration Information in the open market is considered a bad lead for other third party marketing companies. An accurate and truthful individual Subscriber Profile of the utmost significance to Impulse as it derives substantial revenue from such accurate and truthful Registration Information.

### Fraud and Deceit Under Rule 9(b)

37.    Third Party Defendants contend that this Court should, alternatively, require that Impulse plead its fraud and deceit causes of action with particularity pursuant to Rule 9(b).

38.    Third Party Defendants argue that Impulse should specifically allege and identify the content of any and all representations made by Third Party Defendants that Impulse alleges were fraudulent.

39.    However, Impulse's third-party cause of action for fraud and deceit provides sufficient specificity and particularity to comply with Rule 9(b). (First Am. Compl. ¶¶15-26.) (Second Am. Compl. ¶¶31-41.)

40.    For example, throughout the month of September 2003, and on numerous other dates to be provided after the completion of discovery, Third Party Defendants directed, permitted, or conspired with Plaintiff, for their own pecuniary benefit, to

provide Impulse with an inaccurate and untruthful Subscriber Profiles at various websites that are specified in the Third Party Amended Complaint. (First Am. Compl. ¶¶15-21.);[4] (Second Am. Compl. ¶31-41.)

41.     Third Party Defendants were further complicit in a premeditated and systematic effort to cause harm to Impulse by repeatedly soliciting, unsubscribing and then repeatedly re-soliciting email from Impulse and/or its marketing partners in an effort to fabricate and exacerbate claims against Impulse based upon a subjective belief that Impulse violated RCW 19.190 et seq. (Second Am. Compl. ¶37.)

42.     Based upon the specific allegations contained in Impulse's fraud and deceit third party cause of action, Impulse has complied with Rule 9(b).

### Tortious Interference With Business Relationships

43.     Third Party Defendants maintain that Impulse did not sufficiently allege a cause of action for tortious interference with a business relationship.

44.     Impulse has sufficiently alleged all of the elements for its tortious interference with a business relationship cause of action against Third Party Defendants. Specifically, Impulse alleges, *inter alia,* that Third Party Defendants had knowledge of a valid contractual relationship between Impulse and/or its marketing partners. (First Am. Compl. ¶¶30-33); (Second Am. Compl. ¶45.).

45.     Such knowledge is imputed to Third Party Defendant upon their

---

[4] In light of the fact that Impulse only recently received the emails at issue in the Instant Action, Impulse acknowledges that some of the allegations contained in its Third Party Amended Complaint require clarification. For example, any and all allegations providing that Third Party Defendants misrepresented their identity to Impulse as themselves was due to a scrivener error. To clarify these allegations, Impulse has sought leave to amend its Third Party Complaint. In truth, the allegations contained in the Third Party Amended Complaint demonstrate that the Third Party Defendants directed, permitted, or conspired with Plaintiff, for their own benefit, to provide Impulse with inaccurate and untruthful Subscriber Profiles at specified websites and Internet Protocol Addresses throughout September 2003. The ability to allege even more details and specific allegations is hampered by the amount of time and resources that it will take Impulse to review thousands of email messages.

acceptance of the applicable Impulse-related Privacy Policy and Terms and Conditions.

46.     Impulse further maintains that Third Party Defendants: (a) submitted their Subscriber Profile to Impulse and/or its third party marketing partners; (b) certified that their Subscriber Profiles were accurate and truthful pursuant to the applicable Impulse-related Terms and Conditions; and (c) entered into a Privacy Policy that permitted Impulse and/or its marketing partners to share the applicable participant's Subscriber Profile with contractually-bound third party marketers.  (First Am. Compl. ¶¶28-35.); (Second Am. Compl. ¶¶8-14 and ¶¶43-51.)

47.     Accordingly, any denial by Third Party Defendants as to whether or not they had knowledge of Impulse's contractual business relationships is, at most, untrue, and, at least, for determination by a jury.

48.     Third Party Defendants' failure to provide Impulse with accurate and truthful Subscriber Profiles, in violation of the applicable website Terms and Conditions, damaged Impulse's reputation with its third party business partners and negatively impacted Impulse's business revenue because the Third Party Defendants' Subscriber Profiles in the open market were considered bad leads for other third party marketing companies. (First Am. Compl. ¶¶28-35.); (Second Am. Compl. ¶¶8-14 and ¶¶43-51.)

49.     Due to Third Party Defendants' untruthful and inaccurate representations and Subscriber Profiles, as well as Third Party Defendants' other improper actions, such as conspiring with Plaintiff to have Mr. Gordon claim to be said third parties when in fact, the individual certifying their identity and accuracy of their Subscriber Profile was in fact someone else, Impulse is likely to sustain and has sustained a loss of business relationships with its on-line marketing business partners.  (First Am. Compl. ¶¶28-35.);

(Second Am. Compl. ¶¶8-14 and ¶¶43-51.)

