```
                FILED IN THE
             U.S. DISTRICT COURT
         EASTERN DISTRICT OF WASHINGTON

              MAR 1 7 2006

         JAMES R. LARSEN, CLERK
                              DEPUTY
            RICHLAND, WASHINGTON
```

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON AT RICHLAND

| | |
|---|---|
| James S. Gordon, Jr., Plaintiff, <br><br> vs. <br><br> Impulse Marketing Group, Inc., <br><br> Defendant <br><br> Impulse Marketing Group, Inc., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> Bonnie F. Gordon, Third-Party Defendant | Case No.: CV-04-5125-FVS <br><br> DECLARATION AND RESPONSE TO IMPULSE AND IVEY INITIAL MEMORANDUM RESPONSE RE: THIRD PARTY DEFENDANT'S MOTION TO COMPEL AND MOTION TO DISQUALIFY |

TO: Clerk of the Court

AND TO: Floyd E. Ivey, Attorney for Third-Party Plaintiff

AND TO: Peter J. Glantz and Sean A. Moynihan

Bonnie F. Gordon declares as follows:

1) I, Bonnie F. Gordon, am a named third party defendant in the above captioned lawsuit. I am over the age of 18 and am otherwise competent to testify.

2) Commonwealth Marketing Group (CMG) – whose contract has already been introduced into evidence by Impulse sent a "cease and desist" letter to Impulse on February 9, 2004 to stop it from sending emails to "gordonworks.com" Impulse is withholding documents like this one from me (us), documents which will substantiate the contentions made by me (us). **Exhibit 1**

3) Prior to this letter (Ex 1) by CMG, Impulse assured CMG that it was Can-Spam compliant. **Exhibit 2** However, Impulse continued to send spam or unwanted email to gordonworks.com through December 2005 – a per se violation of Can-Spam, despite its "assurances" of using suppression/scrub lists and the like. And it is sending spam to my new domain - well into March 2006.

4) Impulse's reliance on accusations of a scheme and the concepts of indemnification and contribution "fail" in light of the fact that internal documents from Impulse and external documents from CMG, indicate that Impulse's Ken Adamson, Jeffrey Goldstein, and John Huston – at a minimum, knew that no email was to be sent to the email address which bears my name at "gordonworks.com". Despite this knowledge, each man, individually and as a collective, failed to reign in the torrent of

email being sent to "gordonworks.com. My causes of action versus Impulse will bring out more of its scheme or conspiracy to defraud the general public along with its promotion or support of pornography, counterfeit drugs and the like.

5) Impulse's reliance on the assertions of fraud and deceit, tortious interference, malicious prosecution and breach of contract (even if there was a contract [which I deny] it was rescinded via unsubscribe requests in October 2003 starting with Exhibit 3) fail because of the evidence of accurate subscriber profiles and opt-out requests as early as October 1, 2003. Accurate subscriber profiles and opt-out requests along with the communication between CMG and Impulse indicate a good faith effort on the part of the undersigned to extricate myself from the failed attempt to obtain a prize, which ultimately proved to be part of a fraudulent free prize scheme to steal the identity of the undersigned and anyone else who responded to Impulse's offers. **Exhibit 3**

6) The "prayer" for an injunction by Impulse appears to be fraudulent as the documents above indicate that Impulse has refused to honor unsubscribe requests by "gordonworks.com" email addressee(s). Further, it has used its refusal to fabricate its story of its own victimization. In addition to ignoring opt-out requests, Impulse ignore edicts from CMG and internal suppression guidelines – making it answerable to no one. It is Impulse and its marketing partners' behavior that led to any and all damages incurred by Plaintiff and the undersigned.

Damages proffered by Impulse, allegedly as a result of a scheme, are illusory or self-inflicted.

7) Impulse's counterclaims are based on a lie (or series of lies), for example, a) I participated in a scheme to defraud it  b) I opted into one or more of its websites  c) I opted out of one or more of its websites  d) I opted in and opted out, repeatedly  e) Impulse believed that 3rd party defendants' subscriber profiles were inaccurate and untruthful  f) I solicited emails in order to file multiple lawsuits (strictly speaking I have filed no lawsuits against anyone – my counterclaims and causes of action against Impulse were prompted by the pre-existing specious lawsuit by Impulse – I have sued no one else)  g) Impulse has sustained financial loss and continues to accrue losses due to action(s) by Plaintiff and 3rd party defendants. Had Impulse done as it was instructed to do by its principal, CMG, this lawsuit may have been averted altogether. Impulse's Adamson letter of 10/21/03 acknowledges Impulse's placement of "gordonworks.com" "in a file of blocked and/or suppressed recipients – ALL email after this time VIOLATED Impulse's and CMG's corporate policies as well as state and federal civil and criminal laws as outlined in my causes of action versus Impulse.

