1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 2 0 2006

JAMES R. LARSEN, CLERK
_____DEPUTY
RICHLAND, WASHINGTON

3

4

5

6

7

8

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN

9

## DISTRICT OF WASHINGTON AT RICHLAND

10

11

James S. Gordon, Jr., Plaintiff,

12
       vs.

13

Impulse Marketing Group, Inc.,

14

Defendant

15

16

Impulse Marketing Group, Inc.,

17

Third-Party Plaintiff,

18

 v.

19

Jamila E. Gordon, Third-Party

20

Defendant

21

TO: Clerk of the Court

22

AND TO: Floyd E. Ivey, Attorney for Third-Party Plaintiff

23

AND TO: Peter J. Glantz and Sean A. Moynihan

24

25

) Case No.: CV-04-5125-FVS
)
)
) DECLARATION AND
) RESPONSE TO IMPULSE AND
) IVEY INITIAL MEMORANDUM
) RESPONSE RE: THIRD PARTY
) DEFENDANT'S MOTION TO
) COMPEL AND MOTION TO
) DISQUALIFY
)
)
)

Jamila E. Gordon declares as follows:

1)     I, Jamila E. Gordon, am a named third party defendant in the above captioned lawsuit.  I am over the age of 18 and am otherwise competent to testify.

2)     Impulse is arguing about the prospect of losing Mr. Ivey as counsel for Impulse and the alleged hardship that would result. However, this argument is not well reasoned because a) Impulse retains counsel headed up by Klein, Zelman, Rothermel, & Dichter  b) it is Klein et al which hired Mr. Ivey as local counsel for them  c) It appears to me that Klein et al receive copies of all documents filed and has primary responsibility for Impulse's legal defense – not Mr. Ivey  d) in the arguments regarding cited cases, it appears that the counsel disqualified were primary counsel not back-up or secondary counsel (a sub-contractor), e.g. Mr. Ivey  e) the harm represented by disqualifying Mr. Ivey is greatly exaggerated as Klein et al are Impulse's primary counsel - this motion to disqualify does not impede that continued representation or interfere with its basic relationship as Impulse's counsel of choice  f) using Mr. Ivey's words, "the court will not allow a litigant to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of **counsel of his choice** [emphasis added] after substantial preparation of a case has been completed". The operative words are "counsel of his choice" – I submit that Mr. Ivey is not counsel of choice by

2

Impulse, but rather counsel of choice for Impulse's true, primary counsel, Klein et al. g) the cited case law does not apply to the disqualification of one's counsel's sub-contractor.

3) Commonwealth Marketing Group (CMG) – whose contract has already been introduced into evidence by Impulse sent a "cease and desist" letter to Impulse dated February 9, 2004 to stop it from sending emails to "gordonworks.com". Impulse is withholding all documents which I have requested via discovery. It is my belief that these documents will substantiate the declarations made by me and further support the posture of CMG and Impulse indicated by the attached exhibit. **Exhibit 1**

4) Prior to this letter (Ex 1) by CMG, Impulse assured CMG that it was Can-Spam compliant. **Exhibit 2** However, Impulse continued to send spam to gordonworks.com through December 2005 – a per se violation of Can-Spam and RCW 19.190 et seq, despite Impulse's assurances to CMG that it was using suppression or scrub lists to ensure compliance. Impulse is sending spam to my new domain as recently as March 2006.

5) Impulse's reliance on accusations of a scheme and the concepts of indemnification and contribution "fail" in light of the fact that internal documents from Impulse and external documents from CMG, which indicate that Impulse's Ken Adamson, Jeffrey Goldstein, and John Huston – at a minimum, knew that no email was to be sent to the email address which bears my name at "gordonworks.com". Despite this knowledge, each man, individually and as a collective, failed to reign in the torrent of

*3*

email being sent to "gordonworks.com. My causes of action versus Impulse will bring out more of its scheme or conspiracy to defraud me.

