1

2

3

4

5

6

7

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 0 9 2006

JAMES R. LARSEN, CLERK
_____ DEPUTY
RICHLAND, WASHINGTON

8

9

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON AT RICHLAND

10

11   James S. Gordon, Jr., Plaintiff,      )   Case No.: CV-04-5125-FVS

12          vs.                            )   AMENDED MOTION TO
                                           )   COMPEL AND FOR SANCTIONS
13   Impulse Marketing Group, Inc.,        )   AND AFFIDAVIT RE:
                                           )   DISCOVERY
14   Defendant                             )

15                                         )

16   Impulse Marketing Group, Inc.,        )

17   Third-Party Plaintiff,                )

18          v.                             )

19   Bonnie F. Gordon, Third-Party         )

20   Defendant                            )

21

22   _____

23   TO: Clerk of the Court

24   AND TO: Floyd E. Ivey, Attorney for Third-Party Plaintiff

25

*handwritten:* CV04 5125 FVS
Gordon v Impulse   Ex A memorandum
Supporting motion
to strike

*handwritten:* 10

1  This amended motion to compel was prompted by Mr. Floyd Ivey's
2  veiled threat to seek sanctions against me for improperly pleading this
3  motion and the motion to expedite. I do not appreciate the strong arm
4  tactics of Impulse's legal team.

5
6  Mr. Ivey appears to have a pattern of ethically-challenged decision-
7  making in terms of his clients and former clients. Mr. Ivey has
8  represented my husband, James S. Gordon, Jr., the Plaintiff. My
9  husband has discussed and corresponded at length with Mr. Ivey
10 regarding suing spammers, including the Commonwealth Marketing
11 and Impulse Marketing cabal. Mr. Ivey took that knowledge and used it
12 for the benefit of his more financially fit client, Impulse. Within the last
13 5 years, Mr. Ivey has had another client sue and ultimately win a case
14 wherein Mr. Ivey should have disqualified himself. Exhibit 1

15 It is imperative that Mr. Ivey disqualify himself from any case involving
16 my husband. It is my position that appropriate sanctions should be
17 levied against Mr. Ivey. By the way, Glantz and Moynihan saw fit to
18 defend the repeat offender, Mr. Ivey.

19
20 Third Party Defendant moves the Court for Sanctions and to Compel
21 Third Party Plaintiff's Responses to Third Party Defendant's
22 Interrogatories and Request for Production of Documents. These
23 documents were placed in US Mail on or about January 17, 2006. I
24 contacted Mr. Ivey to ensure the 30 day deadline was going to be met,
25 he instead sought a two-week extension. With that additional time,
   Impulse still failed to meet its burden under FRCP 37 (a)(2) (3)(4).

1   At the status conference in the Fall of 2005, Impulse asked this Court

2   for 3+ additional months for discovery. It has yet to propound the first

3   question or request the first document from me. Due to this

4   disingenuous request of the Court by Impulse close to four months of

5   time has been squandered by Impulse.

6

7   Third Party Defendant's Motion to Compel is pursuant to FRCP 37(a)(2)

8   (3)(4). Impulse has failed to make the required Rule 26 disclosures to

9   the undersigned. Further, Impulse has provided evasive, incomplete

10  disclosure, answer, or response to discovery propounded by the

11  undersigned.

### Interrogatories

12  Examples of the non-responsive answers to interrogatories by Impulse

13  are the following:

14  INTERROGATORY NO. 1:

15

16  Please provide the full contact information (and URL or web address in the form of
    http://www.) for the owner of each opt-in web page that you allege that third party

17  defendant opted in at.

18

19  RESPONSE:

20

21  Impulse asserts the Ambiguity, Irrelevancy and Overbreadth Objections.  The
    information sought will not lead to the discovery of admissible evidence. Bushman

22  v. New Holland, 83 Wn. 2d 429, 433-34 (1974); Felix A. Thillet, Inc. v. Kelly-
    Springfield Tire Co., 41 F.R.D. 55 (D.P.R. 1966). Further, Bonnie Gordon does not

23  have standing to request information on behalf of all third party defendants.

24  Notwithstanding the foregoing objections, Impulse refers Bonnie Gordon to the
    attachment appended hereto as "Updated Gordon Opt-In Information."

25



In previous filings with this Court, Impulse has alleged my involvement in a scheme to defraud it. Two of the web sites that were mentioned were emailprize.com and home4freestuff.com, as I recall. Impulse posturing about needing information to defend itself is also true of my need to defend myself against specious – libelous accusations.

INTERROGATORY NO. 2:

Detail all personally identifying information which is collected by Impulse and/or its marketing partners

RESPONSE:

Impulse asserts the Ambiguity, Irrelevancy and Overbreadth Objections. The information sought will not lead to the discovery of admissible evidence. Bushman v. New Holland, 83 Wn. 2d 429, 433-34 (1974); Felix A. Thillet, Inc. v. Kelly-Springfield Tire Co., 41 F.R.D. 55 (D.P.R. 1966). Notwithstanding the foregoing objections, Impulse refers Bonnie Gordon to attachment appended hereto as "Updated Gordon Opt-in Information". This "document" appears to be a quickly thrown together Excel spreadsheet with information scattered about on it – no source is cited for the data.

Impulse informed the Court that I allegedly placed false information into web pages, I am simply asking for evidence of this claim.

INTERROGATORY NO. 3:

List all IP addresses and domains wherein marketing emails (spam) was sent from since August 1, 2003.

RESPONSE:

Impulse asserts the Ambiguity, Irrelevancy and Overbreadth Objections. The information sought will not lead to the discovery of admissible evidence. Bushman v. New Holland, 83 Wn. 2d 429, 433-34 (1974); Felix A. Thillet, Inc. v. Kelly-Springfield Tire Co., 41 F.R.D. 55 (D.P.R. 1966). Notwithstanding the foregoing objections, Impulse refers Bonnie Gordon to the attachment appended hereto as "Updated Gordon Opt-In Information."

In order to defend myself against false claims regarding emails that were sent to an address bearing my name, I must have this information.

INTERROGATORY NO. 18:

Provide full captioned information regarding all lawsuits that you have been a party to since 8/1/03.

**RESPONSE:**

Impulse asserts the Ambiguity, Irrelevancy and Overbreadth Objections. The information sought will not lead to the discovery of admissible evidence. Bushman v. New Holland, 83 Wn. 2d 429, 433-34 (1974); Felix A. Thillet, Inc. v. Kelly-Springfield Tire Co., 41 F.R.D. 55 (D.P.R. 1966).

This is discoverable information, which can aid my self-defense.

The Request for Production (RFP) by Impulse is exemplified by the following: Responding to Request 1-6, Impulse states, "This Third Party Defendant Bonnie Gordon has no standing to propound discovery on

1    behalf of Plaintiff or other Third Party Defendant's (sic).

2    Notwithstanding this Objection, as to Third Party Plaintiff Bonnie

3    Gordon, continues its location of written documents and will

4    supplement this production" In RFP 7-8, Impulse states, in part, "A

5    response to this request for production will not lead to discovery of

6    admissible evidence". No. 9 is simply called "irrelevant".

7

8    Impulse wants to get information, but refuses to give information. I

9    trust that the Court will assist me in obtaining full responses and

10   answers to the discovery propounded to Impulse.

11

12   Third party Defendant asks the Court to award Sanctions per FRCP

13   37(a)(4) in an amount equal to or greater than the Sanctions demanded

14   by Impulse of Plaintiff. Or, in the alternative, simply require/order

15   compliance with the rules.

16

17   I declare under penalty of perjury under the laws of the United States

18   that the foregoing is true and correct.

19

20   Bonnie F. Gordon, Pro Se

21   9804 Buckingham Drive

22   Pasco, WA 99301

23   509-210-1069

24   EXECUTED this 9th day of March, 2006.

25   _____

1

### Certificate of Service

2

I, hereby, certify that on March 9, 2006, I filed this motion with this
3   Court. I have served Bob Siegel, Peter J. Glantz, Sean A. Moynihan,
Floyd E. Ivey, Bonnie Gordon, James Gordon III, Jonathan Gordon,
4   Emily Abbey, and Robert Pritchett by other means.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 0 9 2006

JAMES R. LARSEN, CLERK
_____ DEPUTY
RICHLAND, WASHINGTON

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON AT RICHLAND

James S. Gordon, Jr., Plaintiff,

vs.

Impulse Marketing Group, Inc.,

Defendant

Impulse Marketing Group, Inc.,

Third-Party Plaintiff,

v.

Jamila E. Gordon, Third-Party

Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: CV-04-5125-FVS

THIRD-PARTY DEFENDANT, JAMILA E. GORDON'S MOTION TO COMPEL AND FOR SANCTIONS AND AFFIDAVIT RE: DISCOVERY

TO: Clerk of the Court

AND TO: Floyd E. Ivey, Attorney for Third-Party Plaintiff

Q17

1  Third Party Defendant moves the Court for Sanctions and to Compel

2  Third Party Plaintiff's Responses to Third Party Defendant's

3  Interrogatories and Request for Production of Documents. These

4  documents were placed in US Mail on or about January 17, 2006. I

5  contacted Mr. Ivey to ensure the 30 day deadline was going to be met;

6  he instead sought a two-week extension. With that additional time,

7  Impulse still failed to meet its discovery obligations per FRCP 37 (a) (2)

   (3) (4).

8

9  At the status conference in the Fall of 2005, Impulse asked this Court

10 for 3+ additional months for discovery. It has yet to propound the first

11 question or request the first document from me. Due to this

12 disingenuous request of the Court by Impulse close to four months of

13 time has been squandered by Impulse.

14

15 Third Party Defendant's Motion to Compel is pursuant to FRCP 37(a)(2)

16 (3)(4). Impulse has failed to make the required Rule 26 disclosures to

17 the undersigned. Further, Impulse has provided evasive, incomplete

18 disclosure, answer, or response to discovery propounded by the

19 undersigned.

