```
                                        FILED IN THE
                                      U.S. DISTRICT COURT
                                  EASTERN DISTRICT OF WASHINGTON

                                       APR 03 2006

                                   JAMES R. LARSEN, CLERK
                                   _____DEPUTY
                                      RICHLAND, WASHINGTON
```

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT

OF WASHINGTON AT RICHLAND

| | |
|---|---|
| James S. Gordon, Jr., Plaintiff, | Case No.: CV-04-5125-FVS |
| vs. | RESPONSE TO IMPULSE'S MOTION TO DISMISS THIRD PARTY COUNTERCLAIMS |
| Impulse Marketing Group, Inc., | |
| Defendant | |
| | |
| Impulse Marketing Group, Inc., Third-Party Plaintiff, | |
| v. | |
| James S. Gordon III, Third-Party Defendant | |

TO: Clerk of the Court

AND TO: Floyd E. Ivey, Attorney for Third-Party Plaintiff

AND TO: Peter J. Glantz and Sean A. Moynihan

### Prefacing Statement

On occasion, I have been sent legal correspondence to addresses, which are not my address of record with this Court. **Exhibit 1** The effect of this "mistake" is that

1


documents arrive late or very close to deadlines. Because this behavior has happened multiple times, I wish to register my objection/complaint with this Court.

## INTRODUCTION

The undersigned third party defendant has included evidence in prior filings with this Court that Impulse via its communication with Commonwealth Marketing Group, Inc. of PA (CMG) knew that it was not to have commercial contact with Plaintiff's domain, "gordonworks.com" (wherein I had an email address bearing my name). On or about October, 21, 2003, Impulse's Kenneth Adamson wrote to Jacques Joseph of CMG, "this recipient is in a file of blocked and/or suppressed recipients". My answer and the subsequent affidavit in support are replete with other Impulse and CMG communications, which further corroborate this statement by Mr. Adamson.

Impulse's entire defense is based on the now apparent lie that third party defendants somehow conspired against it – when it was Impulse that failed to follow its own internal procedures, memoranda, and orders from the principal which hired it to stop sending email to "gordonworks.com".

Third party defendant has exerted as a great deal of effort, time, and expense in the defense of Impulse's SLAPP suit. Impulse's causes of action are entirely baseless. Even if one assumes that each claim was valid, all "bets were off" by 10/21/03 as admitted by Impulse's Ken Adamson in an email to CMG. Each email after that date was sent in violation of RCW 10.14, Washington State's Anti-Harassment statute. As recently as 3/22/03, Impulse sent me spam - unwanted and illegal communications, communications which have no commercial purpose, except to harass, annoy and intimidate me. **Exhibit 2** There is no sound basis for sending me

spam two years and five months after Impulse claimed no more spam would be sent to me. Impulse has also continued to usurp my identity and spam me at my new domain. This new transgression by Impulse is in violation of Can-Spam along with RCW 19.190, 19.86, etc. **Exhibit 3**

### Response to Argument - I

The reference to a civil not a criminal matter was, in fact, a reference to the above captioned case. This case has morphed into a criminal case in terms of third party defendant's causes of action as per RCW 10.14, RCW 19.170, RCW 9.35. It is my belief/understanding that each of these claims falls under the criminal code of Washington State. It is further my belief that I can prove each assertion (actually Impulse proves each assertion by its errors and omissions).

For example, the person who pressed the send button (along with the person or persons which authorized the same) may both be guilty of violations of RCW 10.14, because that send button was pressed or ordered to be pressed by Impulse, Impulse benefited financially from the pressing of the button, and Impulse knew that no messages were to be sent to "gordonworks.com". Exhibits provided by third party defendant in the answer, claims and affidavit/declaration attest to this knowledge – Impulse's subsequent behaviors violated RCW 10.14, Impulse's Jeff Goldstein, Phillip Huston and Kenneth Adamson are jointly and severally liable for multiple and continual violations.

Impulse asserts in its "Second Amended Complaint" (document 185), Nos. 12 and 60, that "third party defendants received free products". This assertion is a lie. But it is more interesting as the truth, because it belies Impulse's assertion that false

3

profiles were provided by third party defendants. How could a third party defendant receive free products at false addresses and with false names?

Impulse admits in No.1 of its second amended complaint (document 185), "Impulse…collects personally identifiable information from individuals…". That personally identifiable information includes social security numbers and dates of birth – fodder for identity theft. Impulse also admits in Nos. 3 and 4 that it collects these data for marketing purposes as substantial revenue ensues. This practice of buying and selling personally identifying information for profit has and is being done in violation of RCW 9.35 et seq. The foregoing violation of criminal statutes of Washington State supports my belief that Impulse is engaged in criminal conspiracies to violate numerous laws. Because these violations take place across state lines and internationally, I believe that these violations are federal crimes.

