UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JAMES S. GORDON, JR., an individual
residing in Benton County, Washington,

           Plaintiff,

        v.

IMPULSE MARKETING GROUP, INC.,a Nevada
Corporation,

           Defendant.

No. CV-04-5125-FVS

**ORDER**

IMPULSE MARKETING GROUP, INC.,

           Third-Party Plaintiff,

        v.

BONNIE GORDON, JAMES S. GORDON, III,
JONATHAN GORDON, JAMILA GORDON, ROBERT
PRITCHETT and EMILY ABBEY,

           Third-Party Defendants.

   **BEFORE THE COURT** is Impulse Marketing's Motion to Compel and

Motion for Sanctions (Ct. Rec. 235); Motion to Compel and Request for

Sanctions brought by Third-Party Defendants James Gordon, III, (Ct.

Rec. 298), Jonathan Gordon (Ct. Rec. 300), Bonnie Gordon (Ct. Rec.

256), Robert Pritchett (Ct. Rec. 259); Amended Motion to Compel and

Request for Sanctions brought by Bonnie Gordon (Ct. Rec. 274), and

Jamila Gordon (Ct. Rec. 270); Defendant's Motion to Strike portions

ORDER - 1

Dockets.Justia.com

1  of the declarations the Third-Party Defendants submitted in support

2  of their motions.  (Ct. Rec. 325).

3      Third-Party Plaintiff Impulse Marketing ("Impulse Marketing") is

4  represented by Floyd Ivey, Sean Moynihan, and Peter Glantz.  Third-

5  Party Defendants are proceeding *pro se*.

6      ***Motions to Disqualify Counsel***

7      Although the motions brought by Third-Party Defendants Bonnie

8  and Jamila Gordon are captioned as motions to compel, these motions

9  also request the Court disqualify Impulse Marketing's attorney Floyd

10 Ivey.  Bonnie and Jamila Gordon are the wife and daughter,

11 respectively, of the Plaintiff, James Gordon, Jr.  Both Bonnie and

12 Jamila Gordon allege Mr. Ivey previously represented the Plaintiff in

13 legal matters and that this previous representation amounts to a

14 conflict of interest.  Thus, they contend Mr. Ivey should be

15 disqualified from representing Impulse Marketing because such

16 representation places Mr. Ivey in conflict with the interests of

17 Plaintiff.

18      1.  **Standing**

19      Before the Court addresses whether Mr. Ivey's representation of

20 Impulse Marketing presents a conflict of interest, the Court must

21 address the threshold question of standing.  Standing is a

22 jurisdictional matter that goes to the power of a federal court to

23 decide an issue placed before it.  The standing doctrine "embraces

24 several judicially self-imposed limits on the exercise of federal

25 jurisdiction, such as the general prohibition on a litigant's raising

26 another person's legal rights...."  *Allen v. Wright*, 468 U.S. 737,

ORDER - 2

750-51, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).  Neither the United States Supreme Court nor the Ninth Circuit has addressed the particular issue of whether the standing doctrine bars a nonclient party from moving to disqualify the opposing party's counsel on the grounds of a conflict of interest.  *See FMC Techs., Inc. v. Edwards*, -- F. Supp. 2d --, 2006 WL 624454, *2 (W.D. Wash. 2006).  There is a split of authority on this issue.  *Id.* (citing *Colyer v. Smith*, 50 F.Supp.2d 966, 969 (C.D. Cal. 1999)).

In *Colyer*, the district court noted that under the majority view on this issue "only a current or former client of an attorney has standing to complain of that attorney's representation of interests adverse to that current or former client."  *Colyer*, 50 F.Supp.2d at 969 (citing *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976) (stating that "courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification.")).  However, the *Colyer* court acknowledged the possibility of nonclient standing where an "unethical change of sides was manifest and glaring" or an ethical violation was "open and obvious," confronting the court with a "plain duty to act."  *Colyer*, 50 F.Supp.2d at 969 (citing *Yarn Processing*, 530 F.3d at 89).  Similarly, the minority view is that a nonclient litigant may bring a motion to disqualify.  *See Colyer*, 50 F.Supp.2d at 970-71 (citing *Kevlik v. Goldstein*, 724 F.2d 844 (1st Cir. 1984)).  "Like the exception to the majority view, the minority view relies in part on the 'court's well recognized power to control the conduct of the attorneys practicing before it.'" *FMC Techs., Inc.*, 2006 WL

624454,*2 (citing *Colyer*, 50 F.Supp.2d at 970).