50.     Third Party Defendants' conduct in knowingly providing Impulse with untruthful and inaccurate Subscriber Profiles have caused a loss of contractual business relationships with Impulse's on-line marketing business partners. (First Am. Compl. ¶¶28-35.); (Second Am. Compl. ¶¶8-14 and ¶¶43-51.)

51.     Based on the foregoing, Impulse has sufficiently alleged facts tending to show that: (a) there was a valid contractual relationship or business expectancy in existence; (b) Third Party Defendants had knowledge of the relationship or expectancy; (c) Third Party Defendants intentionally interfered with Impulse's contractual relationships thereby inducing or causing a breach or termination of the contractual relationship between Impulse and its third party marketing partners; and (d) Impulse suffered damages as a result of Third Party Defendants' conduct. (First Am. Compl. ¶¶28-35.); (Second Am. Compl. ¶¶8-14 and ¶¶43-51.)

### Breach of Contract

52.     Third Party Defendants directly and/or by conspiring with Plaintiff: (a) accepted and consented to receive permission-based marketing services by contractually agreeing to the Impulse-related website Terms and Conditions as well as the applicable website Privacy Policy; and (b) contractually represented and certified to Impulse and/or its third party marketing partners that their Subscriber Profiles provided to Impulse and/or its marketing partners, were true and accurate.  (First Am. Compl. ¶¶37-46.); (Second Am. Compl. ¶¶8-14 and 53-65.)

53.     Impulse is a permission-based on-line marketing company that collects personally identifiable information from individuals who sign up to receive free products

and/or services at websites run by Impulse and/or its marketing partners.  (First Am. Compl. ¶¶37-46.); (Second Am. Compl. ¶¶8-14 and 53-65.)

54.     In reciprocal consideration for receiving free products and/or services from an Impulse-related website, Impulse requires that individuals using its websites agree to submit to Impulse accurate Subscriber Profiles. (First Am. Compl. ¶¶37-46.); (Second Am. Compl. ¶¶8-14 and 53-65.)

55.     By submitting their Subscriber Profile to Impulse, individuals explicitly grant Impulse the right to use their Subscriber Profile for, *inter alia*, transferring the Subscriber Profile to third parties for marketing purposes. (First Am. Compl. ¶¶37-46.); (Second Am. Compl. ¶¶8-14 and 53-65.)

56.     Impulse derives substantial revenue from the licensing and/or use of accurate Subscriber Profiles.  This quid pro quo is the fundamental business model of on-line marketing.  (First Am. Compl. ¶¶37-46.); (Second Am. Compl. ¶¶8-14 and 53-65.)

57.     An accurate and truthful Subscriber Profile for the products and/or services located at the applicable Impulse-related website is therefore of utmost significance to Impulse. (First Am. Compl. ¶¶37-46.); (Second Am. Compl. ¶¶8-14)

58.     Any failure of an individual to provide Impulse with an accurate and truthful Subscriber Profile, in violation of the applicable website Terms and Conditions, adversely impacts Impulse's business revenue because an inaccurate Subscriber Profile in the open market is considered a bad lead for other third party marketing companies. Licensing or using inaccurate Subscriber Profiles damages Impulse's reputation and negatively impacts Impulse's relationships with its third party marketing partners. (First Am. Compl. ¶¶37-46.); (Second Am. Compl. ¶¶8-14.)

59.     Third Party Defendants argue that there was never a meeting of the minds if, as Impulse contends, Third Party Defendants never intended to confer the benefit of the bargain and intended to lie. Such an argument is simply a red herring.

60.     Using Third Party Defendants' rationale, the element of mutual assent for the formation of a contract would be a subjective standard. However, the mutual assent necessary to form a contract cannot be based upon subjective intent, but rather must be founded upon an objective manifestation of mutual intent on the essential terms of the promise.

61.     That is, would a reasonable person under the circumstances believe that there was a meeting of the minds between the parties. The fact that Third Party Defendants were lying to Impulse from the very beginning of the formation of a contract is irrelevant.

62.     In the case at bar, Impulse was reasonable is assuming that it and Third Party Defendants entered into an agreement. As such, Third-Party Defendants argument that a contract was never formed is entirely specious.

### Third Party Defendants' Contractual Duties

63.     Under the applicable Impulse-related website Terms and Conditions and Privacy Policy Third Party Defendants had a duty to: (a) accept the commercial email in a proper manner without negating the benefit conferred upon Third Party Defendants by Impulse; (b) accurately represent and certify that their Subscriber Profiles provided to Impulse, or its marketing partners, were true and accurate; and (c) conspire with Plaintiff to have Mr. Gordon claim to be said third parties when in fact, the individual certifying their identity and accuracy of their Subscriber Profile was in fact someone else. (First

Am. Compl. ¶¶37-46.); (Second Am. Compl. ¶¶53-65.)