8) Mr. Ivey et al have criticized my (our) interrogatories, it appears, as something I (we) are parroting for/from Plaintiff. He fails to mention that I (we) now have legitimate claims of my (our) own. These new claims are for statutory damages under RCW 19.190 et seq as Impulse has insinuated itself into

web sites which do not disclose a link to Impulse – claiming that it is a marketing partner simply because it purchased an email list from another spammer. Impulse has failed to disclose via interrogatories and requests for production its list of so-called marketers ostensibly to avoid being painted with the same brush as these "fly-by-night" criminal spam gangs. Discovery now appears to be a one-way street whereby Impulse hounds Plaintiff for discovery while maintaining a closed fist on its requirement for disclosure. For pro se defendants, the distinction between our collective claims, if there is one, is not discernible to us.

9) As a result of 30 years of marriage, my husband and I discuss and collaborate on most things including litigation and strategies for same. This collaboration has revealed the following, we both understood Mr. Ivey was "his" attorney and that all that was discussed between the two of them was privileged. I was shocked to hear that Mr. Ivey had switched sides. The documents in my possession appear to reveal a betrayal of my husband and a skirting of the truth by Mr. Ivey. **Exhibit 4** – email dated 9/22/03; **Exhibit 5** – email dated 9/25/03; **Exhibit 6** – dated 9/30/03; **Exhibit 7** – dated 9/30/03 to Jamila Gordon; **Exhibit 8** – dated 12/30/03; **Exhibit 9** – dated 4/4/05.

10) I find it peculiar that Mr. Ivey would retain my husband's email from 2002, but not the 2003 emails that would indicate a conflict.

11) **Exhibit 5** lists the case of Gordon v. Commonwealth Marketing Group, Inc. It was a hyperlink to a web site created by my husband which contained detailed information about the lawsuit and emails and the analysis of the email – the web site has been taken down. On the surface, it appears that Mr. Ivey has direct intimate knowledge of both sides in the instant conflict. And Impulse's argument that "the relevant test for disqualification is whether the former representation is 'substantially related' to the current representation" – Gas-A-Thon citation. The substantially related argument is buttressed by Impulse's assertion/claim in its Motion to Dismiss based on "res judicata" (circa January 2005) that the corpus of email was **identical**.

12) Impulse knows that it is suing pro se defendants. Pro Se defendants by definition are typically not attorneys. As a result, pro se defendants will make mistakes. Impulse has seized every opportunity to threaten and intimidate 3rd party defendants in terms of filings made and the errors which ensue. The primary threat has been for sanctions for making mistakes. If allowed, these sanctions would render 3rd party defendants "paralyzed" in terms of mounting their legal self-defense. It is highly likely that 3rd parties will make more mistakes in their self-defense. As a matter of equity, this Court, I (we) trust will adjudge each filing made by a 3rd party defendant on a good faith proffer of facts – not my (our) legal education or lack thereof.

13) I do not want to have to interact with Mr. Ivey et al because of

his tendency to intimidate/threaten and I do not believe he is a man of his word. That is the reason for my husband forming a "buffer" for our family and my family's consent for same. It appears that Impulse could correspond via email or suggest another way to overcome the impasse regarding the needed communications in this case. We have been pulled into this scam/scheme of Impulse, but we will defend ourselves to the best of our collective abilities.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Bonnie F. Gordon

9804 Buckingham Drive

Pasco, WA 99301

509-210-1069

EXECUTED this 17th day of March, 2006

_____

## Certificate of Service

I, hereby, certify that on March 17, 2006, I filed this affidavit with this Court. I have served Bob Siegel, Peter J. Glantz, Sean A. Moynihan, Floyd E. Ivey, Jamila Gordon, James Gordon III, Jonathan Gordon, Emily Abbey, and Robert Pritchett by other means.

_____



One Millennium Drive
Uniontown, PA 15401
Phone: (724) 437-3707

February 9, 2004

Jeff Goldstein        Facsimile: (678) 805-2101
Impulse Marketing Group, Inc.
Five Concourse Parkway, Suite 950
Atlanta, GA 30328

Re: James S. Gordon, Jr. v. Commonwealth Marketing Group, Inc.