6) Impulse's reliance on the assertions of fraud and deceit, tortious interference, malicious prosecution and breach of contract (even if there was a contract [which I deny] it was rescinded via unsubscribe requests in October 2003 starting with Exhibit 3) fail because of the evidence of opt-out requests as early as October 1, 2003. These opt-out requests along with the communications between CMG and Impulse indicate a good faith effort to extricate me from the failed attempt to obtain a prize, which ultimately proved to be part of a fraudulent free prize scheme by Impulse to steal my identity. **Exhibit 3**

7) Impulse's "prayer" for an injunction appears to be pure sophistry as the documents above indicate that Impulse has refused to honor unsubscribe requests by "gordonworks.com" email addressee(s). Further, Impulse has re-framed its refusal into a story about its fabricated victimization. In addition to ignoring opt-out requests from "gordonworks.com", Impulse ignored edicts from CMG and its own internal suppression guidelines – making it answerable to no one. It is Impulse and its marketing partners' behaviors that led to any and all damages incurred by Plaintiff and the undersigned. Damages proffered by Impulse, allegedly as a result of a scheme, are illusory or self-inflicted.

8) Impulse's causes of action are based on a lie (or series of lies),

*4*

for example, a) I participated in a scheme to defraud it  b) I opted into one or more of its websites  c) I opted out of one or more of its websites  d) I opted in and opted out, repeatedly  e) Impulse believed that 3rd party defendants' subscriber profiles were inaccurate and untruthful  f) I solicited emails in order to file multiple lawsuits (strictly speaking I have filed no lawsuits against anyone – my counterclaims and causes of action against Impulse were prompted by the pre-existing specious lawsuit by Impulse – I have sued no one else)  g) Impulse has sustained financial loss and continues to accrue losses due to action(s) by Plaintiff and 3rd party defendants. Had Impulse done as it was instructed to do by its principal, CMG, this lawsuit may have been averted altogether. Impulse's Adamson letter of 10/23/03 acknowledges Impulse's placement of "gordonworks.com" "in a file of blocked and/or suppressed recipients – ALL email after this time VIOLATED Impulse's and CMG's corporate policies as well as state and federal civil and criminal laws as outlined in my causes of action versus Impulse.

9)  Based on an email [Exhibit X] and discussion with my father, we both understood Mr. Ivey was "his" attorney and that all that was discussed between the two of them was privileged. I was shocked to hear that Mr. Ivey had switched sides as I had also contacted him about a separate personal legal matter. The documents in my possession appear to reveal a betrayal of my father and a skirting of the truth by Mr. Ivey. **Exhibit 4** – email dated 9/22/03; **Exhibit 5** – email dated 9/25/03; **Exhibit**

5

**6 – dated 9/30/03 to me**; **Exhibit 7** – dated 12/30/03; **Exhibit 8** – dated 4/4/05.

10) I find it peculiar that Mr. Ivey would retain my father's email from 2002, but not the relevant 2003 emails.

11) **Exhibit 7** lists the case of Gordon v. Commonwealth Marketing Group, Inc. The actual mention of CMG was via hyperlink to a web site created by my father, which contained detailed information about the lawsuit and emails and the analysis of the email – I believe the web site has been taken down. On the surface, it appears that Mr. Ivey has direct intimate knowledge of both sides in the instant conflict. Impulse argues "the relevant test for disqualification is whether the former representation is 'substantially related' to the current representation" – Gas-A-Thon citation. The substantially related argument is buttressed by Impulse's assertion/claim in its Motion to Dismiss based on "res judicata" (circa January 2005) that the corpus of email was **identical**.

12) Mr. Ivey et al have criticized my interrogatories, it appears that Impulse believes that I am simply parroting words for/from Plaintiff. Mr. Ivey fails to mention that I now have legitimate claims of my own (I have contemplated these counterclaims since the inception of the "slapp suit"). These new claims include a cause of action for statutory damages under RCW 19.190 et seq and Can-Spam as Impulse has insinuated itself into web sites which do not disclose a link to Impulse. Apparently, Impulse claims that it is a spammer's marketing

6

partner simply because it bought or sold an email list from that spammer. Impulse has failed to disclose via interrogatories and requests for production its list of so-called marketers or extant contracts with same - ostensibly to avoid being painted with the same brush as these "fly-by-night" criminal spam gangs. For this pro se defendant, the distinction between Plaintiff's claims and mine, if there is one, is not discernible to me.