20

21 Again, Impulse via its attorney is threatening me (and us) with

22 sanctions for exercising our rights. Mr. Ivey stated after the

23 teleconference with this Court that he would seek sanctions if we did

24 not withdraw our motion to compel as it was not properly plead. I trust

   that such intimidation is not rewarded by the Court. Mr. Ivey is the

25 same attorney that represented my dad in one or more legal matters

1   and turned around and represented Impulse and other parties even

2   though my dad had discussed and corresponded about suing spammers

3   – an apparent breach of ethics Mr. Ivey - I have copies of the 15 or more

4   emails between Mr. Ivey and my father.

5

6   My father, has a power of attorney that I have executed in Benton

7   County, OR. Mr. Ivey has this document. I have asked my father, James

    S. Gordon, Jr. to represent my interests in this matter. Thus, Mr. Ivey

8   shall interact directly with my father or develop another workaround as

9   I do not wish to be contacted by Impulse or its attorneys in any manner.

10

11                         **Interrogatories**

12  Examples of the non-responsive answers to interrogatories by Impulse

13  are the following:

14  **Interrogatory #11:** Who actually sets up and sends email on behalf of

15  Impulse?

16

17  **Response:** Impulse asserts the Ambiguity, Irrelevancy, and

18  Overbreadth Objections. The inquiry is not relevant to the issues

19  alleged in the Third Party Complaint. The information sought will not

20  lead to the discovery of admissible evidence. Bushman v. New Holland,

21  83 Wn. 2d 429, 433-34 (1974); Felix A. Thillet, Inc. v. Kelly-Springfield

22  Tire Co., 41 F.R.D. 55 (D.P.R. 1966).

23

24  As Impulse has alleged that I was part of a scheme to defraud it and

25  that I allegedly opted into its marketing partners' web sites, I have a

right to know if the offending emails were sent by the marketing

partners or someone in its direct employ and control.

**Interrogatory #16:** List all IP addresses that you have used to send email from for the past 5 years – list all domains that you have used – who owned them during this period of time?

**Response:**

Impulse asserts the Ambiguity, Irrelevancy, and Overbreadth Objections. The interrogatory is irrelevant to the Third party Causes of action. The information sought will not lead to the discovery of admissible evidence. Further, this Interrogatory No. 16 comprises a mutipart interrogatory and thus comprises more that one interrogatories for the purpose of complying with the rules limitation of 25 interrogatories. Bushman v. New Holland, 83 Wn. 2d 429, 433-34 (1974) Felix A. Thillet, Inc. v. Kelly-Springfield Tire Co., 41 F.R.D. 55 (D.P.R. 1966).

Again, the analysis of the emails which bear my name are at issue, I have a right to know the genesis of same.

**Interrogatory #17:** Please provide evidence of all opt-ins for the domain, gordonworks.com, including personally identifiable information from each opt-in.

**Response:**



Impulse assers the ambiguity, Irrelevancy, and Overbreadth Objections. The interrogatory is irrelevant to the Third Party Causes of Action against this Third party Defendant. The information sought will not lead to the discovery of admissible evidence. <u>Bushman v. New Holland,</u> 83 Wn. 2d 429, 433-34 (1974) Felix A. Thillet, Inc. v. <u>Kelly-Springfield Tire Co.,</u> 41 F.R.D. 55 (D.P.R. 1966). Notwithstanding the foregoing, Jamila Gordon is referred to the opt-in spreadsheet produced to her in response th her request for documents.

Impulse claims that I opted into web sites or participated in a scheme, I am entitled to know of any and all instances that I allegedly opted in per its records or the records of its agents.

### Requests for Production

In the following actual list of requests my me for documents, I will use "key words" [in brackets] from the responses by Impulse – including "irrelevant", "lack standing", or other as a synopsis of Impulse's objection.

1.  Produce all correspondence – from and to IMG since 8/1/2003 - internal and external regarding the regulation, restriction, and quality control of email. **[Lacks Standing]**
2.  Provide copies of all marketing contracts executed by Impulse and all marketing partners since 8/1/2003. **[Lacks Standing]**
3.  Provide documentation pertaining to the discipline of any and all employees who have been disciplined regarding email abuse. **[Lacks Standing]**
4.  Provide documentation pertaining to the discipline of any and all marketing partners who have been disciplined regarding email abuse. **[Lacks Standing]**

5.  Provide documentation or correspondence regarding due diligence conducted on each prospective email marketer that you have contracted with. **[Irrelevant]**

6.  Produce lists of all users (individuals) of the following domains: (List Omitted from this display) **[ Irrelevant]**

7.  Produce an organization chart for IMG and any subsidiary and/or parent organizations. **[Lacks Standing]**

8.  Produce documentary evidence of all quality control measures pertaining to email marketing. **[Irrelevant]**

**9.**  Produce all documents on which IMG relied on that led to excessive costs and expenses as a result of plaintiff's and third party defendants' alleged actions. **[Impulse did not acknowledge this request for production]**

**10.**  Produce a chronological list of all marketing partners and full contact information for each including the IP addresses and domains used by them. **[Impulse did not acknowledge this request for production]**

**11.**  Provide documents which represent false representations by plaintiff and/or third party defendants. **[Impulse did not acknowledge this request for production]**

**12.**  Produce contracts and other documents which detail a business relationship with the owners of the opt-in web sites wherein it is alleged that third party defendants opted in to receive email from defendant or its agents or marketing partners. **[Impulse did not acknowledge this request for production]**

**13.**  Produce documentary evidence of all quality control measures pertaining to email marketing implemented by Impulse and/or its marketing partners. **[Impulse did not acknowledge this request for production]**

Third party Defendant asks the Court to award Sanctions per FRCP 37(a)(4) in an amount equal to or greater than the Sanctions demanded by Impulse of Plaintiff. Or, in the alternative, simply require/order compliance with the rules.

1   I declare under penalty of perjury under the laws of the United States

2   that the foregoing is true and correct.

3

4   Jamila E. Gordon, Pro Se

5   9804 Buckingham Drive

6   Pasco, WA 99301

7   509-210-1069

8

9   EXECUTED this 9th day of March, 2006.

10   _Jana P o A_ _____

11

12                    Certificate of Service

13   I, hereby, certify that on March 9, 2006, I filed this motion with this
     Court. I have served Bob Siegel, Peter J. Glantz, Sean A. Moynihan,
14   Floyd E. Ivey, Bonnie Gordon, James Gordon III, Jonathan Gordon,
     Emily Abbey, and Robert Pritchett by other means.

15   _Jana P o A_

16   _____

17

18

19

20

21

22

23

24

25

MAR 2 0 2006

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 1 7 2006

JAMES R. LARSEN, CLERK
_____ DEPUTY
RICHLAND, WASHINGTON

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN

DISTRICT OF WASHINGTON AT RICHLAND

James S. Gordon, Jr., Plaintiff,    )

      vs.    )

Impulse Marketing Group, Inc.,    )

Defendant    )

   )

   )

Impulse Marketing Group, Inc.,    )

Third-Party Plaintiff,    )

 v.    )

Bonnie F. Gordon, Third-Party

Defendant

Case No.: CV-04-5125-FVS

DECLARATION AND
RESPONSE TO IMPULSE AND
IVEY INITIAL MEMORANDUM
RESPONSE RE: THIRD PARTY
DEFENDANT'S MOTION TO
COMPEL AND MOTION TO
DISQUALIFY

TO: Clerk of the Court

AND TO: Floyd E. Ivey, Attorney for Third-Party Plaintiff

AND TO: Peter J. Glantz and Sean A. Moynihan

Bonnie F. Gordon declares as follows:

1)   I, Bonnie F. Gordon, am a named third party defendant in the above captioned lawsuit.  I am over the age of 18 and am otherwise competent to testify.

2)   Commonwealth Marketing Group (CMG) – whose contract has already been introduced into evidence by Impulse sent a "cease and desist" letter to Impulse on February 9, 2004 to stop it from sending emails to "gordonworks.com" Impulse is withholding documents like this one from me (us), documents which will substantiate the contentions made by me (us). **Exhibit 1**

3)   Prior to this letter (Ex 1) by CMG, Impulse assured CMG that it was Can-Spam compliant. **Exhibit 2**  However, Impulse continued to send spam or unwanted email to gordonworks.com through December 2005 – a per se violation of Can-Spam, despite its "assurances" of using suppression/scrub lists and the like. And it is sending spam to my new domain - well into March 2006.

4)   Impulse's reliance on accusations of a scheme and the concepts of indemnification and contribution "fail" in light of the fact that internal documents from Impulse and external documents from CMG, indicate that Impulse's Ken Adamson, Jeffrey Goldstein, and John Huston – at a minimum, knew that no email was to be sent to the email address which bears my name at "gordonworks.com". Despite this knowledge, each man, individually and as a collective, failed to reign in the torrent of

email being sent to "gordonworks.com. My causes of action versus Impulse will bring out more of its scheme or conspiracy to defraud the general public along with its promotion or support of pornography, counterfeit drugs and the like.

5) Impulse's reliance on the assertions of fraud and deceit, tortious interference, malicious prosecution and breach of contract (even if there was a contract [which I deny] it was rescinded via unsubscribe requests in October 2003 starting with Exhibit 3) fail because of the evidence of accurate subscriber profiles and opt-out requests as early as October 1, 2003. Accurate subscriber profiles and opt-out requests along with the communication between CMG and Impulse indicate a good faith effort on the part of the undersigned to extricate myself from the failed attempt to obtain a prize, which ultimately proved to be part of a fraudulent free prize scheme to steal the identity of the undersigned and anyone else who responded to Impulse's offers. **Exhibit 3**

6) The "prayer" for an injunction by Impulse appears to be fraudulent as the documents above indicate that Impulse has refused to honor unsubscribe requests by "gordonworks.com" email addressee(s). Further, it has used its refusal to fabricate its story of its own victimization. In addition to ignoring opt-out requests, Impulse ignore edicts from CMG and internal suppression guidelines – making it answerable to no one. It is Impulse and its marketing partners' behavior that led to any and all damages incurred by Plaintiff and the undersigned.