### Response to Argument - II

**Exhibit 2/3** and the hundreds of emails from Impulse since the inception of this lawsuit in November 2004, support the basis of my argument regarding 18 USC 1037. My dad is the owner of the Omni Innovations, LLC, which in turn owns and operates an Interactive Access Service and I am a client on this service. I have also helped my dad to research and record violations of law by spammers such as Impulse and its agents. In this role, I have knowledge of Impulse's continual violations of state and federal law as well as other details of this litigation. That includes personal knowledge of Impulse's violations of laws as it pertains to our server's clients – including other third party defendants except Robert Pritchett (he did not have an opt-in address at "gordonworks.com"). And it is this knowledge, which leads me to believe that my claim is valid.

Expert witnesses have begun to analyze Plaintiff and third party defendant's emails – my assertion of violations of RCW 19.190 and Can-Spam has been corroborated by these expert witnesses.

**Exhibit 2** was sent via illegal relaying through computers which are on block lists – (highlighted in this exhibit). Block lists represent attempts by organizations to prevent the receipt of email from known spammers such as Impulse. In **Exhibit 2**, the spammer hijacked the computer or otherwise compromised it. The "66.59.94.15" IP (Internet Protocol) in this email belongs to an entity, which has falsely registered itself as either "Chewy Inc" or "Premium Products Inc" – both companies are "fakes" (or unregistered to do business in NY) as each is absent from New York State's registry of corporations. False domain registrations are among the illegal activities of Impulse. This is but one of hundreds (thousands) of email from Impulse that is sent in violation of the referenced statute(s). I trust this one of many examples meets the heightened pleading requirements of the referenced Rule 9 (b).

### Response to Argument – III

Impulse was so anxious to crush the opposition in this lawsuit that it sued all the prospective witnesses as provided by Plaintiff. This SLAPP suit included Richland Police Officer, Lew Reed. Impulse later dropped the lawsuit against Officer Reed.

CMG mentions in correspondence to Impulse by CEO, Robert Kane that a Washington State court ordered him to not send email to "gordonworks.com". That letter dated 2/9/04 was previously entered into evidence via sworn statements by me. Impulse was well aware of Plaintiff's complaints to government agencies. This is a prima facie violation of RCW 4.25 et seq.

### Response to Argument - IV

Impulse has admitted to collecting personally identifiable information in its second amended complaint, Nos. 3-4. Impulse admits to obtaining email addresses ostensibly for marketing purposes, i.e buying and selling these email addresses and profiles for profit. Impulse either perpetrates or abets fraud by promising prizes and not delivering the prizes apparently in order to buy and sell personally identifying information in violation of this statute.

Impulse then lied to this Court by claiming that it delivered prizes to third party defendants at their allegedly "fraudulent" profiles, i.e. addresses (Impulse's second amended complaint, Nos. 12 and 60).

It is my limited understanding of the law that a federal judge has wide discretion in terms of hearing state matters and deciding same. That is why I have submitted this claim to this Court.

Impulse has failed to answer discovery, which could name the actual parties who are liable under each of the criminal statutes cited in my answer and counterclaims. I believe the withholding of this information is an activity that abets the same criminal violations above and protects the "guilty" parties.

### Response to Argument – V

Impulse has engaged in a course of conduct since 10/21/03, which includes a series of acts over a period of time, however short, evidencing a continuity of purpose. "Course of conduct" includes, in addition to any other form of communication, contact, or conduct, the sending of **an electronic communication** [emphasis added] – RCW 10.14.020(2). RCW 10.14.030, 1-6, outlines a six-prong test to determine if the communication between Impulse and me serves any legitimate

6

purpose. The law states that in determining whether the course of conduct serves any legitimate or lawful purpose, the court should consider whether:

> (1) Any current contact between the parties was initiated by the respondent only or was initiated by both parties; (2) The respondent has been given clear notice that all further contact with the petitioner is unwanted; (3) The respondent's course of conduct appears designed to alarm, annoy, or harass the petitioner; (4) The respondent is acting pursuant to any statutory authority, including but not limited to acts which are reasonably necessary to: (a) Protect property or liberty interests; (b) Enforce the law; or (c) Meet specific statutory duties or requirements; (5) The respondent's course of conduct has the purpose or effect of unreasonably interfering with the petitioner's privacy or the purpose or effect of creating an intimidating, hostile, or offensive living environment for the petitioner; (6) Contact by the respondent with the petitioner or the petitioner's family has been limited in any manner by any previous court order.