In addressing the standing question, the *Colyer* court held that a nonclient litigant "must establish a personal stake in the motion to disqualify sufficient to satisfy the irreducible constitutional minimum of Article III." *FMC Techs., Inc.*, 2006 WL 624454, *3 (citing *Colyer*, 50 F.Supp.2d at 971). Further, the *Colyer* court noted that "where an ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims, she may have the constitutional standing needed to bring a motion to disqualify based on a third-party conflict of interest or other ethical violation." *FMC Techs., Inc.*, 2006 WL 624454, *3. Like the court in *Colyer*, the district court in *FMC Technologies, Inc.* adopted the rule that "nonclient litigants may, under proper circumstances, bring motions to disqualify counsel based on conflicts of interest." 2006 WL 624454, *3.

Although the Ninth Circuit has not decided the issue before the Court, the question was presented in *Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998). In *Kasza*, the court noted that as "a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *Kasza*, 133 F.3d at 1171 (quoting *United States v. Rogers*, 9 F.3d 1025, 1031 (2d Cir. 1983) (quoting in turn *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976))). However, the *Kasza* court did not decide the issue because it held there was no basis for disqualification even if the court assumed the plaintiff

ORDER - 4

had standing.  133 F.3d at 1171.

In the present case, without making a final determination on whether it should adopt the majority or minority view, the Court is mindful of the outcome under each view.  If the Court adopts the majority view, Third-Party Defendants Bonnie and Jamila Gordon do not have standing to move to disqualify Mr. Ivey.  If the Court adopts the minority view, Bonnie and Jamila Gordon, under the proper circumstances, have standing to bring a motion to disqualify Mr. Ivey based on an alleged conflict of interest between Plaintiff and Mr. Ivey.  Under the minority view, Bonnie and Jamila Gordon must show "the ethical conflict at issue here sufficiently impacts the 'just and lawful determination' of their claims and that the conflict involved is so intertwined with the current litigation that this Court must consider [the] motion to disqualify[.]" *FMC Techs., Inc.*, 2006 WL 624454, *3.  Assuming, without deciding, that Bonnie and Jamila have standing to bring this motion to disqualify, the Court proceeds to review the merits of the motion.

**2.  <u>Disqualification of Floyd Ivey</u>**

When faced with an allegation that an attorney's representation presents a conflict of interest, it is "the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar." *Gas-A-Tron of Ariz. v. Union Oil Co. of Calif.*, 534 F.2d 1322, 1324 (9th Cir. 1976).  The Local Rules for the Eastern District of Washington do not specifically adopt the provisions of the Washington Rules of Professional Conduct as ethical rules governing the practice of

ORDER - 5

1   lawyers before the courts in this district.  However, the Local Rules

2   grant the Court authority to discipline any attorney who violates the

3   Washington Rules of Professional Conduct.[1]  Thus, the Washington

4   Rules of Professional Conduct shall govern the Court's

5   disqualification analysis.

6        Here, Bonnie Gordon alleges Mr. Ivey participated in numerous

7   conversations with the Plaintiff regarding spamming, including

8   conversation related to Impulse Marketing.  Further, she points to

9   several emails in which Mr. Ivey and the Plaintiff communicated about

10  the possibility of Mr. Ivey assisting the Plaintiff in filing

11  lawsuits for violations of Washington's anti-spam statute.  Mr. Ivey

12  acknowledges he provided legal services to the Plaintiff in the past,

13  but contends those services were unrelated to the pending litigation.

14  With respect to the current litigation, Mr. Ivey contends his

15  communication with the Plaintiff included an exchange of general

16  statements, but there was never any formal representation.

17       These allegations implicate Rule 1.9 of the Rules of

18  Professional Conduct, which states:

19           A lawyer who has formerly represented a client in a
         matter shall not thereafter:
20           (a) Represent another person in the same or a
         substantially related matter in which that person's
21       interests are materially adverse to the interests of the
         former client unless the former client consents in writing
22       after consultation and a full disclosure of the material
         facts; or
23

24

         [1]  *See* LR 83.3 ("This Court may impose discipline on any
25  attorney practicing before this Court, ... who engages in conduct
    violating applicable Rules of Professional Conduct of the
26  Washington State Bar, or who fails to comply with the rules or
    orders of this Court.").

ORDER - 6

        (b) Use confidences or secrets relating to the
        representation to the disadvantage of the former client,
        except as rule 1.6 would permit.