### Third Party Defendants' Breach Of Their Contractual Duty

64.     Third Party Defendants breached their contractual duty by: (a) being complicit in a premeditated and systematic effort to cause harm to Impulse by providing Impulse with knowingly false and/or inaccurate Subscriber Profiles at various Impulse-related websites; (b) falsely claiming to be said third parties when in fact, the individual certifying their identity and accuracy of their Subscriber Profile was in fact someone else, to wit, Plaintiff; (c) failing to give Impulse the benefit of the bargain, particularly where Third Party Defendants received free products and/or services from the applicable Impulse-related website while Impulse received inaccurate, untruthful, or otherwise incomplete Subscriber Profiles in return; (d) having the specific intent to drive email messages to the Domain which emails they subjectively believed violated RCW 19.190 et seq. solely for the purpose of causing Impulse pecuniary and/or reputational harm and to fabricate and exacerbate legal claims against Impulse; (e) interfering with existing agreements between Impulse and its third party marketing partners; (f) repeatedly soliciting, unsubscribing and then repeatedly re-soliciting email from Impulse and/or its marketing partners in an effort to fabricate and exacerbate claims against Impulse based upon their subjective belief that Impulse violated RCW 19.190 et seq. (First Am. Compl. ¶¶37-46.); (Second Am. Compl. ¶¶8-14 and ¶¶53-65.)

### Causation and Damages

65.     Impulse has performed all of the obligations on its part to be performed under the contractual agreement between the parties. (First Am. Compl. ¶¶37-46.); (Second Am. Compl. ¶¶53-65.)

66.     As a proximate result of the breach of the agreement, including those express communications, solicitations and inaccurate and untruthful Subscriber Profiles submitted to Impulse by Third Party Defendants, personally or as a user of the Domain, Impulse has sustained monetary damages, in the amount to be determined at trial. (First Am. Compl. ¶¶37-46.); (Second Am. Compl. ¶¶53-65.)

67.     Impulse has alleged facts sufficient to support a prima facie breach of contract cause of action. (First Am. Compl. ¶¶37-46.); (Second Am. Compl. ¶¶53-65.)

68.     Further, in light of the fact that this Court is required to take the allegations contained in Impulse's Third-Party Amended Complaint for breach of contract as true and construed in the light most favorable to Impulse while giving Impulse the benefit of every inference that reasonably may be drawn, the Motion based upon Rule 12(b)(6) should be denied.

### Injunctive Relief

69.     Third Party Defendants contend that: (a) there is no statutory or common law prohibition against soliciting commercial e-mail, even if it is done with the intent to sue the sender; and (b) the mere act of requesting e-mails is perfectly legal conduct even if the person requesting e-mails intends to sue the sender.  Such an argument is patently false and an implied admission by Third Party Defendants that their conduct violated conscience, good faith and other equitable principles.

70.     Third Party Defendants' hands are unclean due to Third Party Defendants deliberate, predatory, bad faith actions.  Impulse has suffered and will continue to suffer irreparable damages unless Impulse is granted injunctive relief.

71.     There is no legitimate reason for Third Party Defendants to repeatedly

solicit, unsubscribe and then repeatedly re-solicit email from Impulse and/or its marketing partners in an effort to fabricate and exacerbate claims against Impulse based upon their subjective belief that Impulse violated RCW 19.190 et seq. (First Am. Compl. ¶¶48-52.); (Second Am. Compl. ¶¶66-73.)

72.    Damage to Impulse's good will and reputation are difficult to calculate. If Impulse is unable to stop Third Party Defendants' conduct and further schemes by Third Party Defendants, Impulse will suffer irreparable damages. For this harm and damage, Impulse has no adequate remedy at law. These damages are continuing, and to a large degree will be incalculable because it is extremely difficult to compute damages for lost of business relationship, to its reputation and good will. (First Am. Compl. ¶¶48-52.); (Second Am. Compl. ¶¶66-73.)

73.    Further, Third-Party Defendants failed to address how Impulse failed to allege facts tending to show a prima facie request for injunctive relief. As such, the Motion based upon Rule §12(b)(6) should be denied.

WHEREFORE, Impulse requests that: (a) Third Party Defendants' Motion to Dismiss Impulse's Third Party Amended Complaint be denied in its entirety; and (b) the Court grant such other and further relief that the Court considers proper.

Dated this 23rd day of November, 2005.

Peter J. Glantz

Sworn and subscribed before me this 23rd day of November, 2005.

Notary Public

JOSHUA D. ROSE
Notary Public, State of New York
No. 02RO6051188
Qualified in New York County
Commission Expires 11/20/20 __