Dear Jeff:

Commonwealth Marketing Group, Inc. (CMG) hereby gives notice to Impulse Marketing Group, Inc. (IMG) to immediately cause IMG affiliated marketers, offerclicks and freebiegazette, to cease representing, in any and all manner whatsoever, IMG on behalf of CMG, unless and until IMG provides CMG with assurance that it has caused all of its affiliated marketers, including the two mentioned above, to cease and desist from sending messages, to the gordonworks.com e-mail domain.

CMG finds it necessary to take this drastic action as, despite repeated telephone conversations with IMG officers and staff of the need to act immediately on this extremely urgent matter, we learned today that the gordonworks.com domain continues to receive messages from IMG affiliated marketers. Specifically, on January 7, I wrote to you, attached a copy of an Order of Court of Benton County, Washington, against me, personally, CMG and IMG, enjoining the sending of e-mail messages to James Gordon. On January 9, John Fonzo, CMG Vice President and General Counsel, wrote to IMG's Phil Huston, requesting assurances concerning IMG CAN SPAM Act and state anti-Spam law compliance. (Gordon's lawsuits against CMG was filed pursuant to the Washington anti-Spam law). On February 2, Mr. Fonzo again wrote to Phil Huston, informing IMG in writing of our previous oral notification of the Gordon vs. CMG litigation, and raising indemnification issues under the CMG-IMG Website Development and Marketing Services Agreement.

It is my understanding that IMG's lawyers have responded in writing to the January 9 letter concerning SPAM law compliance, providing assurances of IMG compliance. Further, on multiple occasions, CMG has forwarded to IMG several e-mail messages as provided by James Gordon to me, for research and evaluation as to, among other things, origin of the messages, any evidence of Gordon opt-ins, as well as evidence of cessation of messages, to the extent they originated from an IMG affiliated marketer. My staff

CMG 000052

E-MARKETING • FULFILLMENT SERVICES • DIRECT MAIL • INHOUSE LETTERSHOP • STATE OF THE ART CALL CE

08/06/2004 FRI 12:26  [TX/RX NO 6833] @024

advises that they have had continuous dialogue with IMG technical staff as to these messages, together with certain assurances that proper safeguards were put in place to make certain that additional messages are not sent to Mr. Gordon.

What is equally troubling to me is that IMG was first notified of Gordon's alleged receipt of SPAM in September of 2003, immediately upon CMG's receipt of notice from Gordon of the allegations. Certainly, IMG has had sufficient time to address this serious situation. Thus, you can imagine my confusion, anger and embarrassment when I received from James Gordon on February 7, yet two additional e-mail messages that appeared to have originated from IMG affiliated marketers.

Jeff, it is absolutely imperative that this situation be addressed immediately. Given the long and productive business relationship that CMG and IMG has enjoyed, you must see this demand for IMG affiliated marketers who send messages to gordonworks.com, including the two mentioned above, to cease and desist representing IMG on CMG products as a final effort to get IMG's attention to do what is legally required and commercially responsible.

Please call me immediately upon receipt. At that time, we can direct to the person at IMG who will give this their undivided and immediate attention, the most recent e-mail messages received from James Gordon.

Sincerely,

Robert E. Kane
President & CEO

# KLEIN, ZELMAN, ROTHERMEL & DICHTER, L.L.P.

ATTORNEYS AT LAW

485 MADISON AVENUE

NEW YORK, NEW YORK 10022-5803

TEL (212) 935-6020

FAX (212) 753-8101

e-mail: kzrd@kzrd.com

FRED C. KLEIN
ANDREW E. ZELMAN
JOAN EBERT ROTHERMEL
JOEL R. DICHTER
JANE B. JACOBS
NANCY B. SCHESS
DAVID O. KLEIN
LAURENCE J. LEBOWITZ
SEAN A. MOYNIHAN

JOHN T. UM
JOSHUA D. ROSE
DEENA B. BURGESS

STEPHEN B. HANSBURG
OF COUNSEL

February 3, 2004

VIA FIRST CLASS MAIL

John P. Fonzo, Esq.
Vice President & General Counsel
Commonwealth Marketing Group
One Millennium Drive
Uniontown, PA 15401

   Re: CAN-SPAM compliance

Dear Mr. Fonzo:

   Please be advised that this firm represents Impulse Marketing Group, Inc. ("Impulse"). We write in response to your January 9, 2004 correspondence addressed to Mr. Phil Huston, in which you request that Impulse detail the steps that it has taken to comply with the provisions of the CAN-SPAM Act of 2003 ("CAN-SPAM" or the "Act"), specifically as they relate to the services that Impulse provides to Commonwealth Marketing Group ("Commonwealth") under contract dated December 10, 2001 (the "Agreement"). Impulse has assured us that during the life of its relationship with Commonwealth, it will at all times provide services to Commonwealth in strict conformance with the requirements of CAN-SPAM and any subsequent amendments. In furtherance of this commitment, Impulse is amenable to crafting a mutually acceptable rider to the existing Agreement that will address the parties' respective CAN-SPAM obligations, while providing reciprocal indemnification provisions that will be triggered should either party at any time fail to comply with the Act.