13) Impulse knows that it is suing pro se defendants. Pro Se defendants by definition are typically not attorneys. As a result, pro se defendants will make mistakes. Impulse has seized every opportunity to threaten and intimidate 3rd party defendants in terms of filings made and the errors which ensue. The primary threat has been for sanctions for making mistakes. If allowed, these sanctions would render 3rd party defendants "paralyzed" in terms of mounting our legal self-defense. It is highly likely that 3rd parties will make more mistakes in our self-defense. As a matter of equity, this Court, I trust, will adjudge each filing made by a 3rd party defendant on a good faith proffer of facts – not my legal education or lack thereof.

14) I do not want to have to interact with Mr. Ivey et al because of his tendency to intimidate/threaten. There is a "veiled" threat by Mr. Ivey on page 10 of his memorandum suggesting that my father is "practicing law". This is not the first time that he has levied such a charge. If Impulse wishes to engage in another side show or ruse, then I would be happy to testify along with my family and my father's friends as to the role he has played

7

1   in this case – this calculated merit-less distraction is a waste of

2   judicial resources predicated on the realization that Impulse's

3   theory of the case is smoke and mirrors – something that our

4   jury will clearly see.

5   15)   My opinion is that Mr. Ivey is not a man of his word. That is

6   the reason why I have requested my father's help. He has

7   buffered me from the day-to-day skirmishes with Impulse.

8   However, he has not submitted anything to the Court on my

9   behalf without my input and foreknowledge. It appears that

10   Impulse could correspond via email [to my father and copying

11   3rd parties and Mr. Siegel] or suggest yet another way to

12   overcome the impasse regarding the need to communicate in

13   this case. We have been pulled into Impulse's mean-spirited

14   and illegal charade, but we will defend ourselves to the best of

15   our collective abilities.

16   I declare under penalty of perjury under the laws of the United States

17   that the foregoing is true and correct.

18

19   Jamila E. Gordon

20   9804 Buckingham Drive

21   Pasco, WA 99301

22   509-210-1069

23   EXECUTED this 20th day of March, 2006

24   _____

25

DECLARATION RESPONSE- 8

## Certificate of Service

1

I, hereby, certify that on March 20, 2006, I filed this affidavit with this
2   Court. I have served Bob Siegel, Peter J. Glantz, Sean A. Moynihan,
Floyd E. Ivey, Bonnie Gordon, James Gordon III, Jonathan Gordon,
3   Emily Abbey, and Robert Pritchett by other means.

4   _____

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DECLARATION RESPONSE- 9

9

in this case – this calculated merit-less distraction is a waste of judicial resources predicated on the realization that Impulse's theory of the case is smoke and mirrors – something that our jury will clearly see.

15)  My opinion is that Mr. Ivey is not a man of his word. That is the reason why I have requested my father's help. He has buffered me from the day-to-day skirmishes with Impulse. However, he has not submitted anything to the Court on my behalf without my input and foreknowledge. It appears that Impulse could correspond via email [to my father and copying 3rd parties and Mr. Siegel] or suggest yet another way to overcome the impasse regarding the need to communicate in this case. We have been pulled into Impulse's mean-spirited and illegal charade, but we will defend ourselves to the best of our collective abilities.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Jamila E. Gordon

9804 Buckingham Drive

Pasco, WA 99301

509-210-1069

EXECUTED this 20th day of March, 2006

_____

10

## Certificate of Service

1

I, hereby, certify that on March 20, 2006, I filed this affidavit with this

2  Court. I have served Bob Siegel, Peter J. Glantz, Sean A. Moynihan, Floyd E. Ivey, Bonnie Gordon, James Gordon III, Jonathan Gordon,

3  Emily Abbey, and Robert Pritchett by other means.

4  _____ P O A

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

//

One Millennium Drive
Uniontown, PA 15401
Phone: (724) 437-3707

Commonwealth
Marketing Group

February 9, 2004

Jeff Goldstein          Facsimile: (678) 805-2101
Impulse Marketing Group, Inc.
Five Concourse Parkway, Suite 950
Atlanta, GA 30328

Re: James S. Gordon, Jr. v. Commonwealth Marketing Group, Inc.