26

Damages proffered by Impulse, allegedly as a result of a scheme, are illusory or self-inflicted.

7) Impulse's counterclaims are based on a lie (or series of lies), for example, a) I participated in a scheme to defraud it  b) I opted into one or more of its websites  c) I opted out of one or more of its websites  d) I opted in and opted out, repeatedly  e) Impulse believed that 3rd party defendants' subscriber profiles were inaccurate and untruthful  f) I solicited emails in order to file multiple lawsuits (strictly speaking I have filed no lawsuits against anyone – my counterclaims and causes of action against Impulse were prompted by the pre-existing specious lawsuit by Impulse – I have sued no one else)  g) Impulse has sustained financial loss and continues to accrue losses due to action(s) by Plaintiff and 3rd party defendants. Had Impulse done as it was instructed to do by its principal, CMG, this lawsuit may have been averted altogether. Impulse's Adamson letter of 10/21/03 acknowledges Impulse's placement of "gordonworks.com" "in a file of blocked and/or suppressed recipients – ALL email after this time VIOLATED Impulse's and CMG's corporate policies as well as state and federal civil and criminal laws as outlined in my causes of action versus Impulse.

8) Mr. Ivey et al have criticized my (our) interrogatories, it appears, as something I (we) are parroting for/from Plaintiff. He fails to mention that I (we) now have legitimate claims of my (our) own. These new claims are for statutory damages under RCW 19.190 et seq as Impulse has insinuated itself into

web sites which do not disclose a link to Impulse – claiming that it is a marketing partner simply because it purchased an email list from another spammer. Impulse has failed to disclose via interrogatories and requests for production its list of so-called marketers ostensibly to avoid being painted with the same brush as these "fly-by-night" criminal spam gangs. Discovery now appears to be a one-way street whereby Impulse hounds Plaintiff for discovery while maintaining a closed fist on its requirement for disclosure. For pro se defendants, the distinction between our collective claims, if there is one, is not discernible to us.

9)  As a result of 30 years of marriage, my husband and I discuss and collaborate on most things including litigation and strategies for same. This collaboration has revealed the following, we both understood Mr. Ivey was "his" attorney and that all that was discussed between the two of them was privileged. I was shocked to hear that Mr. Ivey had switched sides. The documents in my possession appear to reveal a betrayal of my husband and a skirting of the truth by Mr. Ivey **Exhibit 4** – email dated 9/22/03; **Exhibit 5** – email dated 9/25/03; **Exhibit 6** – dated 9/30/03; **Exhibit 7** – dated 9/30/03 to Jamila Gordon; **Exhibit 8** – dated 12/30/03; **Exhibit 9** – dated 4/4/05.

10)  I find it peculiar that Mr. Ivey would retain my husband's email from 2002, but not the 2003 emails that would indicate a conflict.

11)  **Exhibit 5** lists the case of Gordon v. Commonwealth Marketing Group, Inc. It was a hyperlink to a web site created by my husband which contained detailed information about the lawsuit and emails and the analysis of the email – the web site has been taken down. On the surface, it appears that Mr. Ivey has direct intimate knowledge of both sides in the instant conflict. And Impulse's argument that "the relevant test for disqualification is whether the former representation is 'substantially related' to the current representation" – Gas-A-Thon citation. The substantially related argument is buttressed by Impulse's assertion/claim in its Motion to Dismiss based on "res judicata" (circa January 2005) that the corpus of email was **identical**.

12)  Impulse knows that it is suing pro se defendants. Pro Se defendants by definition are typically not attorneys. As a result, pro se defendants will make mistakes. Impulse has seized every opportunity to threaten and intimidate 3rd party defendants in terms of filings made and the errors which ensue. The primary threat has been for sanctions for making mistakes. If allowed, these sanctions would render 3rd party defendants "paralyzed" in terms of mounting their legal self-defense. It is highly likely that 3rd parties will make more mistakes in their self-defense. As a matter of equity, this Court, I (we) trust will adjudge each filing made by a 3rd party defendant on a good faith proffer of facts – not my (our) legal education or lack thereof.

13)  I do not want to have to interact with Mr. Ivey et al because of

his tendency to intimidate/threaten and I do not believe he is a man of his word. That is the reason for my husband forming a "buffer" for our family and my family's consent for same. It appears that Impulse could correspond via email or suggest another way to overcome the impasse regarding the needed communications in this case. We have been pulled into this scam/scheme of Impulse, but we will defend ourselves to the best of our collective abilities.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Bonnie F. Gordon

9804 Buckingham Drive

Pasco, WA 99301

509-210-1069

EXECUTED this 17th day of March, 2006

_____

### Certificate of Service

I, hereby, certify that on March 17, 2006, I filed this affidavit with this Court. I have served Bob Siegel, Peter J. Glantz, Sean A. Moynihan, Floyd E. Ivey, Jamila Gordon, James Gordon III, Jonathan Gordon, Emily Abbey, and Robert Pritchett by other means.

_____



CMG
Commonwealth
Marketing Group

One Millennium Drive
Uniontown, PA 15401
Phone: (724) 437-3707

February 9, 2004

Jeff Goldstein          Facsimile: (678) 805-2101
Impulse Marketing Group, Inc.
Five Concourse Parkway, Suite 950
Atlanta, GA 30328

Re: James S. Gordon, Jr. v. Commonwealth Marketing Group, Inc.

Dear Jeff:

Commonwealth Marketing Group, Inc. (CMG) hereby gives notice to Impulse Marketing
Group, Inc. (IMG) to immediately cause IMG affiliated marketers, offerclicks and
freebiegazette, to cease representing, in any and all manner whatsoever, IMG on behalf of
CMG, unless and until IMG provides CMG with assurance that it has caused all of its
affiliated marketers, including the two mentioned above, to cease and desist from sending
messages, to the gordonworks.com e-mail domain.

CMG finds it necessary to take this drastic action, as, despite repeated telephone
conversations with IMG officers and staff of the need to act immediately on this
extremely urgent matter, we learned today that the gordonworks.com domain continues
to receive messages from IMG affiliated marketers. Specifically, on January 7, I wrote to
you, attached a copy of an Order of Court of Benton County, Washington, against me,
personally, CMG and IMG, enjoining the sending of e-mail messages to James Gordon.
On January 9, John Fonzo, CMG Vice President and General Counsel, wrote to IMG's
Phil Huston, requesting assurances concerning IMG CAN SPAM Act and state anti-Spam
law compliance. (Gordon's lawsuits against CMG was filed pursuant to the Washington
anti-Spam law). On February 2, Mr. Fonzo again wrote to Phil Huston, informing IMG
in writing of our previous oral notification of the Gordon vs. CMG litigation, and raising
indemnification issues under the CMG-IMG Website Development and Marketing
Services Agreement.

It is my understanding that IMG's lawyers have responded in writing to the January 9
letter concerning SPAM law compliance, providing assurances of IMG compliance.
Further, on multiple occasions, CMG has forwarded to IMG several e-mail messages as
provided by James Gordon to me, for research and evaluation as to, among other things,
origin of the messages, any evidence of Gordon opt-ins, as well as evidence of cessation
of messages, to the extent they originated from an IMG affiliated marketer. My staff

CMG 000052

E-MARKETING • FULFILLMENT SERVICES • DIRECT MAIL • INHOUSE LETTERSHOP • STATE OF THE ART CALL CE

08/06/2004 FRI 12:26  [TX/RX NO 6833] @024

31

advises that they have had continuous dialogue with IMG technical staff as to these messages, together with certain assurances that proper safeguards were put in place to make certain that additional messages are not sent to Mr. Gordon.

What is equally troubling to me is that IMG was first notified of Gordon's alleged receipt of SPAM in September of 2003, immediately upon CMG's receipt of notice from Gordon of the allegations. Certainly, IMG has had sufficient time to address this serious situation. Thus, you can imagine my confusion, anger and embarrassment when I received from James Gordon on February 7, yet two additional e-mail messages that appeared to have originated from IMG affiliated marketers.

Jeff, it is absolutely imperative that this situation be addressed immediately. Given the long and productive business relationship that CMG and IMG has enjoyed, you must see this demand for IMG affiliated marketers who send messages to gordonworks.com, including the two mentioned above, to cease and desist representing IMG on CMG products as a final effort to get IMG's attention to do what is legally required and commercially responsible.

Please call me immediately upon receipt. At that time, we can direct to the person at IMG who will give this their undivided and immediate attention, the most recent e-mail messages received from James Gordon.

Sincerely,

Robert E. Kane
President & CEO

CMG 000053

32

# KLEIN, ZELMAN, ROTHERMEL & DICHTER, L.L.P.

ATTORNEYS AT LAW

485 MADISON AVENUE

NEW YORK, NEW YORK 10022-5803

TEL (212) 935-6020

FAX (212) 753-8101

e-mail: kzrd@kzrd.com

FRED C. KLEIN
ANDREW E. ZELMAN
JOAN EBERT ROTHERMEL
JOEL R. DICHTER
JANE B. JACOBS
NANCY B. SCHESS
DAVID O. KLEIN
LAURENCE J. LEBOWITZ
SEAN A. MOYNIHAN

JOHN T. UM
JOSHUA D. ROSE
DEENA B. BURGESS

STEPHEN B. HANSBURG
OF COUNSEL

February 3, 2004

VIA FIRST CLASS MAIL

John P. Fonzo, Esq.
Vice President & General Counsel
Commonwealth Marketing Group
One Millennium Drive
Uniontown, PA 15401

Re: CAN-SPAM compliance

Dear Mr. Fonzo:

Please be advised that this firm represents Impulse Marketing Group, Inc. ("Impulse"). We write in response to your January 9, 2004 correspondence addressed to Mr. Phil Huston, in which you request that Impulse detail the steps that it has taken to comply with the provisions of the CAN-SPAM Act of 2003 ("CAN-SPAM" or the "Act"), specifically as they relate to the services that Impulse provides to Commonwealth Marketing Group ("Commonwealth") under contract dated December 10, 2001 (the "Agreement"). Impulse has assured us that during the life of its relationship with Commonwealth, it will at all times provide services to Commonwealth in strict conformance with the requirements of CAN-SPAM and any subsequent amendments. In furtherance of this commitment, Impulse is amenable to crafting a mutually acceptable rider to the existing Agreement that will address the parties' respective CAN-SPAM obligations, while providing reciprocal indemnification provisions that will be triggered should either party at any time fail to comply with the Act.