Impulse's behavior in terms of the foregoing statute serves no purpose other than to harass and annoy me as it was given clear notice to stop.

### Response to Argument - VI

The undersigned has already provided Impulse with an actual email (Exhibit 4a of my affidavit in support of the answer and counterclaims) which was sent by Impulse or its unnamed marketing partner multiple times. This email subject line stated that I had already won a prize. Such a statement is clearly an inducement to read the email and visit a web site to claim the prize. The subsequent failure of the web site owner and (admitted) marketing partner of Impulse is a prima facie violation of RCW 19.170. Further, the required disclosures of this statute were not supplied by the spammer, web site owner, and/or Impulse - another instance of a violation of this statute. The free prize was not free as it required the recipient to participate in or buy another related service without disclosing same – a violation as well. The variety of illegal aliases used by Impulse is discussed again, below.

7

## Response to Argument - VII

The claim for vicarious liability attaches to the actions of agents of Impulse who, on the one hand, are purported to operate independently and, on the other hand, serve as marketing partners bestowing or conveying standing to Impulse in regards to its specious claims against each third party defendant. Impulse's arguments regarding me allegedly supplying it with false information at a web site belonging to unnamed marketing partner(s) [a benefit] coupled with the distancing of itself from the claims by me and Plaintiff [a liability] are evidence of its desire to reap the benefits of agency without the liabilities. Impulse and/or agents acting at its behest defrauded me, stole my identity, and continue to harass me via email.

## Response to Argument - VIII

Exhibit 5 from my affidavit referenced above is a list of scores of aliases (taken from another list of over 500 aliases) used by Impulse or the unnamed marketing partner for which vicarious liability attaches as a legal concept (apart from real estate) in terms of principal-agent law. There is no valid commercial purpose for obfuscating the identity of the sender of an email. Impulse has done this hundreds of times, directly or through its agents. Obfuscation of the origin of an email is a prima facie violation of RCW 19.190, RCW 19.86, and Can-Spam. This criminal impersonation via aliases aided Impulse's scheme to illegally obtain personally identifying information via fraudulent devices, i.e. ads for non-existent prizes.

## Response to Argument - IX

In light of Impulse's clarification of this point of law, I stipulate that this "claim" should, in fact, be an affirmative defense.

8

**Response to Argument - X**

This may be the easiest claim to prove to a jury as Impulse knew as early as September and October 2003, that "gordonworks.com" was to get no more email ads. From that point forward, it carelessly, callously, maliciously, and/or fraudulently lambasted me in its false representations to this Court and to all who read these proceedings, that I was/am a criminal co-conspirator with Plaintiff.

Impulse's foreknowledge of its obligation to avoid sending the undersigned email and its subsequent lies to cover its misdeeds is in fact fraudulent and/or perjury. Impulse's mischaracterizations of me as a criminal co-conspirators (perpetrating fraud, deceit, malice and the like) is being posted on web sites and read by people, internationally – and constitutes a violation of the libel statute. **Exhibit 4** is an actual web site's URL – based in the United Kingdom, which discusses this case – the site has a link to another site (in California) with documents from this case --- http://www.spamhaus.org/rokso/evidence.lasso?rokso_id=ROK5431

**Response to Argument - XI**

The pattern of violating criminal statutes has been established. Impulse and/or its agents email advertisements for counterfeit drugs, "unlabelled" pornography, pirated software, securities schemes, and mortgage scams to obtain personally identifiable information for profit. Impulse has contracted with Mr. Jeffrey Peters, a felon on parole in Florida for grand larceny and drug offenses to send email on its behalf. It has also contracted with Mr. Scott Richter of Colorado who was successfully sued by New York State and Microsoft for illegal spamming. It is also contracting with an alleged porn spammer from Canada, Azoogle.

**Response to Argument - XII**

I withdraw this counterclaim.

9

### Response to Argument - XIII

**Exhibit 2** contains highlights of actual violations of the relevant statutes. I am in possession of many illegal emails from Impulse. The transmission path of this email and other email obfuscate the sender among other violations.

### Response to Argument - XIV

Violations of RCW 19.190 are per se violations of Washington State's Consumer Protection Act – see RCW 19.190.030 and RCW 19.86.020. **Exhibit 2** is an example of a statutory violation, which is delineated (highlighted) with specificity.

### Response to Argument - XV

My claim for an injunction is due to the ongoing buying and selling of my identity by Impulse and its harassment of me. These behaviors can have serious financial and personal impact on me.