Wash. Rules of Prof'l Conduct R. 1.9 (2005).  Under Rule 1.9(a), the

significant elements include (1) whether the conflict involves a

*former client*; (2) whether the subsequent representation is

*materially adverse* to the former client; and (3) whether the matters

are *substantially related*.  *Id; see also Trone v. Smith*, 621 F.2d

994, 998 (9th Cir. 1980).

        Here, it is clear Plaintiff has not consented to Mr. Ivey's

representation of Impulse Marketing, but it is not clear whether

Plaintiff was ever a "former client" of Mr. Ivey.  Assuming, without

deciding, that Plaintiff was a former client of Mr. Ivey, Bonnie and

Jamila Gordon must also show the matters currently at issue are

substantially related to the subject matter of the former

representation.  *Sanders v. Woods*, 121 Wash.App. 593, 597-98, 89 P.3d

312 (Div. 3, 2004); *Trone*, 621 F.2d at 996 ("The relevant test for

disqualification is whether the former representation is

"substantially related" to the current representation.")  The

determination of whether the two representations are substantially

related turns on whether the lawyer was so involved in the former

representation that he can be said to have switched sides.  *Sanders*,

121 Wash.App. at 598, 89 P.3d 312.

        Here, the facts of the case reveal that on September 22, 2003,

Plaintiff sent Mr. Ivey an unsolicited email in which Plaintiff

outlined the procedural steps he had taken to reduce the spam he had

been receiving.  Plaintiff also explained in this email that he had

ORDER - 7

drafted a complaint and was "seeking an attorney to 'perfect' [his] complaint so that [he could] file it in District Court." (Ct. Rec. 283-2, at 52.). In the alternative, Plaintiff stated he "*may* want to hire an attorney to represent [him] in court." *Id.* (emphasis added). In response, Mr. Ivey said he was interested but encouraged Plaintiff to contact the Attorney General. *Id.* In response, Plaintiff forwarded Mr. Ivey a copy of an email Plaintiff previously sent to the Attorney General. In the email to the Attorney General, Plaintiff explained he had received over 12,000 unsolicited commercial email (spam) in the past month, that he had successfully identified the origin of some of those emails, and that he had sent demand letters to the senders, citing the Washington anti-spam statute. Plaintiff suggested to the Attorney General that the State of Washington "turn this proverbial lemon into lemonade--making spam a "profit center" for the State of Washington as well as other organizations within the State." (Ct. Rec. 283-2, at 56).

On September 25, 2003, Plaintiff sent another email to Mr. Ivey. (Ct. Rec. 283-2, at 57). Plaintiff explained that the amount of spam he was receiving was becoming an imposition on his business and on his personal use of the internet and that he believed Washington's anti-spam statute was designed to prevent the "abuse" he was experiencing. *Id.* Plaintiff closed his email by thanking Mr. Ivey for considering the issues. *Id.* at 58. Mr. Ivey responded by stating that his attorney services would cost $225 per hour and that he could not guarantee a solution. Mr. Ivey closed his email by stating there would be a "real budget needed ... to commence the

ORDER - 8

effort.  Please advise if you want to examine the prospect of going forward."  *Id.* at 57.

On September 30, 2003, Plaintiff sent another email to Mr. Ivey, in which Plaintiff explained that he had email documentation showing the violations he alleged and had drafted two complaints.  (Ct. Rec. 295-1, at 15).  Plaintiff asked Mr. Ivey how he would like to proceed and requested Mr. Ivey identify the proposed costs.  *Id.*  Plaintiff's next email is dated December 30, 2003.  (Ct. Rec. 295-1, at 17). From the context of that email, it appears Plaintiff chose to proceed *pro se* and filed the complaints in superior court against two companies.  In the email, Plaintiff told Mr. Ivey that a superior court had granted Plaintiff's request for temporary restraining orders against these two companies.  *Id.*  Plaintiff asked Mr. Ivey if he was still interested and in what way he envisioned assisting the Plaintiff.  *Id.*  Beyond these emails, the record does not reveal any other contact between Mr. Ivey and Plaintiff.