   As of January 1, 2004, Impulse has implemented the following internal procedures so that its business is conducted in accordance with CAN-SPAM regulations. In particular, and without limitation, Impulse ensures that each and every commercial e-mail that it sends, or has sent through a third party, contains: accurate header information; correct domain name and/or IP address; "subject" and "from" lines that are not fraudulent, deceptive or misleading; a functioning return/reply e-mail address for unsubscribe purposes and an unsubscribe hyperlink

{00062027;2}

CMG 000050



that is functional for thirty (30) days after the applicable e-mail transmission date; language identifying such commercial e-mail as an advertisement or solicitation; and valid, physical mailing addresses (not P.O. boxes) for both Impulse and its advertiser-clients, such as Commonwealth. As required by the Act, Impulse processes all unsubscribe requests within ten (10) days of receiving such requests, if not sooner. Each unsubscribed e-mail address is then transferred to the Impulse suppression list. This list is updated on a daily basis, divided up into separate advertiser-specific suppression lists and made available to the applicable advertiser-clients for their own internal scrubbing and suppression purposes.

Should you have any further questions on the CAN-SPAM compliance measures taken by Impulse, please contact me at your convenience. We will begin drafting the CAN-SPAM rider next week and will have same for your review promptly thereafter. I look forward to working with you.

Sincerely,

David O. Klein

cc: Phil Huston

CMG 000051

{00062027;2}

X-Persona: <ValueWeb>
Received: from cust_req_fwding (james@gordonworks.com --> jim@gordonworks.com) by ams.ftl.affinity.com id <216611-20680>; Wed, 1 Oct 2003 10:08:34 -0400
Received: from relay02.mindsharedesign.com ([216.39.113.10]) by ams.ftl.affinity.com with ESMTP id <216875-20663>; Wed, 1 Oct 2003 10:07:39 -0400
Received: from i.pm0.net (i.pm0.net [216.39.113.141])
    by relay02.mindsharedesign.com (Postfix) with ESMTP id A6E31643B
    for <james@gordonworks.com>; Wed, 1 Oct 2003 07:05:16 -0700 (PDT)
Received: (from pmguser@localhost)
    by i.pm0.net (8.12.8/8.12.2/Submit) id h91E7bxU007989;
    Wed, 1 Oct 2003 07:07:37 -0700 (PDT)
Date: Wed, 1 Oct 2003 07:07:37 -0700 (PDT)
Message-Id: <200310011407.h91E7bxU007989@i.pm0.net>
From:   "EmailPrize.com" <pmgsender@returns.mb00.net>
To:     <james@gordonworks.com>
X-PMG-Userid: emailprize
X-PMG-Msgid: unsubscribe
X-PMG-Recipient: james@gordonworks.com
Subject: Unsubscribed Successful!
MIME-Version: 1.0
Content-Type: text/plain; charset="iso-8859-1"

You have been unsubscribed to the EmailPrize Newsletter. We are sorry to see you leave.

EmailPrize.com

From: "floyd ivey" <feivey@3-cities.com>
To: "Jim Gordon" <res08nqc@verizon.net>
Subject: Re: Help With District Courts Complaints
Date: Mon, 22 Sep 2003 10:29:23 -0700
X-Mailer: Microsoft Outlook Express 6.00.2800.1158

Jim,

Thanks for the interesting note. I certainly have an interest but will
first point you to direct contact with the Attorney General's office. They
may be able to indicate the extent of their efforts and may have an interest
in your work.

Moving a positive result in District Court to a meaningful prospect of
gaining dollars will likely be difficult. The Attorney General may have a
clear perspective of the possibility of having success via litigation.

Please let me know the nature of any contact you might have with the AG.