Dear Jeff:

Commonwealth Marketing Group, Inc. (CMG) hereby gives notice to Impulse Marketing Group, Inc. (IMG) to immediately cause IMG affiliated marketers, offerclicks and freebiegazette, to cease representing, in any and all manner whatsoever, IMG on behalf of CMG, unless and until IMG provides CMG with assurance that it has caused all of its affiliated marketers, including the two mentioned above, to cease and desist from sending messages, to the gordonworks.com e-mail domain.

CMG finds it necessary to take this drastic action as, despite repeated telephone conversations with IMG officers and staff of the need to act immediately on this extremely urgent matter, we learned today that the gordonworks.com domain continues to receive messages from IMG affiliated marketers. Specifically, on January 7, I wrote to you, attached a copy of an Order of Court of Benton County, Washington, against me, personally, CMG and IMG, enjoining the sending of e-mail messages to James Gordon. On January 9, John Fonzo, CMG Vice President and General Counsel, wrote to IMG's Phil Huston, requesting assurances concerning IMG CAN SPAM Act and state anti-Spam law compliance. (Gordon's lawsuits against CMG was filed pursuant to the Washington anti-Spam law). On February 2, Mr. Fonzo again wrote to Phil Huston, informing IMG in writing of our previous oral notification of the Gordon vs. CMG litigation, and raising indemnification issues under the CMG-IMG Website Development and Marketing Services Agreement.

It is my understanding that IMG's lawyers have responded in writing to the January 9 letter concerning SPAM law compliance, providing assurances of IMG compliance. Further, on multiple occasions, CMG has forwarded to IMG several e-mail messages as provided by James Gordon to me, for research and evaluation as to, among other things, origin of the messages, any evidence of Gordon opt-ins, as well as evidence of cessation of messages, to the extent they originated from an IMG affiliated marketer. My staff

CMG 000052

12

advises that they have had continuous dialogue with IMG technical staff as to these messages, together with certain assurances that proper safeguards were put in place to make certain that additional messages are not sent to Mr. Gordon.

What is equally troubling to me is that IMG was first notified of Gordon's alleged receipt of SPAM in September of 2003, immediately upon CMG's receipt of notice from Gordon of the allegations. Certainly, IMG has had sufficient time to address this serious situation. Thus, you can imagine my confusion, anger and embarrassment when I received from James Gordon on February 7, yet two additional e-mail messages that appeared to have originated from IMG affiliated marketers.

Jeff, it is absolutely imperative that this situation be addressed immediately. Given the long and productive business relationship that CMG and IMG has enjoyed, you must see this demand for IMG affiliated marketers who send messages to gordonworks.com, including the two mentioned above, to cease and desist representing IMG on CMG products as a final effort to get IMG's attention to do what is legally required and commercially responsible.

Please call me immediately upon receipt. At that time, we can direct to the person at IMG who will give this their undivided and immediate attention, the most recent e-mail messages received from James Gordon.

Sincerely,

Robert E. Kane
President & CEO

CMG 000053

# KLEIN, ZELMAN, ROTHERMEL & DICHTER, L.L.P.

ATTORNEYS AT LAW

485 MADISON AVENUE

NEW YORK, NEW YORK 10022-5803

TEL (212) 935-6020

FAX (212) 753-8101

e-mail: kzrd@kzrd.com

FRED C. KLEIN
ANDREW E. ZELMAN
JOAN EBERT ROTHERMEL
JOEL R. DICHTER
JANE B. JACOBS
NANCY B. SCHESS
DAVID O. KLEIN
LAURENCE J. LEBOWITZ
SEAN A. MOYNIHAN
————
JOHN T. UM
JOSHUA D. ROSE
DEENA B. BURGESS

STEPHEN B. HANSBURG
OF COUNSEL

February 3, 2004

VIA FIRST CLASS MAIL

John P. Fonzo, Esq.
Vice President & General Counsel
Commonwealth Marketing Group
One Millennium Drive
Uniontown, PA 15401