As of January 1, 2004, Impulse has implemented the following internal procedures so that its business is conducted in accordance with CAN-SPAM regulations. In particular, and without limitation, Impulse ensures that each and every commercial e-mail that it sends, or has sent through a third party, contains: accurate header information; correct domain name and/or IP address; "subject" and "from" lines that are not fraudulent, deceptive or misleading; a functioning return/reply e-mail address for unsubscribe purposes and an unsubscribe hyperlink

{00062027;2}

CMG 000050

33

John P. Fonzo, Esq.
February 3, 2004
Page 2

that is functional for thirty (30) days after the applicable e-mail transmission date; language identifying such commercial e-mail as an advertisement or solicitation; and valid, physical mailing addresses (not P.O. boxes) for both Impulse and its advertiser-clients, such as Commonwealth. As required by the Act, Impulse processes all unsubscribe requests within ten (10) days of receiving such requests, if not sooner. Each unsubscribed e-mail address is then transferred to the Impulse suppression list. This list is updated on a daily basis, divided up into separate advertiser-specific suppression lists and made available to the applicable advertiser-clients for their own internal scrubbing and suppression purposes.

Should you have any further questions on the CAN-SPAM compliance measures taken by Impulse, please contact me at your convenience. We will begin drafting the CAN-SPAM rider next week and will have same for your review promptly thereafter. I look forward to working with you.

Sincerely,

David O. Klein

cc: Phil Huston

34

Exhibit 3

X-Persona: <ValueWeb>
Received: from cust_req_fwding (james@gordonworks.com --> jim@gordonworks.com) by ams.ftl.affinity.com id
<216611-20680>; Wed, 1 Oct 2003 10:08:34 -0400
Received: from relay02.mindsharedesign.com ([216.39.113.10]) by ams.ftl.affinity.com with ESMTP id <216875-20663>;
Wed, 1 Oct 2003 10:07:39 -0400
Received: from i.pm0.net (i.pm0.net [216.39.113.141])
    by relay02.mindsharedesign.com (Postfix) with ESMTP id A6E31643B
    for <james@gordonworks.com>; Wed, 1 Oct 2003 07:05:16 -0700 (PDT)
Received: (from pmguser@localhost)
    by i.pm0.net (8.12.8/8.12.2/Submit) id h91E7bxU007989;
    Wed, 1 Oct 2003 07:07:37 -0700 (PDT)
Date: Wed, 1 Oct 2003 07:07:37 -0700 (PDT)
Message-Id: <200310011407.h91E7bxU007989@i.pm0.net>
From:  "EmailPrize.com" <pmgsender@returns.mb00.net>
To:    <james@gordonworks.com>
X-PMG-Userid: emailprize
X-PMG-Msgid: unsubscribe
X-PMG-Recipient: james@gordonworks.com
Subject: Unsubscribed Successful!
MIME-Version: 1.0
Content-Type: text/plain; charset="iso-8859-1"

You have been unsubscribed to the EmailPrize Newsletter.  We are sorry to see you leave.

EmailPrize.com

35

From: "floyd ivey" <feivey@3-cities.com>
To: "Jim Gordon" <res08nqc@verizon.net>
Subject: Re: Help With District Courts Complaints
Date: Mon, 22 Sep 2003 10:29:23 -0700
X-Mailer: Microsoft Outlook Express 6.00.2800.1158

Jim,

Thanks for the interesting note. I certainly have an interest but will
first point you to direct contact with the Attorney General's office. They
may be able to indicate the extent of their efforts and may have an interest
in your work.

Moving a positive result in District Court to a meaningful prospect of
gaining dollars will likely be difficult. The Attorney General may have a
clear perspective of the possibility of having success via litigation.

Please let me know the nature of any contact you might have with the AG.

Floyd E. Ivey


----- Original Message -----
From: "Jim Gordon" <res08nqc@verizon.net>
To: <feivey@3-cities.com>
Sent: Monday, September 22, 2003 8:15 AM
Subject: Help With District Courts Complaints


> Floyd:
>
> I would like you to consider the following information as I will need help
> completing the work that I have outlined, below...
>
> I have taken the following affirmative steps to reduce the 600+ emails
that
> I have been receiving every day since 1998:
>
> 1. I purchased forensic software to allow me to trace the origin of
emails.
> 2. Mailed demand letters to individuals and entities that have spammed me.
> Each letter contained the following info:
>       a. A two page copy of RCW 19.190 - WA anti-spam statute
>       b. Copies of the unlawful headers from the email that the
spammers
> sent to me.
>       c. Demand for damages of $500 per violation - the threshold for
> sending a letter was 10 violations or more
> 3. Mailed a total of 30 demand letters to the most egregious violators of
> this law.
>
> Currently, I have drafted a complaint - the draft was based on a template
> from a successful defense of RCW 19.190 in Western WA. I am seeking an
> attorney to "perfect" my complaint so that I may file it in District
Court.
> In the alternative, I may want to hire an attorney to represent me in
court.
>
> An interesting side note is since the demand letters were delivered to
> these spammers, a few have continued to send their spam "flaunting" our
> law. I believe that there is a second cause of action (perhaps harassment)

36

From: "floyd ivey" <feivey@3-cities.com>
To: "Jim Gordon" <res08nqc@verizon.net>
Subject: Re: Article from Wired World
Date: Thu, 25 Sep 2003 09:38:24 -0700
X-Mailer: Microsoft Outlook Express 6.00.2800.1158

Jim,

The problem with present resistance to spam is the cost.  That is, it will
cost $225/hour for me to explore with no clear ability to find a solution.
Further, should you actually locate a spammer there would be doubt regarding
the ability to collect on any judgment.

In the mean time someone has commenced such a lawsuit.  I haven't heard re:
the status for months.  And the Attorney Generals of many states are likely
looking at the issue.

Thus others are doing the work at no expense to you.  There will be a real
budget needed for you to commence the effort.  Please advise if you want to
examine the prospect of going forward.

Floyd


----- Original Message -----
From: "Jim Gordon" <res08nqc@verizon.net>
To: <feivey@3-cities.com>
Sent: Thursday, September 25, 2003 9:09 AM
Subject: Article from Wired World


> Floyd:
>
> My domain name - gordonworks.com is under siege. Whether we consider my
> domain name intellectual PROPERTY or personal PROPERTY, this property is
> being encroached upon - to the tune of 4MB+ every day. This encroachment
> displaces my computer's memory with unsolicited - even unlawful commercial
> email.
>
> I have kept records of this spam since 8/6/03. In that time (51 days), I
> have received 122MB of spam. In the past 24 hours, I have received 4.6MB
of
> spam. I am feeling a since of urgency...
>
> One might ask why I don't simply filter and delete these email. I have
been
> filtering and deleting email since 1998. During that time, my daily volume
> of email approached 1500 messages per day. I  found that filters can be
> defeated/circumvented - so I spent time revising and updating my filters.
> My collection of spam (over 20,000 messages) now serves one purpose - that
> of being evidence against those who spam me and millions of others.
>
> My spam problem was an imposition on my business and it is an imposition
on
> my personal use of the Internet. Therefore, I have chosen to stop running
> and hiding from spam. I believe that Washington's anti-spam statute was
> designed to prevent much of the abuse that I am experiencing.
>
> The article below discusses the concept of "trespass" as it pertains to
> spam...I experience this sense of being trespassed upon each time that I
> check my email - 6+ times per day.



To: feivey@3-cities.com
From: Jim Gordon <res08nqc@verizon.net>
Subject: First spam Complaints
Cc:
Bcc:
Attached: C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftTheodorehansson.doc; C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftAmericanHomeownersASSN.doc;

Floyd:

I have the email documentation, which shows the violations that I allege. I have also "drafted" two complaints. How would you like to proceed? And what costs can we identify at this point?

I believe that we will prevail in these matters. However, I would like to be as frugal as possible on this first lawsuit [I have been unemployed since 7/31/03]. There are 30+ complaints to go.

I'd like to have the first complaint [AHA] filed and sent to the Defendant with a final offer to settle out-of-court.


Regards,
Jim Gordon



**1. American Homeowners Assn. [ 144 emails ] $72,000 claim**
    1100 Summer St.
    Stamford, CT 06905

https://www.ahamembership.com/index.cfm

This company sent me a written "rejection" of my "demand for damages" letter that I sent to them. However, they continue to send me ads that offer free products, which actually would cost me a tiny fee, that is to be charged to my credit card and I would also be obligated to receive their one month trial membership - not so free after all. Their email explicitly proclaims, "Click now and complete the form to get your Gift Now! This offer is with **no obligation** and the gift is yours to keep."