Under a separate motion for injunction, I have moved this Court to enjoin Impulse from sending me additional email as in **Exhibit 2**. This email was sent to me six months after Impulse filed suit against me. Impulse also sent me email in October, November and December of 2005. Unless this Court intervenes, Impulse will continue to harass me and benefit from the buying and selling of my identity.

### Conclusion

Sanctions are not in order, because behind each of my counterclaims is a good-faith belief and typically the documentation as well to support that counterclaim. Each party has a right to its own defense. As Impulse has knowingly sued pro se defendants without cause, it should not be rewarded for having an attorney(s) prepared its filing with this Court. I believe that I have properly pled and

introduced evidence that indicates that I have a good-faith belief that I have been wronged by Impulse – civilly and criminally.

The undersigned third party defendant requests that this Court deny Impulse's request for dismissal of my counterclaims.

Upon further investigation, the undersigned may amend its counterclaims to include Rule 11 violations by Impulse as the claims which it has set before this Court have disintegrated in the face of documents between CMG and Impulse demonstrating its knowledge of third party defendant's desire not to receive email and its subsequent fraudulent cover story to deflect its culpability in a criminal scheme against me and others.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

James S. Gordon III
9804 Buckingham Drive
Pasco, WA 99301
509-210-1069

EXECUTED this 3rd day of April, 2006

_____ POA
Certificate of Service

I, hereby, certify that on April 3, 2006, I filed this affidavit with this Court. I have served Bob Siegel, Peter J. Glantz, Sean A. Moynihan, Floyd E. Ivey, Jamila Gordon, Bonnie Gordon, Jonathan Gordon, Emily Abbey, and Robert Pritchett by other means.

_____ POA

11



```
X-Persona: <spam>
Return-Path: <bounce-sxbxnbsjlhcox@banddly.com>
Delivered-To: 7-jay@gordonworks.com
Received: (qmail 16994 invoked from network); 22 Mar 2006 03:24:51 -0600
Received: from mail1.banddly.com (66.59.94.13)
  by clrobin.com with SMTP; 22 Mar 2006 03:24:49 -0600
Message-ID: <18655218.1143019414944.JavaMail.root@banddly.com>
Date: Wed, 22 Mar 2006 03:23:34 -0600 (CST)
From: Free Card Search <card@banddly.com>
Reply-To: Free Card Search <r-949146-35879@banddly.com>
To: "jay@gordonworks.com" <jay@gordonworks.com>
Subject: Your New Credit Line Has Been Approved Please Activate
Mime-Version: 1.0
Content-Type: multipart/alternative;
    boundary="----=_Part_68444_19843883.1143019414941"
X-CC: mkkksiulfuwlxlwfvislvlvs kkwkukluswnfqik lfvixquxsv
X-Spam-Checker-Version: SpamAssassin 2.63 (2004-01-11) on gordonworks.com
X-Spam-Level: *****************
X-Spam-Status: No, hits=17.3 required=999.0 tests=ADDR_FREE,BAD_CREDIT,
    BAYES_99,BEEN_TURNED_DOWN,COMPLETELY_FREE,FOR_FREE,
    HTML_IMAGE_RATIO_04,HTML_MESSAGE,HTML_TITLE_UNTITLED,NO_OBLIGATION,
    RCVD_IN_BL_SPAMCOP_NET,RCVD_IN_SBL,TO_ADDRESS_EQ_REAL autolearn=spam
    version=2.63
```



To no longer receive these messages, please send a blank emaill here:
unsub-xiaibarmecwki@banddly.com
OR Send a postal mail to: Premium Products, 301 E 47th St. New York, NY 10017

```
X-Persona: <Temone>
Return-Path: <ret@netblueedge.com>
Delivered-To: 10-temon@jaycelia.com
Received: (qmail 7141 invoked from network); 19 Mar 2006 21:05:52 -0600
Received: from netblueedge.com (202.71.103.198)
  by gordonworks.com with SMTP; 19 Mar 2006 21:05:51 -0600
To: temon@jaycelia.com
Date: Mon, 20 Mar 2006 11:06:05 00800
Message-ID: <1142823965.6486@netblueedge.com>
X-Userid: temon@jaycelia.com
X-ID: tz165528
X-Recipient: temon@jaycelia.com
X-netblueedge.com-MsgID: tz165528-list1
Subject: *****SPAM***** How many Credit Cards can you get?
From: "FreeCardSearch" <return@netblueedge.com>
MIME-Version: 1.0
Content-Type: text/plain; charset="iso-8859-1"
X-Spam-Flag: YES
X-Spam-Checker-Version: SpamAssassin 2.63 (2004-01-11) on gordonworks.com
X-Spam-Level: *******
X-Spam-Status: Yes, hits=7.3 required=7.0 tests=ADDR_FREE,
    DATE_IN_FUTURE_06_12,TRACKER_ID autolearn=no version=2.63
X-Spam-Report:
    * 1.8 ADDR_FREE From Address contains FREE
    * 3.5 TRACKER_ID BODY: Incorporates a tracking ID number
    * 1.9 DATE_IN_FUTURE_06_12 Date: is 6 to 12 hours after Received: date
```