After reviewing these emails, the Court concludes Mr. Ivey's representation of Impulse Marketing is not substantially related to any previous representation of Plaintiff.  The emails reveal Mr. Ivey never offered any formal legal advice and never reviewed any legal pleadings for Plaintiff.  Further, it appears Plaintiff declined to examine the prospect of hiring Mr. Ivey and chose instead to proceed *pro se* with his anti-spam case.  In determining whether a conflict of interest exists, the "underlying concern is the possibility, or the appearance of the possibility, that the attorney may have received confidential information during the prior representation that would

ORDER - 9

1  be relevant to the subsequent matter in which disqualification is

2  sought." *Sanders*, 121 Wash.App. at 599, 89 P.3d 312.  Here, the

3  emails produced by Mr. Ivey show no confidential information was

4  disclosed.  Further, Bonnie and Jamila Gordon have not presented any

5  evidence providing even the appearance of the possibility that

6  confidential information was disclosed.  For these reasons, the Court

7  determines Mr. Ivey's representation of Impulse Marketing does not

8  present a conflict of interest.  Therefore, Bonnie and Jamila

9  Gordon's motions to disqualify Floyd Ivey are denied.

10       **Impulse Marketing's "Second" Motion to Compel**

11       On April 18, 2006, Impulse Marketing re-noted for hearing its

12  "First Motion to Compel."  The Court previously denied this motion to

13  compel, directing the parties to meet and confer in an attempt to

14  resolve their discovery problems.  It is not clear from the record

15  whether the parties did in fact "meet and confer" but Impulse

16  Marketing continues to argue Plaintiff is not providing adequate

17  responses to Defendant's discovery requests.  Plaintiff objects to

18  the motion to compel, arguing the alleged "deficiencies" in

19  Plaintiff's responses are actually Impulse Marketing's "improper

20  demands."  The Court determines it is appropriate and necessary to

21  refer the parties' discovery dispute to a discovery master.

22  Therefore, Impulse Marketing's motion to compel is denied and an

23  Order referring this matter to a discovery master will be

24  forthcoming.

25       **Third-Party Defendants' Motions to Compel and for Sanctions**

26       Third-Party Defendants each allege Impulse Marketing failed to

ORDER - 10

make the "required Rule 26 disclosures" and "provided evasive,

incomplete disclosure, answer, or response to discovery propounded

by" [sic] Third-Party Defendants.  In support of their motions to

compel, Third-Party Defendants provided copies of some of their

interrogatories and Impulse Marketing's answers.  In response to many

of Third-Party Defendants' interrogatories, Impulse Marketing

asserted the standard ambiguous, irrelevant and overbreadth

objections.  Because Third-Party Defendants failed to cite any legal

authority or provide any legal analysis in response to Impulse

Marketing's objections to the propounded discovery requests, it is

difficult for the Court to analyze and resolve the discovery dispute.

Thus, the Court determines it is necessary to refer the parties'

discovery dispute to a discovery master.  Therefore, Third-Party

Defendants' motions to compel are denied and an order referring this

matter to a discovery master will be forthcoming.  Accordingly,

   **IT IS HEREBY ORDERED:**

   1.  Impulse Marketing's Motion to Compel and Motion for

Sanctions (**Ct. Rec. 235**) is **DENIED.**

   2.  Motions to Compel and Request for Sanctions brought by

Third-Party Defendants James Gordon, III, (**Ct. Rec. 298**), Jonathan

Gordon (**Ct. Rec. 300**), Bonnie Gordon (**Ct. Rec. 256**), Robert Pritchett

(**Ct. Rec. 259**) are **DENIED.**

   3.  Amended Motions to Compel and Request for Sanctions brought

by Bonnie Gordon (**Ct. Rec. 274**) and Jamila Gordon (**Ct. Rec. 270**) are

**DENIED; Bonnie and Jamila Gordon's request to disqualify Floyd Ivey**

**are denied.**

ORDER - 11

4.  Defendant's Motion to Strike (**Ct. Rec. 325**) is **MOOT.**

5.  Bonnie Gordon's Motion to Expedite (**Ct. Rec. 337**) is **MOOT.**

6.  Bonnie Gordon's Motion to Strike (**Ct. Rec. 339**) is **MOOT.**

7.  Jamila Gordon's Motion to Expedite (**Ct. Rec. 342**) is **MOOT.**

8.  Jamila Gordon's Motion to Strike (**Ct. Rec. 344**) is **MOOT.**

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order and furnish copies to counsel **AND to the Third-Party Defendants who are proceeding *pro se*.**

**DATED** this 15th day of May, 2006.

                     *s/ Fred Van Sickle*
                     Fred Van Sickle
                     United States District Judge

ORDER - 12