Floyd E. Ivey


----- Original Message -----
From: "Jim Gordon" <res08nqc@verizon.net>
To: <feivey@3-cities.com>
Sent: Monday, September 22, 2003 8:15 AM
Subject: Help With District Courts Complaints


> Floyd:
>
> I would like you to consider the following information as I will need help
> completing the work that I have outlined, below...
>
> I have taken the following affirmative steps to reduce the 600+ emails
that
> I have been receiving every day since 1998:
>
> 1. I purchased forensic software to allow me to trace the origin of
emails.
> 2. Mailed demand letters to individuals and entities that have spammed me.
> Each letter contained the following info:
>          a. A two page copy of RCW 19.190 - WA anti-spam statute
>          b. Copies of the unlawful headers from the email that the
spammers
> sent to me.
>          c. Demand for damages of $500 per violation - the threshold for
> sending a letter was 10 violations or more
> 3. Mailed a total of 30 demand letters to the most egregious violators of
> this law.
>
> Currently, I have drafted a complaint - the draft was based on a template
> from a successful defense of RCW 19.190 in Western WA. I am seeking an
> attorney to "perfect" my complaint so that I may file it in District
Court.
> In the alternative, I may want to hire an attorney to represent me in
court.
>
> An interesting side note is since the demand letters were delivered to
> these spammers, a few have continued to send their spam "flaunting" our
> law. I believe that there is a second cause of action (perhaps harassment)

From: "floyd ivey" <feivey@3-cities.com>
To: "Jim Gordon" <res08nqc@verizon.net>
Subject: Re: Article from Wired World
Date: Thu, 25 Sep 2003 09:38:24 -0700
X-Mailer: Microsoft Outlook Express 6.00.2800.1158

Jim,

The problem with present resistance to spam is the cost. That is, it will cost $225/hour for me to explore with no clear ability to find a solution. Further, should you actually locate a spammer there would be doubt regarding the ability to collect on any judgment.

In the mean time someone has commenced such a lawsuit. I haven't heard re: the status for months. And the Attorney Generals of many states are likely looking at the issue.

Thus others are doing the work at no expense to you. There will be a real budget needed for you to commence the effort. Please advise if you want to examine the prospect of going forward.

Floyd


----- Original Message -----
From: "Jim Gordon" <res08nqc@verizon.net>
To: <feivey@3-cities.com>
Sent: Thursday, September 25, 2003 9:09 AM
Subject: Article from Wired World


> Floyd:
>
> My domain name - gordonworks.com is under siege. Whether we consider my
> domain name intellectual PROPERTY or personal PROPERTY, this property is
> being encroached upon - to the tune of 4MB+ every day. This encroachment
> displaces my computer's memory with unsolicited - even unlawful commercial
> email.
>
> I have kept records of this spam since 8/6/03. In that time (51 days), I
> have received 122MB of spam. In the past 24 hours, I have received 4.6MB
of
> spam. I am feeling a since of urgency...
>
> One might ask why I don't simply filter and delete these email. I have
been
> filtering and deleting email since 1998. During that time, my daily volume
> of email approached 1500 messages per day. I found that filters can be
> defeated/circumvented - so I spent time revising and updating my filters.
> My collection of spam (over 20,000 messages) now serves one purpose - that
> of being evidence against those who spam me and millions of others.
>
> My spam problem was an imposition on my business and it is an imposition
on
> my personal use of the Internet. Therefore, I have chosen to stop running
> and hiding from spam. I believe that Washington's anti-spam statute was
> designed to prevent much of the abuse that I am experiencing.
>
> The article below discusses the concept of "trespass" as it pertains to
> spam...I experience this sense of being trespassed upon each time that I
> check my email - 6+ times per day.

To: feivey@3-cities.com
From: Jim Gordon <res08nqc@verizon.net>
Subject: First spam Complaints
Cc:
Bcc:
Attached: C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftTheodorehansson.doc; C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftAmericanHomeownersASSN.doc;

Floyd:

I have the email documentation, which shows the violations that I allege. I have also "drafted" two complaints. How would you like to proceed? And what costs can we identify at this point?

I believe that we will prevail in these matters. However, I would like to be as frugal as possible on this first lawsuit [I have been unemployed since 7/31/03]. There are 30+ complaints to go.

I'd like to have the first complaint [AHA] filed and sent to the Defendant with a final offer to settle out-of-court.


Regards,
Jim Gordon



1. **American Homeowners Assn. [ 144 emails ] $72,000 claim**
    1100 Summer St.
    Stamford, CT 06905

    https://www.ahamembership.com/index.cfm

    This company sent me a written "rejection" of my "demand for damages" letter that I sent to them. However, they continue to send me ads that offer free products, which actually would cost me a tiny fee, that is to be charged to my credit card and I would also be obligated to receive their one month trial membership - not so free after all. Their email explicitly proclaims, " Click now and complete the form to get your Gift Now! This offer is with **no obligation** and the gift is yours to keep."