Re: CAN-SPAM compliance

Dear Mr. Fonzo:

Please be advised that this firm represents Impulse Marketing Group, Inc. ("Impulse"). We write in response to your January 9, 2004 correspondence addressed to Mr. Phil Huston, in which you request that Impulse detail the steps that it has taken to comply with the provisions of the CAN-SPAM Act of 2003 ("CAN-SPAM" or the "Act"), specifically as they relate to the services that Impulse provides to Commonwealth Marketing Group ("Commonwealth") under contract dated December 10, 2001 (the "Agreement"). Impulse has assured us that during the life of its relationship with Commonwealth, it will at all times provide services to Commonwealth in strict conformance with the requirements of CAN-SPAM and any subsequent amendments. In furtherance of this commitment, Impulse is amenable to crafting a mutually acceptable rider to the existing Agreement that will address the parties' respective CAN-SPAM obligations, while providing reciprocal indemnification provisions that will be triggered should either party at any time fail to comply with the Act.

As of January 1, 2004, Impulse has implemented the following internal procedures so that its business is conducted in accordance with CAN-SPAM regulations. In particular, and without limitation, Impulse ensures that each and every commercial e-mail that it sends, or has sent through a third party, contains: accurate header information; correct domain name and/or IP address; "subject" and "from" lines that are not fraudulent, deceptive or misleading; a functioning return/reply e-mail address for unsubscribe purposes and an unsubscribe hyperlink

{00062027;2}

CMG 000050

14

KLEIN, ZELMAN, ROTHERMEL & DICHTER, L.L.P.

*John P. Fonzo, Esq.*
*February 3, 2004*
*Page 2*

that is functional for thirty (30) days after the applicable e-mail transmission date; language
identifying such commercial e-mail as an advertisement or solicitation; and valid, physical
mailing addresses (not P.O. boxes) for both Impulse and its advertiser-clients, such as
Commonwealth. As required by the Act, Impulse processes all unsubscribe requests within ten
(10) days of receiving such requests, if not sooner. Each unsubscribed e-mail address is then
transferred to the Impulse suppression list. This list is updated on a daily basis, divided up into
separate advertiser-specific suppression lists and made available to the applicable advertiser-
clients for their own internal scrubbing and suppression purposes.

Should you have any further questions on the CAN-SPAM compliance measures taken
by Impulse, please contact me at your convenience. We will begin drafting the CAN-SPAM
rider next week and will have same for your review promptly thereafter. I look forward to
working with you.

Sincerely,

David O. Klein

cc: Phil Huston

CMG 000051

*15*

Case 2:04-cv-05125-FVS　　Document 297　　Filed 03/20/2006

Exhibit 3

X-Persona: <ValueWeb>
Received: from cust_req_fwding (james@gordonworks.com --> jim@gordonworks.com) by ams.ftl.affinity.com id
<216611-20680>; Wed, 1 Oct 2003 10:08:34 -0400
Received: from relay02.mindsharedesign.com ([216.39.113.10]) by ams.ftl.affinity.com with ESMTP id <216875-20663>;
Wed, 1 Oct 2003 10:07:39 -0400
Received: from i.pm0.net (i.pm0.net [216.39.113.141])
　　　by relay02.mindsharedesign.com (Postfix) with ESMTP id A6E31643B
　　　for <james@gordonworks.com>; Wed, 1 Oct 2003 07:05:16 -0700 (PDT)
Received: (from pmguser@localhost)
　　　by i.pm0.net (8.12.8/8.12.2/Submit) id h91E7bxU007989;
　　　Wed, 1 Oct 2003 07:07:37 -0700 (PDT)
Date: Wed, 1 Oct 2003 07:07:37 -0700 (PDT)
Message-Id: <200310011407.h91E7bxU007989@i.pm0.net>
From:　"EmailPrize.com" <pmgsender@returns.mb00.net>
To:　<james@gordonworks.com>
X-PMG-Userid: emailprize
X-PMG-Msgid: unsubscribe
X-PMG-Recipient: james@gordonworks.com
Subject: Unsubscribed Successful!
MIME-Version: 1.0
Content-Type: text/plain; charset="iso-8859-1"

You have been unsubscribed to the EmailPrize Newsletter.  We are sorry to see you leave.