**2. Theodore Hansson [ 94 emails ] $47,000 claim**
    4137 248th Ct. SE
    Issaquah, WA 98029

http://www.esioffers.com/campaigns/thansson/?link=2464

http://www.megawavez.com/hansson/index.html

He sells books...states that people can use his money to buy discounted paper. Some of the subject lines for his email follow:

Subject: Wanna Use My Money?
Subject: Use my money... all of it!
Subject: You can use MY money
Subject: Split the profits 50-50 using MY money

---



**Jamila & Tommy, 01:26 PM 9/30/2003 -0700, Update**

To: "Jamila & Tommy" <jamila@charter.net>
From: Jim Gordon <res08nqc@verizon.net>
Subject: Update
Cc:
Bcc: bonnie.gordon@verizon.net
Attached: C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftAmericanHomeownersASSN.doc; C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftTheodorehansson.doc;

Jamila:

Please hold on to the attachments - they are templates for future litigation. The email accounts for the family have the following totals:

| <u>Name</u> | <u>Total Emails (unresearched)</u> | <u>Unlawful spam (researched)</u> |
|---|---|---|
| **Bonnie** | 1505 | 153 |
| **James** | 3409 | 343 |
| **Jamila** | 1132 | 94 |
| **Jay** | 1552 | 124 |
| **Jon** | 1138 | 95 |

The complaints that I drafted for my attorney, Floyd Ivey, are attached. Each unlawful spam could be worth $500 - if we prevail in court

---

39

Akers, Doug E, 08:47 AM 4/4/2005 -0700, RE: FW: Battelle Contract for Review

To: "Akers, Doug E" <doug.akers@pnl.gov>
From: Jim <Kamau@charter.net>
Subject: RE: FW: Battelle Contract for Review
Cc:
Bcc:
Attached:

Actually it is Doug McKinley v Floyd Ivey

At 07:48 AM 4/4/2005 -0700, you wrote:
  By chance are you working with Dave Broussard?  Good Guy

Look forward to hear from one of them.

Take Care

Doug

          -----Original Message-----
          From: Jim [mailto:Kamau@charter.net]
          Sent: Saturday, April 02, 2005 8:30 AM
          To: Akers, Doug E
          Cc: Shoemaker, Steven V
          Subject: Re: FW: Battelle Contract for Review

          Doug;

          I have not had an opportunity to take this contract to an attorney yet - because the two attorneys that I typically use
          are facing one another - one for me and the other against (yes, it technical is a conflict of interest, but...). The attorney
          that is for me, does work for the Lab, which makes advising me a possible conflict of interest - so, I may go to a third
          attorney...

          I appreciate you diligence on the preparation of this document and will get legal advice as soon as possible.

          Best Regards,
          Jim

          At 07:29 AM 3/7/2005 -0800, you wrote:

            Jim,

            Here it is. Hopefully it will make it through this time.

            Doug

            -----Original Message-----
            From: Akers, Doug E
            Sent: Tuesday, February 22, 2005 12:07 PM
            To: 'jim@gordonworks.com'
            Cc: Shoemaker, Steven V; Strycker, Forest E Jr
            Subject:    Battelle Contract for Review

            Jim,

---

Printed for Jim Gordon <Kamau@charter.net>                                                  1



1

2

3
```
        FILED IN THE
    U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
```
4
MAR 2 0 2006

5
JAMES R. LARSEN, CLERK
DEPUTY

6
RICHLAND, WASHINGTON

7

8

9
# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN

DISTRICT OF WASHINGTON AT RICHLAND

10

11
James S. Gordon, Jr., Plaintiff,      )      Case No.: CV-04-5125-FVS

12
          vs.                          )

13
                                       )      DECLARATION AND
Impulse Marketing Group, Inc.,         )      RESPONSE TO IMPULSE AND
                                       )      IVEY INITIAL MEMORANDUM
14
                                       )      RESPONSE RE: THIRD PARTY
Defendant                              )      DEFENDANT'S MOTION TO
15
                                       )      COMPEL AND MOTION TO
                                       )      DISQUALIFY
16
Impulse Marketing Group, Inc.,         )

17
Third-Party Plaintiff,

18
v.

19
Jamila E. Gordon, Third-Party

20
Defendant

21
TO: Clerk of the Court

22
AND TO: Floyd E. Ivey, Attorney for Third-Party Plaintiff

23
AND TO: Peter J. Glantz and Sean A. Moynihan

24

25

41

Jamila E. Gordon declares as follows:

1)      I, Jamila E. Gordon, am a named third party defendant in the above captioned lawsuit. I am over the age of 18 and am otherwise competent to testify.

2)      Impulse is arguing about the prospect of losing Mr. Ivey as counsel for Impulse and the alleged hardship that would result. However, this argument is not well reasoned because a) Impulse retains counsel headed up by Klein, Zelman, Rothermel, & Dichter  b) it is Klein et al which hired Mr. Ivey as local counsel for them  c) It appears to me that Klein et al receive copies of all documents filed and has primary responsibility for Impulse's legal defense – not Mr. Ivey  d) in the arguments regarding cited cases, it appears that the counsel disqualified were primary counsel not back-up or secondary counsel (a sub-contractor), e.g. Mr. Ivey  e) the harm represented by disqualifying Mr. Ivey is greatly exaggerated as Klein et al are Impulse's primary counsel - this motion to disqualify does not impede that continued representation or interfere with its basic relationship as Impulse's counsel of choice  f) using Mr. Ivey's words, "the court will not allow a litigant to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of **counsel of his choice** [emphasis added] after substantial preparation of a case has been completed". The operative words are "counsel of his choice" – I submit that Mr. Ivey is not counsel of choice by

42

Impulse, but rather counsel of choice for Impulse's true, primary counsel, Klein et al. g) the cited case law does not apply to the disqualification of one's counsel's sub-contractor.

3) Commonwealth Marketing Group (CMG) – whose contract has already been introduced into evidence by Impulse sent a "cease and desist" letter to Impulse dated February 9, 2004 to stop it from sending emails to "gordonworks.com". Impulse is withholding all documents which I have requested via discovery. It is my belief that these documents will substantiate the declarations made by me and further support the posture of CMG and Impulse indicated by the attached exhibit. **Exhibit 1**

4) Prior to this letter (Ex 1) by CMG, Impulse assured CMG that it was Can-Spam compliant. **Exhibit 2** However, Impulse continued to send spam to gordonworks.com through December 2005 – a per se violation of Can-Spam and RCW 19.190 et seq, despite Impulse's assurances to CMG that it was using suppression or scrub lists to ensure compliance. Impulse is sending spam to my new domain as recently as March 2006.

5) Impulse's reliance on accusations of a scheme and the concepts of indemnification and contribution "fail" in light of the fact that internal documents from Impulse and external documents from CMG, which indicate that Impulse's Ken Adamson, Jeffrey Goldstein, and John Huston – at a minimum, knew that no email was to be sent to the email address which bears my name at "gordonworks.com". Despite this knowledge, each man, individually and as a collective, failed to reign in the torrent of



email being sent to "gordonworks.com. My causes of action versus Impulse will bring out more of its scheme or conspiracy to defraud me.

6)  Impulse's reliance on the assertions of fraud and deceit, tortious interference, malicious prosecution and breach of contract (even if there was a contract [which I deny] it was rescinded via unsubscribe requests in October 2003 starting with Exhibit 3) fail because of the evidence of opt-out requests as early as October 1, 2003. These opt-out requests along with the communications between CMG and Impulse indicate a good faith effort to extricate me from the failed attempt to obtain a prize, which ultimately proved to be part of a fraudulent free prize scheme by Impulse to steal my identity.  **Exhibit 3**

7)  Impulse's "prayer" for an injunction appears to be pure sophistry as the documents above indicate that Impulse has refused to honor unsubscribe requests by "gordonworks.com" email addressee(s). Further, Impulse has re-framed its refusal into a story about its fabricated victimization. In addition to ignoring opt-out requests from "gordonworks.com", Impulse ignored edicts from CMG and its own internal suppression guidelines – making it answerable to no one. It is Impulse and its marketing partners' behaviors that led to any and all damages incurred by Plaintiff and the undersigned. Damages proffered by Impulse, allegedly as a result of a scheme, are illusory or self-inflicted.

8)  Impulse's causes of action are based on a lie (or series of lies),

44

for example, a) I participated in a scheme to defraud it  b) I opted into one or more of its websites  c) I opted out of one or more of its websites  d) I opted in and opted out, repeatedly  e) Impulse believed that 3rd party defendants' subscriber profiles were inaccurate and untruthful  f) I solicited emails in order to file multiple lawsuits (strictly speaking I have filed no lawsuits against anyone – my counterclaims and causes of action against Impulse were prompted by the pre-existing specious lawsuit by Impulse – I have sued no one else)  g) Impulse has sustained financial loss and continues to accrue losses due to action(s) by Plaintiff and 3rd party defendants. Had Impulse done as it was instructed to do by its principal, CMG, this lawsuit may have been averted altogether. Impulse's Adamson letter of 10/23/03 acknowledges Impulse's placement of "gordonworks.com" "in a file of blocked and/or suppressed recipients – ALL email after this time VIOLATED Impulse's and CMG's corporate policies as well as state and federal civil and criminal laws as outlined in my causes of action versus Impulse.

9) Based on an email [Exhibit X] and discussion with my father, we both understood Mr. Ivey was "his" attorney and that all that was discussed between the two of them was privileged. I was shocked to hear that Mr. Ivey had switched sides as I had also contacted him about a separate personal legal matter. The documents in my possession appear to reveal a betrayal of my father and a skirting of the truth by Mr. Ivey. **Exhibit 4 –** email dated 9/22/03; **Exhibit 5** – email dated 9/25/03; **Exhibit**

**6 – dated 9/30/03 to me; Exhibit 7** – dated 12/30/03; **Exhibit 8** – dated 4/4/05.

10) I find it peculiar that Mr. Ivey would retain my father's email from 2002, but not the relevant 2003 emails.

11) **Exhibit 7** lists the case of Gordon v. Commonwealth Marketing Group, Inc. The actual mention of CMG was via hyperlink to a web site created by my father, which contained detailed information about the lawsuit and emails and the analysis of the email – I believe the web site has been taken down. On the surface, it appears that Mr. Ivey has direct intimate knowledge of both sides in the instant conflict. Impulse argues "the relevant test for disqualification is whether the former representation is 'substantially related' to the current representation" – Gas-A-Thon citation. The substantially related argument is buttressed by Impulse's assertion/claim in its Motion to Dismiss based on "res judicata" (circa January 2005) that the corpus of email was **identical**.