---------------------------------------------------------
This is an Advertisement - Removal and other important info regarding this ad can be found below
---------------------------------------------------------

Search our extensive database to find the banks that want to give you credit. It's Free and you are not obligated in any way. How many cards do you qualify for? Search Now and find out!
http://netblueedge.com/t/c/497/list1/tz165528.html

Is your wallet a little bare? Need credit But been turned away? Tired of dinging your credit to find a Card. Search to find the banks that want to give you credit.
http://netblueedge.com/t/c/497/list1/tz165528.html

How much would you pay for a list of banks that want to give you credit? That is too much! Search our database to find out, It's Free and you are not obligated in any way.
http://netblueedge.com/t/c/497/list1/tz165528.html


---------------------------------------------------------------------
Free Card Search c/o Impulse Marketing Group 1100 Hammond Drive NE Suite 410A - 202 Atlanta, Georgia 30328

==================================================================
At Blue Edge Deals, we value your privacy. This Advertisement is sent to you because you have requested to receive communications from us when you registered with us or one of our partners.

If you wish to be completely AND permanently deleted from Blue Edge Deals database you can Unsubscribe by visiting this link:

http://netblueedge.com/index.php?l=list1&e=temon@jaycelia.com

Your removal request will be honored automatically.

You can also send a postal request to: Blue Edge Deals, 243 5th Avenue Suite 127 New York, NY 10016 tz165528, We apologize for any inconvenience

\*\*\* Blue Edge Deals is a mailing service and does not endorse any products and/or services offered herein and are not responsible for third party offers, services or products and makes no representations or warranties regarding them.

We are federally compliant with the CAN-SPAM ACT of 2003

This message was sent to: temon@jaycelia.com
X-netblueedge.com-Recipient: temon@jaycelia.com
X-netblueedge.com-Userid: list1

xxxxxxxxxxxxxxxxtz165528xxxxxxxxxxxxxxxxxxxxlist1xxxxxxxxxxxxxx

Case 2:04-cv-05125-FVS   Document 330   Filed 04/03/2006   Exhibit 4

# SPAMHAUS

THE SPAMHAUS PROJECT

| Spamhaus | SBL | XBL | ROKSO |

Home | About ROKSO | ROKSO FAQs | Advanced Search        *Register Of Known Spam Operations*

[Search]

## ROKSO

### Jeffrey P Goldstein / Gregory Greenstein - emailhello.com / impulse marketing

SBL Listings
| Index

Country: **United States**   State: **Georgia**

**ROK1370 - Main Info**                                                    GO

**LEGAL: Spammers sued, counter with an ugly SLAPP countersuit**           **ROK5431**

When caught spamming in violation of the law, spammers seem to do any of several things: Pay up, run and hide, or try and fight back by using underhanded tactics. Since laws against perjury before the courts in the USA are seldom, if ever, enforced, most spammer suits, and in this case, countersuits, seem to be based on the idea popularized by Joseph Gobbels, the Nazi Germany Minister of Propaganda. Herr Gobbels came up with the "Big Lie:" Tell a big enough falsehood, and many times people will swallow it.

In their response to the plaintiff's complaint, the spamming defendants would have made the Propaganda Minister proud. To those who are familiar with what Impulse Marketing Group has done over the years, reading this response is actually quite funny.

The SLAPP ( http://www.thefirstamendment.org/antislappresourcecenter.html#What%20are%20slapps ) nature of the countersuit should prove interesting, as the state (Washington) where the plaintif located had enacted some of the first ( http://www.casp.net/statewa.html ) anti-SLAPP laws ( http://www.casp.net/wa-stat.html ) in the USA.

▽ **Related URLs**
PDF files of legal documents in Gordon v. IMG action

The address of this ROKSO record is: http://www.spamhaus.org/rokso/evidence.lasso?rokso_id=ROK5431

The above consists of information in the public domain. The Spamhaus Project makes every effort to avoid errors in submissions to the database, and will correct any errors, but accepts no responsibility or liability for any errors, or liability for any loss or damage, consequential or otherwise, incurred in reliance on the material in these pages. The information on this site is for information purposes only and is not intended as legal advice of any kind.

THE SPAMHAUS PROJECT

   

HOME    SBL    ROKSO