2. **Theodore Hansson [ 94 emails ] $47,000 claim**
    4137 248th Ct. SE
    Issaquah, WA 98029

    http://www.esioffers.com/campaigns/thansson/?link=2464

    http://www.megawavez.com/hansson/index.html

    He sells books...states that people can use his money to buy discounted paper. Some of the subject lines for his email follow:

    Subject: Wanna Use My Money?
    Subject: Use my money... all of it!
    Subject: You can use MY money
    Subject: Split the profits 50-50 using MY money

**Jamila & Tommy, 01:26 PM 9/30/2003 -0700, Update**

To: "Jamila & Tommy" <jamila@charter.net>
From: Jim Gordon <res08nqc@verizon.net>
Subject: Update
Cc:
Bcc: bonnie.gordon@verizon.net
Attached: C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftAmericanHomeownersASSN.doc; C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftTheodorehansson.doc;

Jamila:

Please hold on to the attachments - they are templates for future litigation. The email accounts for the family have the following totals:

| Name | Total Emails (unresearched) | Unlawful spam (researched) |
|---|---|---|
| Bonnie | 1505 | 153 |
| James | 3409 | 343 |
| Jamila | 1132 | 94 |
| Jay | 1552 | 124 |
| Jon | 1138 | 95 |

The complaints that I drafted for my attorney, Floyd Ivey, are attached. Each unlawful spam could be worth $500 - if we prevail in court

**feivey@3-cities.com, 11:13 AM 12/30/2003 -0800, Status**

To: feivey@3-cities.com
From: Jim Gordon <res08nqc@verizon.net>
Subject: Status
Cc:
Bcc:
Attached:

Floyd:

On Wednesday, the 24th a Superior Court judge gave me an early Christmas present in the form of two temporary restraining orders against two of the companies that have been spamming me. On January 8th, 2004, I will appear in Superior Court to request a permanent injunction against these companies and their agents.

Below are links to the steps that I have taken to stop the spamming.

Here's a link to the online Herald-Standard.
http://www.heraldstandard.com/site/news.cfm?newsid=10686398&BRD=2280&PAG=461&dept_id=480247&rfi=8

http://www.gordonworks.com/spam

http://www.gordonworks.com/spam/TedHansson.htm

http://www.gordonworks.com/spam/CommonwealthMarketingGroup.htm

If I prevail in these initial lawsuits, there are over 70 more anti-spam lawsuits that I wish to file in Superior and District Courts. If you are still interested, in what way do you envision assisting me?

Seasons Greetings,
Jim Gordon

To: "Akers, Doug E" <doug.akers@pnl.gov>
From: Jim <Kamau@charter.net>
Subject: RE: FW: Battelle Contract for Review
Cc:
Bcc:
Attached:

Actually it is Doug McKinley v Floyd Ivey

At 07:48 AM 4/4/2005 -0700, you wrote:
> By chance are you working with Dave Broussard?   Good Guy

Look forward to hear from one of them.

Take Care

Doug

>> -----Original Message-----
>> From: Jim [mailto:Kamau@charter.net]
>> Sent: Saturday, April 02, 2005 8:30 AM
>> To: Akers, Doug E
>> Cc: Shoemaker, Steven V
>> Subject: Re: FW: Battelle Contract for Review
>>
>> Doug:
>>
>> I have not had an opportunity to take this contract to an attorney yet - because the two attorneys that I typically use are facing one another - one for me and the other against (yes, it technical is a conflict of interest, but...). The attorney that is for me, does work for the Lab, which makes advising me a possible conflict of interest - so, I may go to a third attorney...
>>
>> I appreciate you diligence on the preparation of this document and will get legal advice as soon as possible.
>>
>> Best Regards,
>> Jim
>>
>> At 07:29 AM 3/7/2005 -0800, you wrote:
>>
>>> Jim,
>>>
>>> Here it is.  Hopefully it will make it through this time.
>>>
>>> Doug
>>>
>>> -----Original Message-----
>>> From: Akers, Doug E
>>> Sent: Tuesday, February 22, 2005 12:07 PM
>>> To: 'jim@gordonworks.com'
>>> Cc: Shoemaker, Steven V; Strycker, Forest E Jr
>>> Subject:   Battelle Contract for Review
>>>
>>> Jim,