EmailPrize.com

16

From: "floyd ivey" <feivey@3-cities.com>
To: "Jim Gordon" <res08nqc@verizon.net>
Subject: Re: Help With District Courts Complaints
Date: Mon, 22 Sep 2003 10:29:23 -0700
X-Mailer: Microsoft Outlook Express 6.00.2800.1158

Jim,

Thanks for the interesting note. I certainly have an interest but will
first point you to direct contact with the Attorney General's office. They
may be able to indicate the extent of their efforts and may have an interest
in your work.

Moving a positive result in District Court to a meaningful prospect of
gaining dollars will likely be difficult. The Attorney General may have a
clear perspective of the possibility of having success via litigation.

Please let me know the nature of any contact you might have with the AG.

Floyd E. Ivey


----- Original Message -----
From: "Jim Gordon" <res08nqc@verizon.net>
To: <feivey@3-cities.com>
Sent: Monday, September 22, 2003 8:15 AM
Subject: Help With District Courts Complaints


> Floyd:
>
> I would like you to consider the following information as I will need help
> completing the work that I have outlined, below...
>
> I have taken the following affirmative steps to reduce the 600+ emails
that
> I have been receiving every day since 1998:
>
> 1. I purchased forensic software to allow me to trace the origin of
emails.
> 2. Mailed demand letters to individuals and entities that have spammed me.
> Each letter contained the following info:
>        a. A two page copy of RCW 19.190 - WA anti-spam statute
>        b. Copies of the unlawful headers from the email that the
spammers
> sent to me.
>        c. Demand for damages of $500 per violation - the threshold for
> sending a letter was 10 violations or more
> 3. Mailed a total of 30 demand letters to the most egregious violators of
> this law.
>
> Currently, I have drafted a complaint - the draft was based on a template
> from a successful defense of RCW 19.190 in Western WA. I am seeking an
> attorney to "perfect" my complaint so that I may file it in District
Court.
> In the alternative, I may want to hire an attorney to represent me in
court.
>
> An interesting side note is since the demand letters were delivered to
> these spammers, a few have continued to send their spam "flaunting" our
> law. I believe that there is a second cause of action (perhaps harassment)

0003

17

From: "floyd ivey" <feivey@3-cities.com>
To: "Jim Gordon" <res08nqc@verizon.net>
Subject: Re: Article from Wired World
Date: Thu, 25 Sep 2003 09:38:24 -0700
X-Mailer: Microsoft Outlook Express 6.00.2800.1158

Jim,

The problem with present resistance to spam is the cost. That is, it will
cost $225/hour for me to explore with no clear ability to find a solution.
Further, should you actually locate a spammer there would be doubt regarding
the ability to collect on any judgment.

In the mean time someone has commenced such a lawsuit. I haven't heard re:
the status for months. And the Attorney Generals of many states are likely
looking at the issue.

Thus others are doing the work at no expense to you. There will be a real
budget needed for you to commence the effort. Please advise if you want to
examine the prospect of going forward.

Floyd


----- Original Message -----
From: "Jim Gordon" <res08nqc@verizon.net>
To: <feivey@3-cities.com>
Sent: Thursday, September 25, 2003 9:09 AM
Subject: Article from Wired World


> Floyd:
>
> My domain name - gordonworks.com is under siege. Whether we consider my
> domain name intellectual PROPERTY or personal PROPERTY, this property is
> being encroached upon - to the tune of 4MB+ every day. This encroachment
> displaces my computer's memory with unsolicited - even unlawful commercial
> email.
>
> I have kept records of this spam since 8/6/03. In that time (51 days), I
> have received 122MB of spam. In the past 24 hours, I have received 4.6MB
of
> spam. I am feeling a since of urgency...
>
> One might ask why I don't simply filter and delete these email. I have
been
> filtering and deleting email since 1998. During that time, my daily volume
> of email approached 1500 messages per day. I found that filters can be
> defeated/circumvented - so I spent time revising and updating my filters.
> My collection of spam (over 20,000 messages) now serves one purpose - that
> of being evidence against those who spam me and millions of others.
>
> My spam problem was an imposition on my business and it is an imposition
on
> my personal use of the Internet. Therefore, I have chosen to stop running
> and hiding from spam. I believe that Washington's anti-spam statute was
> designed to prevent much of the abuse that I am experiencing.
>
> The article below discusses the concept of "trespass" as it pertains to
> spam...I experience this sense of being trespassed upon each time that I
> check my email - 6+ times per day.