12) Mr. Ivey et al have criticized my interrogatories, it appears that Impulse believes that I am simply parroting words for/from Plaintiff. Mr. Ivey fails to mention that I now have legitimate claims of my own (I have contemplated these counterclaims since the inception of the "slapp suit"). These new claims include a cause of action for statutory damages under RCW 19.190 et seq and Can-Spam as Impulse has insinuated itself into web sites which do not disclose a link to Impulse. Apparently, Impulse claims that it is a spammer's marketing

partner simply because it bought or sold an email list from that spammer. Impulse has failed to disclose via interrogatories and requests for production its list of so-called marketers or extant contracts with same - ostensibly to avoid being painted with the same brush as these "fly-by-night" criminal spam gangs. For this pro se defendant, the distinction between Plaintiff's claims and mine, if there is one, is not discernible to me.

13) Impulse knows that it is suing pro se defendants. Pro Se defendants by definition are typically not attorneys. As a result, pro se defendants will make mistakes. Impulse has seized every opportunity to threaten and intimidate 3rd party defendants in terms of filings made and the errors which ensue. The primary threat has been for sanctions for making mistakes. If allowed, these sanctions would render 3rd party defendants "paralyzed" in terms of mounting our legal self-defense. It is highly likely that 3rd parties will make more mistakes in our self-defense. As a matter of equity, this Court, I trust, will adjudge each filing made by a 3rd party defendant on a good faith proffer of facts – not my legal education or lack thereof.

14) I do not want to have to interact with Mr. Ivey et al because of his tendency to intimidate/threaten. There is a "veiled" threat by Mr. Ivey on page 10 of his memorandum suggesting that my father is "practicing law". This is not the first time that he has levied such a charge. If Impulse wishes to engage in another side show or ruse, then I would be happy to testify along with my family and my father's friends as to the role he has played



in this case – this calculated merit-less distraction is a waste of judicial resources predicated on the realization that Impulse's theory of the case is smoke and mirrors – something that our jury will clearly see.

15) My opinion is that Mr. Ivey is not a man of his word. That is the reason why I have requested my father's help. He has buffered me from the day-to-day skirmishes with Impulse. However, he has not submitted anything to the Court on my behalf without my input and foreknowledge. It appears that Impulse could correspond via email [to my father and copying 3rd parties and Mr. Siegel] or suggest yet another way to overcome the impasse regarding the need to communicate in this case. We have been pulled into Impulse's mean-spirited and illegal charade, but we will defend ourselves to the best of our collective abilities.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Jamila E. Gordon

9804 Buckingham Drive

Pasco, WA 99301

509-210-1069

EXECUTED this 20th day of March, 2006

DECLARATION RESPONSE- 8

48



### Certificate of Service

1

2   I, hereby, certify that on March 20, 2006, I filed this affidavit with this
    Court. I have served Bob Siegel, Peter J. Glantz, Sean A. Moynihan,
3   Floyd E. Ivey, Bonnie Gordon, James Gordon III, Jonathan Gordon,
    Emily Abbey, and Robert Pritchett by other means.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DECLARATION RESPONSE- 9

in this case – this calculated merit-less distraction is a waste of judicial resources predicated on the realization that Impulse's theory of the case is smoke and mirrors – something that our jury will clearly see.

15) My opinion is that Mr. Ivey is not a man of his word. That is the reason why I have requested my father's help. He has buffered me from the day-to-day skirmishes with Impulse. However, he has not submitted anything to the Court on my behalf without my input and foreknowledge. It appears that Impulse could correspond via email [to my father and copying 3rd parties and Mr. Siegel] or suggest yet another way to overcome the impasse regarding the need to communicate in this case. We have been pulled into Impulse's mean-spirited and illegal charade, but we will defend ourselves to the best of our collective abilities.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Jamila E. Gordon

9804 Buckingham Drive

Pasco, WA 99301

509-210-1069

EXECUTED this 20th day of March, 2006

_____





1

## Certificate of Service

2   I, hereby, certify that on March 20, 2006, I filed this affidavit with this
Court. I have served Bob Siegel, Peter J. Glantz, Sean A. Moynihan,

3   Floyd E. Ivey, Bonnie Gordon, James Gordon III, Jonathan Gordon,
Emily Abbey, and Robert Pritchett by other means.

4   _____  P O A

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

11

5 7

**CMG**
Commonwealth
Marketing Group

One Millennium Drive
Uniontown, PA 15401
Phone: (724) 437-3707

February 9, 2004

Jeff Goldstein                    Facsimile: (678) 805-2101
Impulse Marketing Group, Inc.
Five Concourse Parkway, Suite 950
Atlanta, GA 30328

Re: James S. Gordon, Jr. v. Commonwealth Marketing Group, Inc.

Dear Jeff:

Commonwealth Marketing Group, Inc. (CMG) hereby gives notice to Impulse Marketing Group, Inc. (IMG) to immediately cause IMG affiliated marketers, offerclicks and freebiegazette, to cease representing, in any and all manner whatsoever, IMG on behalf of CMG, unless and until IMG provides CMG with assurance that it has caused all of its affiliated marketers, including the two mentioned above, to cease and desist from sending messages, to the gordonworks.com e-mail domain.

CMG finds it necessary to take this drastic action as, despite repeated telephone conversations with IMG officers and staff of the need to act immediately on this extremely urgent matter, we learned today that the gordonworks.com domain continues to receive messages from IMG affiliated marketers. Specifically, on January 7, I wrote to you, attached a copy of an Order of Court of Benton County, Washington, against me, personally, CMG and IMG, enjoining the sending of e-mail messages to James Gordon. On January 9, John Fonzo, CMG Vice President and General Counsel, wrote to IMG's Phil Huston, requesting assurances concerning IMG CAN SPAM Act and state anti-Spam law compliance. (Gordon's lawsuits against CMG was filed pursuant to the Washington anti-Spam law). On February 2, Mr. Fonzo again wrote to Phil Huston, informing IMG in writing of our previous oral notification of the Gordon vs. CMG litigation, and raising indemnification issues under the CMG-IMG Website Development and Marketing Services Agreement.

It is my understanding that IMG's lawyers have responded in writing to the January 9 letter concerning SPAM law compliance, providing assurances of IMG compliance. Further, on multiple occasions, CMG has forwarded to IMG several e-mail messages as provided by James Gordon to me, for research and evaluation as to, among other things, origin of the messages, any evidence of Gordon opt-ins, as well as evidence of cessation of messages, to the extent they originated from an IMG affiliated marketer. My staff

CMG 000052

08/06/2004 FRI 12:26   [TX/RX NO 6833] @024



12

advises that they have had continuous dialogue with IMG technical staff as to these messages, together with certain assurances that proper safeguards were put in place to make certain that additional messages are not sent to Mr. Gordon.

What is equally troubling to me is that IMG was first notified of Gordon's alleged receipt of SPAM in September of 2003, immediately upon CMG's receipt of notice from Gordon of the allegations. Certainly, IMG has had sufficient time to address this serious situation. Thus, you can imagine my confusion, anger and embarrassment when I received from James Gordon on February 7, yet two additional e-mail messages that appeared to have originated from IMG affiliated marketers.

Jeff, it is absolutely imperative that this situation be addressed immediately. Given the long and productive business relationship that CMG and IMG has enjoyed, you must see this demand for IMG affiliated marketers who send messages to gordonworks.com, including the two mentioned above, to cease and desist representing IMG on CMG products as a final effort to get IMG's attention to do what is legally required and commercially responsible.

Please call me immediately upon receipt. At that time, we can direct to the person at IMG who will give this their undivided and immediate attention, the most recent e-mail messages received from James Gordon.

Sincerely,

Robert E. Kane
President & CEO

CMG 000053





# KLEIN, ZELMAN, ROTHERMEL & DICHTER, L.L.P.

ATTORNEYS AT LAW

485 MADISON AVENUE

NEW YORK, NEW YORK 10022-5803

TEL (212) 935-6020

FAX (212) 753-8101

e-mail: kzrd@kzrd.com

FRED C. KLEIN
ANDREW E. ZELMAN
JOAN EBERT ROTHERMEL
JOEL P. DICHTER
JANE B. JACOBS
NANCY B. SCHESS
DAVID O. KLEIN
LAURENCE J. LEBOWITZ
SEAN A. MOYNIHAN
————
JOHN T. UM
JOSHUA D. ROSE
DEENA B. BURGESS

STEPHEN B. HANSBURG
OF COUNSEL

February 3, 2004

VIA FIRST CLASS MAIL

John P. Fonzo, Esq.
Vice President & General Counsel
Commonwealth Marketing Group
One Millennium Drive
Uniontown, PA 15401

Re: CAN-SPAM compliance

Dear Mr. Fonzo:

Please be advised that this firm represents Impulse Marketing Group, Inc. ("Impulse"). We write in response to your January 9, 2004 correspondence addressed to Mr. Phil Huston, in which you request that Impulse detail the steps that it has taken to comply with the provisions of the CAN-SPAM Act of 2003 ("CAN-SPAM" or the "Act"), specifically as they relate to the services that Impulse provides to Commonwealth Marketing Group ("Commonwealth") under contract dated December 10, 2001 (the "Agreement"). Impulse has assured us that during the life of its relationship with Commonwealth, it will at all times provide services to Commonwealth in strict conformance with the requirements of CAN-SPAM and any subsequent amendments. In furtherance of this commitment, Impulse is amenable to crafting a mutually acceptable rider to the existing Agreement that will address the parties' respective CAN-SPAM obligations, while providing reciprocal indemnification provisions that will be triggered should either party at any time fail to comply with the Act.