0019

To: "Jamila & Tommy" <jamila@charter.net>
From: Jim Gordon <res08nqc@verizon.net>
Subject: Update
Cc:
Bcc: bonnie.gordon@verizon.net
Attached: C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftAmericanHomeownersASSN.doc; C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftTheodorehansson.doc;


Jamila:

Please hold on to the attachments - they are templates for future litigation. The email accounts for the family have the following totals:

| **Name** | **Total Emails (unresearched)** | **Unlawful spam (researched)** |
|---|---|---|
| **Bonnie** | 1505 | 153 |
| **James** | 3409 | 343 |
| **Jamila** | 1132 | 94 |
| **Jay** | 1552 | 124 |
| **Jon** | 1138 | 95 |

The complaints that I drafted for my attorney, Floyd Ivey, are attached. Each unlawful spam could be worth $500 - if we prevail in court

*19*

Exhibit 7

To: feivey@3-cities.com
From: Jim Gordon <res08nqc@verizon.net>
Subject: Status
Cc:
Bcc:
Attached:


Floyd:

On Wednesday, the 24th a Superior Court judge gave me an early Christmas present in the form of two temporary restraining orders against two of the companies that have been spamming me. On January 8th, 2004, I will appear in Superior Court to request a permanent injunction against these companies and their agents.

Below are links to the steps that I have taken to stop the spamming.

Here's a link to the online Herald-Standard.
http://www.heraldstandard.com/site/news.cfm?newsid=10686398&BRD=2280&PAG=461&dept_id=480247&rfi=8

http://www.gordonworks.com/spam

http://www.gordonworks.com/spam/TedHansson.htm

http://www.gordonworks.com/spam/CommonwealthMarketingGroup.htm

If I prevail in these initial lawsuits, there are over 70 more anti-spam lawsuits that I wish to file in Superior and District Courts. If you are still interested, in what way do you envision assisting me?

Seasons Greetings,
Jim Gordon




To: "Akers, Doug E" <doug.akers@pnl.gov>
From: Jim <Kamau@charter.net>
Subject: RE: FW: Battelle Contract for Review
Cc:
Bcc:
Attached:


Actually it is Doug McKinley v Floyd Ivey

At 07:48 AM 4/4/2005 -0700, you wrote:
  By chance are you working with Dave Broussard?   Good Guy

  Look forward to hear from one of them.

  Take Care

  Doug

        ——Original Message——
        From: Jim [mailto:Kamau@charter.net]
        Sent: Saturday, April 02, 2005 8:30 AM
        To: Akers, Doug E
        Cc: Shoemaker, Steven V
        Subject: Re: FW: Battelle Contract for Review

        Doug:

        I have not had an opportunity to take this contract to an attorney yet - because the two attorneys that I typically use
        are facing one another - one for me and the other against (yes, it technical is a conflict of interest, but...). The attorney
        that is for me, does work for the Lab, which makes advising me a possible conflict of interest - so, I may go to a third
        attorney...

        I appreciate you diligence on the preparation of this document and will get legal advice as soon as possible.

        Best Regards,
        Jim

        At 07:29 AM 3/7/2005 -0800, you wrote:

          Jim,

          Here it is.  Hopefully it will make it through this time.

          Doug

          ——Original Message——
          From:  Akers, Doug E
          Sent:  Tuesday, February 22, 2005 12:07 PM
          To:    'jim@gordonworks.com'
          Cc:    Shoemaker, Steven V; Strycker, Forest E Jr
          Subject:    Battelle Contract for Review

          Jim,

21