As of January 1, 2004, Impulse has implemented the following internal procedures so that its business is conducted in accordance with CAN-SPAM regulations. In particular, and without limitation, Impulse ensures that each and every commercial e-mail that it sends, or has sent through a third party, contains: accurate header information; correct domain name and/or IP address; "subject" and "from" lines that are not fraudulent, deceptive or misleading; a functioning return/reply e-mail address for unsubscribe purposes and an unsubscribe hyperlink

{00062027;2}

CMG 000050

KLEIN, ZELMAN, ROTHERMEL & DICHTER, L.L.P.

*John P. Fonzo, Esq.*
*February 3, 2004*
*Page 2*

that is functional for thirty (30) days after the applicable e-mail transmission date; language
identifying such commercial e-mail as an advertisement or solicitation; and valid, physical
mailing addresses (not P.O. boxes) for both Impulse and its advertiser-clients, such as
Commonwealth. As required by the Act, Impulse processes all unsubscribe requests within ten
(10) days of receiving such requests, if not sooner. Each unsubscribed e-mail address is then
transferred to the Impulse suppression list. This list is updated on a daily basis, divided up into
separate advertiser-specific suppression lists and made available to the applicable advertiser-
clients for their own internal scrubbing and suppression purposes.

    Should you have any further questions on the CAN-SPAM compliance measures taken
by Impulse, please contact me at your convenience. We will begin drafting the CAN-SPAM
rider next week and will have same for your review promptly thereafter. I look forward to
working with you.

                                        Sincerely,

                                        David O. Klein

cc: Phil Huston

X-Persona: <ValueWeb>
Received: from cust_req_fwding (james@gordonworks.com --> jim@gordonworks.com) by ams.ftl.affinity.com id
<216611-20680>; Wed, 1 Oct 2003 10:08:34 -0400
Received: from relay02.mindsharedesign.com ([216.39.113.10]) by ams.ftl.affinity.com with ESMTP id <216875-20663>;
Wed, 1 Oct 2003 10:07:39 -0400
Received: from i.pm0.net (i.pm0.net [216.39.113.141])
    by relay02.mindsharedesign.com (Postfix) with ESMTP id A6E31643B
    for <james@gordonworks.com>; Wed, 1 Oct 2003 07:05:16 -0700 (PDT)
Received: (from pmguser@localhost)
    by i.pm0.net (8.12.8/8.12.2/Submit) id h91E7bxU007989;
    Wed, 1 Oct 2003 07:07:37 -0700 (PDT)
Date: Wed, 1 Oct 2003 07:07:37 -0700 (PDT)
Message-Id: <200310011407.h91E7bxU007989@i.pm0.net>
From:   "EmailPrize.com" <pmgsender@returns.mb00.net>
To:     <james@gordonworks.com>
X-PMG-Userid: emailprize
X-PMG-Msgid: unsubscribe
X-PMG-Recipient: james@gordonworks.com
Subject: Unsubscribed Successful!
MIME-Version: 1.0
Content-Type: text/plain; charset="iso-8859-1"

You have been unsubscribed to the EmailPrize Newsletter.  We are sorry to see you leave.

EmailPrize.com

floyd ivey, 10:29 AM 9/22/2003 -0700, Re: Help With District Courts Complaints         Page 1 of 3

Exhibit 4

From: "floyd ivey" <feivey@3-cities.com>
To: "Jim Gordon" <res08nqc@verizon.net>
Subject: Re: Help With District Courts Complaints
Date: Mon, 22 Sep 2003 10:29:23 -0700
X-Mailer: Microsoft Outlook Express 6.00.2800.1158

Jim,

Thanks for the interesting note.  I certainly have an interest but will
first point you to direct contact with the Attorney General's office.  They
may be able to indicate the extent of their efforts and may have an interest
in your work.

Moving a positive result in District Court to a meaningful prospect of
gaining dollars will likely be difficult.  The Attorney General may have a
clear perspective of the possibility of having success via litigation.

Please let me know the nature of any contact you might have with the AG.

Floyd E. Ivey


----- Original Message -----
From: "Jim Gordon" <res08nqc@verizon.net>
To: <feivey@3-cities.com>
Sent: Monday, September 22, 2003 8:15 AM
Subject: Help With District Courts Complaints


> Floyd:
>
> I would like you to consider the following information as I will need help
> completing the work that I have outlined, below...
>
> I have taken the following affirmative steps to reduce the 600+ emails
that
> I have been receiving every day since 1998:
>
> 1. I purchased forensic software to allow me to trace the origin of
emails.
> 2. Mailed demand letters to individuals and entities that have spammed me.
> Each letter contained the following info:
>        a. A two page copy of RCW 19.190 - WA anti-spam statute
>        b. Copies of the unlawful headers from the email that the
spammers
> sent to me.
>        c. Demand for damages of $500 per violation - the threshold for
> sending a letter was 10 violations or more
> 3. Mailed a total of 30 demand letters to the most egregious violators of
> this law.
>
> Currently, I have drafted a complaint - the draft was based on a template
> from a successful defense of RCW 19.190 in Western WA. I am seeking an
> attorney to "perfect" my complaint so that I may file it in District
Court.
> In the alternative, I may want to hire an attorney to represent me in
court.
>
> An interesting side note is since the demand letters were delivered to
> these spammers, a few have continued to send their spam "flaunting" our
> law. I believe that there is a second cause of action (perhaps harassment)

0003

Printed for Jim Gordon <Kamau@charter.net>                          10/2/2005

57

From: "floyd ivey" <feivey@3-cities.com>
To: "Jim Gordon" <res08nqc@verizon.net>
Subject: Re: Article from Wired World
Date: Thu, 25 Sep 2003 09:38:24 -0700
X-Mailer: Microsoft Outlook Express 6.00.2800.1158

Jim,

The problem with present resistance to spam is the cost.  That is, it will
cost $225/hour for me to explore with no clear ability to find a solution.
Further, should you actually locate a spammer there would be doubt regarding
the ability to collect on any judgment.

In the mean time someone has commenced such a lawsuit.  I haven't heard re:
the status for months.  And the Attorney Generals of many states are likely
looking at the issue.

Thus others are doing the work at no expense to you.  There will be a real
budget needed for you to commence the effort.  Please advise if you want to
examine the prospect of going forward.

Floyd


----- Original Message -----
From: "Jim Gordon" <res08nqc@verizon.net>
To: <feivey@3-cities.com>
Sent: Thursday, September 25, 2003 9:09 AM
Subject: Article from Wired World


> Floyd:
>
> My domain name - gordonworks.com is under siege. Whether we consider my
> domain name intellectual PROPERTY or personal PROPERTY, this property is
> being encroached upon - to the tune of 4MB+ every day. This encroachment
> displaces my computer's memory with unsolicited - even unlawful commercial
> email.
>
> I have kept records of this spam since 8/6/03. In that time (51 days), I
> have received 122MB of spam. In the past 24 hours, I have received 4.6MB
of
> spam. I am feeling a since of urgency...
>
> One might ask why I don't simply filter and delete these email. I have
been
> filtering and deleting email since 1998. During that time, my daily volume
> of email approached 1500 messages per day. I  found that filters can be
> defeated/circumvented - so I spent time revising and updating my filters.
> My collection of spam (over 20,000 messages) now serves one purpose - that
> of being evidence against those who spam me and millions of others.
>
> My spam problem was an imposition on my business and it is an imposition
on
> my personal use of the Internet. Therefore, I have chosen to stop running
> and hiding from spam. I believe that Washington's anti-spam statute was
> designed to prevent much of the abuse that I am experiencing.
>
> The article below discusses the concept of "trespass" as it pertains to
> spam...I experience this sense of being trespassed upon each time that I
> check my email - 6+ times per day.

0019

file://C:\DOCUME~1\JIMGOR~1.BUS\LOCALS~1\Temp\eud11.htm          10/2/2005

Exhibit 6

Jamila & Tommy, 01:26 PM 9/30/2003 -0700, Update

To: "Jamila & Tommy" <jamila@charter.net>
From: Jim Gordon <res08nqc@verizon.net>
Subject: Update
Cc:
Bcc: bonnie.gordon@verizon.net
Attached: C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftAmericanHomeownersASSN.doc; C:\Temp\Spam
Complaint Form_files\Complaints\pleadingdraftTheodorehansson.doc;


Jamila:

Please hold on to the attachments - they are templates for future litigation. The email accounts for the family have the
following totals:

| Name | Total Emails (unresearched) | Unlawful spam (researched) |
|------|------------------------------|-----------------------------|
| Bonnie | 1505 | 153 |
| James | 3409 | 343 |
| Jamila | 1132 | 94 |
| Jay | 1552 | 124 |
| Jon | 1138 | 95 |

The complaints that I drafted for my attorney, Floyd Ivey, are attached. Each unlawful spam could be worth $500 - if we prevail
in court

59                                                                                    19



Exhibit 7

**feivey@3-cities.com, 11:13 AM 12/30/2003 -0800, Status**

To: feivey@3-cities.com
From: Jim Gordon <res08nqc@verizon.net>
Subject: Status
Cc:
Bcc:
Attached:


Floyd:

On Wednesday, the 24th a Superior Court judge gave me an early Christmas present in the form of two temporary restraining orders against two of the companies that have been spamming me. On January 8th, 2004, I will appear in Superior Court to request a permanent injunction against these companies and their agents.

Below are links to the steps that I have taken to stop the spamming.

Here's a link to the online Herald-Standard.
http://www.heraldstandard.com/site/news.cfm?newsid=10686398&BRD=2280&PAG=461&dept_id=480247&rfi=8

http://www.gordonworks.com/spam

http://www.gordonworks.com/spam/TedHansson.htm

http://www.gordonworks.com/spam/CommonwealthMarketingGroup.htm

If I prevail in these initial lawsuits, there are over 70 more anti-spam lawsuits that I wish to file in Superior and District Courts. If you are still interested, in what way do you envision assisting me?

Seasons Greetings,
Jim Gordon




Akers, Doug E, 08:47 AM 4/4/2005 -0700, RE: FW: Battelle Contract for Review

To: "Akers, Doug E" <doug.akers@pnl.gov>
From: Jim <Kamau@charter.net>
Subject: RE: FW: Battelle Contract for Review
Cc:
Bcc:
Attached:


Actually it is Doug McKinley v Floyd Ivey

At 07:48 AM 4/4/2005 -0700, you wrote:
 By chance are you working with Dave Broussard?   Good Guy

Look forward to hear from one of them.

Take Care

Doug

    ----Original Message----
    From: Jim [mailto:Kamau@charter.net]
    Sent: Saturday, April 02, 2005 8:30 AM
    To: Akers, Doug E
    Cc: Shoemaker, Steven V
    Subject: Re: FW: Battelle Contract for Review

    Doug:

    I have not had an opportunity to take this contract to an attorney yet - because the two attorneys that I typically use
    are facing one another - one for me and the other against (yes, it technical is a conflict of interest, but...). The attorney
    that is for me, does work for the Lab, which makes advising me a possible conflict of interest - so, I may go to a third
    attorney...

    I appreciate you diligence on the preparation of this document and will get legal advice as soon as possible.

    Best Regards,
    Jim

    At 07:29 AM 3/7/2005 -0800, you wrote:

       Jim,

       Here it is.  Hopefully it will make it through this time.

       Doug

       ----Original Message----
       From: Akers, Doug E
       Sent: Tuesday, February 22, 2005 12:07 PM
       To:  'jim@gordonworks.com'
       Cc:  Shoemaker, Steven V; Strycker, Forest E Jr
       Subject:    Battelle Contract for Review

       Jim,


Printed for Jim Gordon <Kamau@charter.net>                                                                    1
0043

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 2 0 2006

JAMES R. LARSEN, CLERK
_____ DEPUTY
RICHLAND, WASHINGTON

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN

## DISTRICT OF WASHINGTON AT RICHLAND

James S. Gordon, Jr., Plaintiff,

     vs.

Impulse Marketing Group, Inc.,

Defendant


Impulse Marketing Group, Inc.,

Third-Party Plaintiff,

v.

Jonathan K. Gordon, Third-Party

Defendant

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: CV-04-5125-FVS

MOTION TO COMPEL AND FOR
SANCTIONS & DECLARATION
RE: DISCOVERY

_____

TO: Clerk of the Court

AND TO: Floyd E. Ivey, Attorney for Third-Party Plaintiff

6 2

# Introduction

I do not know the proper procedure for overcoming the impasse in terms of conferring with Impulse regarding this case as Mr. Ivey informed us that he will not contact my father, the Plaintiff, in this matter. On the one hand, Mr. Ivey had an exchange with my mother, Bonnie Gordon, via email and phone regarding discovery. And, on the other hand, those "communications" did not alter the outcome of the process, i.e. Impulse still failed to produce answers to the questions asked or to produce documents that should have accompanied the discovery request.

In light of my recently filed answer and counterclaims against Impulse, all requests Impulse deemed irrelevant, etc. are unequivocally relevant and demand full disclosure under FRCP 37 (a)(2) (3).

It is hypocritical for Impulse to 1) complain that it is not receiving adequate discovery by Plaintiff yet hamper each attempt to obtain discovery by 3rd parties  2) invoke a rule regarding conferring with opponent before filing and then refuse to comply with discovery in any meaningful way – an attempt to have it both ways – benefiting from an impasse Impulse is a party to creating  3) threaten sanctions from 3rd parties for failing to obey a rule, which Impulse thwarts by denying me required inputs to my self-defense. 4) allege that I along with other 3rd parties are propounding questions and production requests as if for my father. However, I have considered filing a counter suit against Impulse since its initial false claims against me roughly six months ago. And with my answer and counterclaims, it appears that my claims mirror

63

those of my father in many or most ways. Thus my discovery requests are legitimate and require full disclosure and compliance with applicable rules 5) squander close to 120 days since the statue conference in the Fall of 2005 – requested ostensibly to conduct discovery – with no discovery propounded by Impulse to 3rd parties. The notion that Impulse's reason for not propounding discovery during this period of time was due to any concern for 3rd party defendants is ludicrous in light of mean-spirited direct and indirect attacks on 3rd parties.

Third Party Defendant moves the Court to Compel (discovery) compliance and for Sanctions against Third Party Plaintiff as its responses to Third Party Defendant's Interrogatories and Request for Production of Documents are evasive, incomplete, and non-responsive. These documents were placed in US Mail on or about January 23, 2006. Impulse has also failed to make the required Rule 26 disclosures to the undersigned.

## Interrogatories & Requests for Production

Impulse's response is replete with objections due to relevancy, privilege, undue burden, etc.

Third party Defendant moves the Court to award Sanctions per FRCP 37(a)(4) in an amount equal to or greater than the Sanctions demanded by Impulse of Plaintiff. Or, in the alternative, simply require/order compliance with the rules.

64

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Jonathan K. Gordon, Pro Se

9804 Buckingham Drive

Pasco, WA 99301

509-210-1069

EXECUTED this 20th day of March, 2006.

_____ P DA

## Certificate of Service

I, hereby, certify that on March 20, 2006, I filed this motion with this Court. I have served Bob Siegel, Peter J. Glantz, Sean A. Moynihan, Floyd E. Ivey, Bonnie Gordon, James S. Gordon III, Jamila Gordon, Emily Abbey, and Robert Pritchett by other means.

_____ P DA

65

1

2

3

4

5

6

7

8

9

10

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 2 0 2006

JAMES R. LARSEN, CLERK
_____ DEPUTY
RICHLAND, WASHINGTON

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN

DISTRICT OF WASHINGTON AT RICHLAND

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

James S. Gordon, Jr., Plaintiff,

vs.

Impulse Marketing Group, Inc.,

Defendant

Impulse Marketing Group, Inc.,

Third-Party Plaintiff,

v.

James S. Gordon III, Third-Party

Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: CV-04-5125-FVS

MOTION TO COMPEL AND FOR
SANCTIONS & DECLARATION
RE: DISCOVERY

TO: Clerk of the Court

AND TO: Floyd E. Ivey, Attorney for Third-Party Plaintiff

# Introduction

I am neither Solomon nor an attorney nor a judge. I do not know the proper procedure for overcoming the impasse in terms of conferring with Impulse regarding this case as Mr. Ivey informs us that he will not contact my father, the Plaintiff, in this matter. On the one hand, Mr. Ivey had an exchange with my mother, Bonnie Gordon, via email and phone regarding discovery. And, on the other hand, those "communications" did not alter the outcome of the process, i.e. Impulse still failed to produce answers to the questions asked or produce documents that should have accompanied the discovery request.

In light of my recently filed answer and counterclaims against Impulse, all requests Impulse deemed irrelevant are unequivocally relevant and demand full disclosure under FRCP 37 (a)(2) (3).

It is, at best, disingenuous for Impulse to 1) complain that it is not receiving adequate discovery by Plaintiff who has provided two detailed WORD (1,989 pages) documents (now Bates stamped) with annotations denoting errors and omissions to Impulse – I know this process well because I helped him for months to do the analyses of thousands of emails  2) invoke a rule regarding conferring with opponent before filing and then refuse to comply with discovery in any meaningful way – an attempt to have it both ways – benefiting from an impasse Impulse is a party to creating 3) threaten sanctions from 3rd parties for failing to obey a rule, which Impulse thwarts by denying me required inputs to my self-defense. 4) allege that I along with other 3rd parties are

67

1   propounding questions and production requests as if for my father.

2   However, I have considered filing a counter suit against Impulse since

3   its initial false claims against me roughly six months ago. And with my

4   answer and counterclaims, it appears that my claims mirror those of my

5   father in many or most ways. Thus my discovery requests are legitimate

6   and require full disclosure and compliance with applicable rules 5)

7   squander close to 120 days since the status conference in the Fall of

8   2005 – requested ostensibly to conduct discovery – with no discovery

9   propounded by Impulse to 3rd parties. The notion that Impulse's reason

10  for not propounding discovery during this period of time was due to any

11  concern for 3rd party defendants is ludicrous in light of mean-spirited

    direct and indirect attacks on 3rd parties.

12

13  Third Party Defendant moves the Court for Sanctions and to Compel

14  Third Party Plaintiff's Responses to Third Party Defendant's

15  Interrogatories and Request for Production of Documents. These

16  documents were placed in US Mail on or about January 23, 2006. I am

17  the only 3rd party defendant to my knowledge who did not automatically

18  extend a two week deadline for receipt of discovery. That fact did not

19  change Impulse's output as it is virtually identical to other 3rd parties in

20  terms of being evasive, incomplete, and non-responsive (including the

21  untitled, undated, and "author-less" spreadsheet, which is useless).

22  With the additional time, Impulse still failed to meet its burden under

23  FRCP 37 (a)(2) (3)(4). Impulse has also failed to make the required Rule

    26 disclosures to the undersigned.

24

25

68

## Interrogatories & Requests for Production

Impulse has apparently blended or mixed up the responses between James S. Gordon III and Jonathan K. Gordon as captions do not match content.

Third party Defendant asks the Court to award Sanctions per FRCP 37(a)(4) in an amount equal to or greater than the Sanctions demanded by Impulse of Plaintiff. Or, in the alternative, simply require/order compliance with the rules.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

James S. Gordon III, Pro Se

9804 Buckingham Drive

Pasco, WA 99301

509-210-1069

EXECUTED this 20th day of March, 2006.

_____

### Certificate of Service

I, hereby, certify that on March 20, 2006, I filed this motion with this Court. I have served Bob Siegel, Peter J. Glantz, Sean A. Moynihan, Floyd E. Ivey, Bonnie Gordon, Jonathan Gordon, Jamila Gordon, Emily Abbey, and Robert Pritchett by other means.

_____

