# ACORD. CERTIFICATE OF LIABILITY INSURANCE

OP ID KD IMPUL-1

| DATE (MM/DD/YYYY) |
|---|
| 05/09/06 |

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. | | |
|---|---|---|---|
| Berger & O'Neal Insurance Grp 10425 Old Alabama Rd Conn #101 Alpharetta GA 30022 Phone:770-442-0770  Fax:770-442-0774 | | | |
| | INSURERS AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A:  Hartford Insurance Co. | | 30104 |
| Impulse Marketing Group 5887 Glenridge Drive Atlanta GA 30328 | INSURER B:  Executive Risk Indemnity | | |
| | INSURER C: | | |
| | INSURER D: | | |
| | INSURER E: | | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | | **GENERAL LIABILITY** [X] COMMERCIAL GENERAL LIABILITY [ ] CLAIMS MADE [X] OCCUR [X] Employee Benefits (claims made) GEN'L AGGREGATE LIMIT APPLIES PER: [ ] POLICY [ ] PRO-JECT [ ] LOC | 20UUNZQ7143 | 10/09/05 | 10/09/06 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000 |
| | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| A | | **AUTOMOBILE LIABILITY** [ ] ANY AUTO [ ] ALL OWNED AUTOS [ ] SCHEDULED AUTOS [X] HIRED AUTOS [X] NON-OWNED AUTOS | 20UUNZQ7143 | 10/09/05 | 10/09/06 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | **GARAGE LIABILITY** [ ] ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | | OTHER THAN   EA ACC AUTO ONLY:        AGG | $ |
| A | | **EXCESS/UMBRELLA LIABILITY** [X] OCCUR [ ] CLAIMS MADE [ ] DEDUCTIBLE [X] RETENTION  $10,000 | 20RHUZQ7229 | 10/09/05 | 10/09/06 | EACH OCCURRENCE | $5,000,000 |
| | | | | | | AGGREGATE | $5,000,000 |
| | | | | | | | $ |
| | | | | | | | $ |
| | | | | | | | $ |
| A | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | 20WEPK1005 | 10/09/05 | 10/09/06 | WC STATU-TORY LIMITS [X] OTH-ER | |
| | | | | | | E.L. EACH ACCIDENT | $500000 |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $500000 |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $500000 |
| B | | **OTHER** Errors & Ommission "claims made" | 6803-5271 | 10/09/05 | 10/09/06 | Prof Liab  $3,000,000 retention  $50,000 | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS

| CERTIFICATE HOLDER | SAMPLEC | CANCELLATION |
|---|---|---|
| SAMPLE CERTIFICATE An Original May Be Issued Upon Request | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __10__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. |
| | | AUTHORIZED REPRESENTATIVE Michael Berger, Agent |

ACORD 25 (2001/08)

© ACORD CORPORATION 1988

IMG 000001

| ACORD. EVIDENCE OF PROPERTY INSURANCE | OP ID KD | DATE (MM/DD/YY) 05/09/06 |
|---|---|---|

THIS IS EVIDENCE THAT INSURANCE AS IDENTIFIED BELOW HAS BEEN ISSUED, IS IN FORCE, AND CONVEYS ALL THE RIGHTS AND PRIVILEGES AFFORDED UNDER THE POLICY.

| PRODUCER | PHONE/FAX (A/C, No, Ext): 770-442-0770 /770-442-0774 | COMPANY |
|---|---|---|
| Berger & O'Neal Insurance Grp<br>10425 Old Alabama Rd Conn #101<br>Alpharetta GA 30022<br>Michael Berger, Agent | | Hartford Insurance Co.<br>Beth Summerford<br>50 Glenlake Parkway<br>Atlanta GA 30328-3473 |

| CODE: 20/265944master | SUB CODE: |
|---|---|

| AGENCY CUSTOMER ID #: IMPUL-1 |
|---|

| INSURED | LOAN NUMBER | POLICY NUMBER |
|---|---|---|
| Impulse Marketing Group<br>5887 Glenridge Drive<br>Atlanta GA 30328 | | 20UUNZQ7143 |

| | EFFECTIVE DATE 10/09/05 | EXPIRATION DATE 10/09/06 | CONTINUED UNTIL TERMINATED IF CHECKED ☐ |
|---|---|---|---|

THIS REPLACES PRIOR EVIDENCE DATED:

**PROPERTY INFORMATION**

LOCATION/DESCRIPTION
001

5887 Glenridge Dr., Ste 400
Atlanta GA 30328

**COVERAGE INFORMATION**

| COVERAGE/PERILS/FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| Business Property ** Blanket** | $1,350,000 | 2,500 |
| Business Income | $6,750,000 | |

**REMARKS (Including Special Conditions)**

**CANCELLATION**

THE POLICY IS SUBJECT TO THE PREMIUMS, FORMS, AND RULES IN EFFECT FOR EACH POLICY PERIOD. SHOULD THE POLICY BE TERMINATED, THE COMPANY WILL GIVE THE ADDITIONAL INTEREST IDENTIFIED BELOW ___10___ DAYS WRITTEN NOTICE, AND WILL SEND NOTIFICATION OF ANY CHANGES TO THE POLICY THAT WOULD AFFECT THAT INTEREST, IN ACCORDANCE WITH THE POLICY PROVISIONS OR AS REQUIRED BY LAW.

**ADDITIONAL INTEREST**

| NAME AND ADDRESS | | | ☐ MORTGAGEE ☐ LOSS PAYEE | ☐ ADDITIONAL INSURED |
|---|---|---|---|---|
| Sample Certificate<br>An original may be<br>issued upon request | | | LOAN # | |
| | | | AUTHORIZED REPRESENTATIVE<br><br>Michael Berger, Agent | |

ACORD 27 (3/93)                                      © ACORD CORPORATION 1993

122

| **ACORD.** | **EVIDENCE OF PROPERTY INSURANCE** OF ID KD | **DATE (MM/DD/YY)** 05/09/06 |
| | **PROPERTY SCHEDULE** | |
| Impulse Marketing Group | IMPUL-1 | PAGE 2 |

**PROPERTY INFORMATION**
LOCATION/DESCRIPTION   002

55 Marietta Street
Atlanta GA

**PROPERTY INFORMATION**
LOCATION/DESCRIPTION

**PROPERTY INFORMATION**
LOCATION/DESCRIPTION

**PROPERTY INFORMATION**
LOCATION/DESCRIPTION

**PROPERTY INFORMATION**
LOCATION/DESCRIPTION

**PROPERTY INFORMATION**
LOCATION/DESCRIPTION

**PROPERTY INFORMATION**
LOCATION/DESCRIPTION

**PROPERTY INFORMATION**
LOCATION/DESCRIPTION

ATTACH TO EVIDENCE OF PROPERTY APPLICATION

IMG 000003

123



# IMPULSE MARKETING GROUP, INC. AFFILIATE ADVERTISING

Last Updated: May 24, 2006

THIS IS A LEGAL AGREEMENT (THE "AGREEMENT") BETWEEN YOU AND IMPULSE MARKETING GROUP, INC. ("IMG"). BY ENROLLING IN THE IMG AFFILIATE ADVERTISING PROGRAM, YOU AGREE THAT YOU HAVE READ, UNDERSTAND AND AGREE TO ABIDE BY ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT AND THAT YOU AGREE TO BE LEGALLY RESPONSIBLE FOR EACH AND EVERY SUCH CONSTITUENT TERM AND CONDITION.

1. **Definitions.**
   This Agreement contains the complete terms and conditions that apply to you when you join, or attempt to join, the IMG affiliate advertising program (the "Program"). The purpose of this Agreement is to allow for the linking between your website and IMG's website(s). As used in this Agreement: "we", "us" and "our" means IMG; "Distributor" means an individual and/or legal entity approved to distribute Creatives, as defined hereinbelow, as well as the respective shareholders, directors, officers, executives, members, employees, affiliates, agents and/or representatives of the individual or legal entity; "you" means the applicant and/or Distributor; "Site" means a World Wide Web site and, depending on the context, refers either to IMG's Site or the Site that you will link to our Site; "Click" means a method that takes the Internet user, as determined by the IP address, from an authorized linked banner or text link from your Site to our Site; and "Sign Up" means an Internet user that has accessed an authorized link from your Site to our Site and successfully subscribed to (filled out correctly and accepted the terms and conditions of) one of IMG's advertising campaigns available by and through the Program (each, an "Advertising Campaign").

2. **Term of Agreement.**
   This Agreement will begin upon your receipt of an IMG generated account number following our acceptance of your Distributor application and will end when terminated by either party. IMG reserves the right to reject any application for any reason, or no reason, whatsoever. Either party may terminate this Agreement at any time, with or without cause, by giving the other party written or e-mail notice of termination. Upon termination of this Agreement by either party, you shall immediately cease your use of all Creatives and halt offering access to any and all IMG Advertising Campaigns.

3. **Creatives.**
   You will be responsible for the content, style and placement of the hyperlinks and associated banners, buttons, graphics, text links, e-mails, e-newsletters, e-zines and the like (collectively, "Creatives") available for use by Distributors. IMG either creates or modifies Creatives on behalf of IMG's advertising clients for use in Advertising Campaign (s). Unless otherwise provided for herein, you may not alter, edit, modify and/or otherwise change Creatives. ALTERING OR IN ANY OTHER WAY EMPLOYING UNAUTHORIZED ADVERTISING TECHNIQUES, SUCH AS USING A BANNER OR TEXT LINK FOR PURPOSES OF E-MAILING OR THE UNAUTHORIZED COLLECTION OR DISSEMINATION OF PERSONALLY IDENTIFIABLE INFORMATION, IS STRICTLY PROHIBITED AND WILL RESULT IN YOUR IMMEDIATE TERMINATION FROM THE PROGRAM WITHOUT COMPENSATION. At our Site, Distributors may access a complete menu of Program Creative options (hereinafter, the "Farm") to choose from. If you would like to modify or use other Creatives not appearing at the Farm, you must obtain our prior written or e-mail authorization to do so. However, you may add or delete

approved Creatives from your Site at any time without our approval. New Creatives will be posted to the Farm from time to time. It is your responsibility to ensure that you employ the most recent version of any Creatives. Notwithstanding anything contained herein to the contrary, all right, title and interest including, without limitation, all trademarks and copyrights, in any and all Creatives shall remain solely with IMG and/or the owner of such marks or text. For each Creative, you will receive no rights other than the limited, non-exclusive, non-transferable and revocable license to use the Creatives at your Site and/or in e-mail campaigns pursuant to this Agreement.

4. **License Grant.**
As a Distributor, you are granted a limited, non-exclusive, non-transferable and revocable license to access and use the Program, Creatives, Advertising Campaigns, Farm and our Site in accordance with the terms of this Agreement. IMG may terminate this license, and the Agreement, at any time for any reason, in our sole discretion. You may access our Site on one computer for your own use. Unless otherwise provided for herein, no part of the Program, any Advertising Campaign and/or our Site may be reproduced in any form or incorporated into any information retrieval system, electronic or mechanical. You may not use, copy, emulate, clone, rent, lease, sell, modify, decompile, disassemble, reverse engineer and/or transfer the Program, Creatives, Advertising Campaigns, the Farm and/or our Site, or any portion thereof. IMG reserves any and all rights not explicitly granted in this Agreement. You may not use any device, software or routine to interfere or attempt to interfere with the proper working of the Program, Advertising Campaigns and/or our Site. You may not take any action that imposes an unreasonable or disproportionately large load on IMG's infrastructure.

5. **Proprietary Rights.**
All rights, title and interest in and to any and all customers, and their associated data including, but not limited to, associated names, addresses, URLs, financial profiles and any and all other information submitted to IMG, shall be owned exclusively by IMG and/or the named individual. The terms of this Section 5 shall survive any termination of this Agreement.

6. **Site/Affiliate Responsibility.**
You will be solely responsible for developing, operating and maintaining your Site, as well as for all materials that appear on your Site. Further, you agree to indemnify, defend and hold us harmless from and against any and all claims, damages and expenses (including, without limitation, attorneys' fees) relating to the development, operation, maintenance, and content of your Site. In addition, you agree that you have no right, title or interest in or to the Creatives, even to the extent that we permit you to create and/or modify any Creatives. You also agree not to apply for any type of trademark and/or copyright registration for any of the Creatives (or any Creatives similar there to) anywhere around the world. As part of your Site responsibility, you agree that you will not engage, participate or become involved in any action that could be construed as tarnishing and/or damaging to the reputation of IMG and/or IMG's advertising client(s). Furthermore, you agree that your Site information including, but not limited to, name(s), URL, traffic counts, etc., may be used by IMG for any purpose whatsoever. You further agree to comply with all federal and state laws, including the CAN-SPAM act of 2003 and the Georgia Computer Security Act of 2005, as well as other applicable laws and to indemnify IMG from any action related to an actual or alleged violation of such laws, including attorneys' fees and costs.

You are responsible for any and all of your sub-affiliates, and their associated actions or inactions, with respect to their working with you in connection with this Program. In accordance with this obligation, you represent and warrant that all of your sub-affiliates will be apprised of the IMG Anti-Spam Policy and that they shall agree to comply with same at all times when assisting you as a Program Affiliate. IMG will attempt to target any penalties for violation of the IMG Anti-Spam Policy or any other provision of this Agreement directly against the applicable offending sub-affiliate. You agree that you will contact any such sub-affiliate immediately once a violation has been identified by IMG, and you will be responsible for and will take appropriate measures to immediately remedy such violation by the offending sub-affiliate and/or, if requested by IMG, to immediately terminate the offending sub-affiliate from working with you in connection with the Program. In the event that you fail to remedy any violation by a sub-affiliate to the satisfaction of IMG, IMG may, in its sole discretion, proceed against you with respect to the violation and/or terminate this Agreement. Further, you agree to indemnify, defend and hold IMG harmless from and against any and all claims, damages and expenses (including, without limitation, attorneys' fees) relating to the actions or inactions of your sub-affiliates.

7. **Site Type and Content.**
IMG, in its sole discretion, reserves the right not to accept into the Program, and/or to subsequently reject, any websites that contain any controversial or unacceptable content including, but not limited to, adult websites that promote pornography or sexual material of any kind. Should IMG determine, in its sole discretion, that you are in violation of this Section 7, IMG shall have the right to immediately terminate this

126

Agreement and cease all payments otherwise due to you under this Agreement. Such termination, or waiver thereof, shall in no way constitute a waiver of any other Section of this Agreement.

8. **8. Payments and Reporting.**
   IMG shall compensate you in the amounts, at the times and under the terms and conditions set forth in the payment schedule associated with each Creative ("Payments"). Payments are not payable until IMG receives the associated payment from its applicable client(s). IMG shall remit any Payments due and owing to you thirty (30) days following the end of the month in which corresponding funds are received by IMG from its client(s) (the "Pay Period"). Notwithstanding anything contained herein to the contrary, IMG shall not be obligated to make any Payment to you unless and until the aggregate amount of Payments due to you equals or exceeds twenty-five dollars ($25.00). Any earned but unpaid Payments shall carry over to the next Pay Period. IMG's reporting and statistics shall be the basis for billing and related Payments. Reports and statistics shall be finalized and available no earlier than twenty (20) days following the close of any Pay Period.

9. **Spamming and Falsification.**
   Should IMG, in its sole discretion, determine that you are guilty of "SPAMMING" (any form of e-mailing in violation of the CAN-SPAM Act of 2003, as amended from time to time ("CAN-SPAM") and/or other applicable law, rule or regulation), providing false account information, falsely increasing your number of Clicks, violating CAN-SPAM, the Georgia Computer Security Act of 2005 and/or acting or attempting to act in any false, misleading or illegal manner, IMG shall have the right to immediately terminate this Agreement and cease all payments otherwise due to you under this Agreement. Such termination, or waiver thereof, shall in no way constitute a waiver of any other Section of this Agreement.

10. **IMG Anti-Spam Policy.**
    In order to qualify to become an IMG Distributor, applicants must submit a valid "Abuse Email Address." For purposes of these Terms & Conditions, "Abuse Email Address" shall be defined as a designated Distributor email address to which IMG may forward any and all Distributor account-related quality control and/or spam related issues. By submitting your Distributor "signup" form, you have expressly agreed to all of these Terms & Conditions, as well as all applicable state and federal laws governing the transmission and content of commercial emails including, but not limited to, the CAN SPAM Act of 2003 and the Georgia Computer Security Act of 2005. The Impulse anti-spam policy is set forth in detail below:

SPAMMING IS NOT PERMITTED IN ANY MANNER WHATSOEVER BY DISTRIBUTORS. If you spam, your link to the respective IMG Advertising Campaign(s) will be immediately disabled. In order to prevent unauthorized e-mail practices, IMG has instituted this Anti-Spam Policy that sets forth the minimum standards that IMG requires its Distributors to adhere to in light of current laws, rules and regulations governing the transmission of e-mail and industry best practices. In the event that any state or federal law, rule or regulation governing the sending of e-mail communications is enacted or amended after the effective date of this Agreement, setting forth standards more restrictive than those set forth herein, the more restrictive standards contained in such enacted or amended law, rule or regulation shall apply to all Distributors in the Program. Notwithstanding anything contained herein to the contrary, e-mail transmitted pursuant to this Agreement MUST be addressed to "permission" or "opt-in" based e-mail addresses. Furthermore, every e-mail must meet the standards set forth in subsections (a) to (j) hereinbelow to prevent your account from being disabled for SPAM-related violations:

(a) Distributor shall send e-mail pursuant to this Agreement solely to recipients that have actively opted-in to receive such e-mail.

(b) Distributor shall not transmit e-mail to any e-mail address appearing on its own suppression list or the suppression list of IMG. Distributor is responsible for updating its own suppression list, on a daily basis, with e-mail addresses that appear on the regularly updated IMG suppression list. Distributor agrees to hold the IMG suppression list in trust and strictest confidence and agrees that same shall be used for the sole purpose of removing any e-mail addresses contained therein from the applicable Distributor-owned and/or controlled mailing lists or to otherwise act to suppress from the receipt of future commercial e-mail messages such constituent e-mail addresses.

(c) Distributor shall ensure that each e-mail includes: (i) Distributor's true and correct sender e-mail address and associated transmission/routing information; (ii) clear and conspicuous opt-out instructions in the body of the e-mail and, if required by applicable law, in the first line of the text; (iii) a toll-free telephone number or a valid and functional e-mail address to which a recipient may manually send complaints and/or contact for purposes of opting-out from receiving future e-mail transmissions; (iv) accurate information regarding how the recipient opted-in to receive e-mail messages; (v) Distributor's valid physical address; and (vi) any identifier and/or disclaimer IMG

12(o

requires. Distributor shall not, without IMG's prior written approval, include any redirect hyperlinks and/or frames in any e-mail. Without limiting the foregoing, in no event may Distributor forge or misrepresent e-mail header information and/or otherwise engage in false or misleading conduct.

(d) Distributor shall: (i) make adequate disclosures, as required by law, to those individuals on its e-mail list(s) regarding its privacy and security policies; (ii) respond to all complaints within one (1) business day after Distributor becomes aware of the complaint; (iii) provide IMG with a copy of every complaint, immediately upon Distributor's receipt thereof; (iv) implement any corrective action IMG may specify and require; and (v) comply with any legal and/or other requirement that IMG may reasonably request

(e) Distributor must provide in the body of every e-mail a simple, automated procedure for the recipient to opt-out from receiving subsequent e-mail transmissions. Distributor must immediately cease transmitting subsequent e-mails to any e-mail address for which Distributor receives an unsubscribe request (this process may take no longer than five (5) days to effectuate)

(f) Distributor must additionally provide a manual opt-out procedure (e.g., an e-mail address to which a message may be sent to opt-out from the receipt of future mailings) for those recipients that wish to terminate their subscription(s), but are unable or unwilling to follow the standard, automated procedures.

(g) Distributor must ensure that they employ proper list management procedures, such as the pruning of invalid and/or undeliverable e-mail addresses

(h) Distributor must take adequate steps to ensure that their e-mail lists are not used for: (i) abusive purposes, such as transmitting malicious e-mails and/or chain letters; and (ii) violating the Children's Online Privacy Protection Act ("COPPA").

(i) Distributor must not initiate the transmission of e-mail to an e-mail address appearing in its, or any other party's, suppression list.

(j) Distributor shall not use any suppression list(s) for purposes of e-mail appending in any manner, whatsoever.

(k) Distributor shall examine the terms and conditions under which third-party e-mail lists were originally compiled to ensure that all recipients appearing therein have in fact opted-in to the type of e-mail Distributor intends to transmit. Distributor shall ensure that all third-party lists used by, or on behalf of, Distributor were collected by the third-party source in accordance with the same standards contained in this IMG Anti-Spam Policy. Distributor must create a new e-mail list whenever Distributor intends to substantially change the subject matter or frequency of e-mail messages. Although notification about a new e-mail subscription list may be appropriate as to recipients on an existing e-mail subscription list, such e-mail list subscribers should never be automatically subscribed to a new e-mail list. For example, if Company A acquires Company B, and Company B has compiled opt-in mailing lists, Company A should not automatically incorporate Company B's mailing lists into its own mailing lists.

(l) Affiliate further agrees and acknowledges that: a) it has downloaded and removed the domains located on the FCC's wireless domain names list (http://www.fcc.gov/cgb/policy/DomainNameDownload.html) from any and all current data used in IMG mailings; and b) any and all new data that it acquires, regardless of its source, will be run and/or scrubbed against the FCC's wireless domain names list and that the domain names contained therein will be removed before sending any IMG mailings.

11. **Customers.**
An Internet user that clicks on our Creatives and submits information through any of the IMG advertising campaigns shall be deemed to be the customer of IMG. As such, all IMG rules, policies and procedures concerning such customers shall apply, including any and all changes to our rules, policies and procedures.

12. **Idle Accounts.**
Should your Distributor account remain idle for four (4) consecutive Pay Periods, as defined hereinbelow, IMG may close your account after first sending notice to your last known e-mail address.

13. **Representations and Warranties.**
You represent and warrant to us that: (a) the information that you supplied when enrolling in the Program is true and correct; and (b) to the extent that you are a legal entity, that you are duly incorporated or organized, validly existing and in good standing, duly qualified and licensed to do business, able to carry out your obligations under this Agreement and that the execution, performance and delivery of this

127

Agreement does not violate any existing agreement to which you are a party, or by which you are bound.

14. **Indemnification.**

You shall indemnify, defend and hold us and our members, directors, officers, executives, employees, shareholders, agents, sub-contractors, representatives, affiliated companies and advertising clients (each, a "Covered Party") harmless from and against any and all claims, actions, suits, damages, injuries, losses, deficiencies, liabilities, obligations, commitments, causes of action, costs or expenses of any kind or nature (including reasonable legal fees and other expenses incurred in investigating and defending against same, and associated interest) incurred by such Covered Party resulting from any breach of the representations, warranties, covenants, agreements and obligations assumed by you hereunder and any gross negligence or willful misconduct engaged in by you or your members, partners, officers, employees, agents, subsidiaries, parents and/or affiliates in connection with your operation under this Agreement. Furthermore, you shall notify us of any legal claim, demand, right or cause of action asserted, instituted or threatened against us that arises from or in connection with this Agreement, whether or not you are obligated to indemnify us for such claim as provided for hereunder. The terms of this Section 14 shall survive the termination of this Agreement.

15. **Disclaimers.**

IMG PROVIDES THE PROGRAM, ADVERTISING CAMPAIGNS, CREATIVES, FARM AND OUR SITE ON AN "AS IS AND "AS AVAILABLE" BASIS AND ALL WARRANTIES, EXPRESS OR IMPLIED, ARE DISCLAIMED (INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT OF INTELLECTUAL PROPERTY AND/OR FITNESS FOR A PARTICULAR PURPOSE). THE PROGRAM, ADVERTISING CAMPAIGNS, CREATIVES, FARM AND OUR SITE MAY CONTAIN BUGS, ERRORS, PROBLEMS AND/OR OTHER LIMITATIONS.

16. **Limitation of Liability.**

IMG, AND EACH COVERED PARTY (AS DEFINED IN SECTION 14 HEREINABOVE), HAVE NO LIABILITY TO YOU OR TO ANY THIRD PARTY WHATSOEVER FOR YOUR USE OF, OR INABILITY TO USE, THE PROGRAM, ADVERTISING CAMPAIGNS, CREATIVES, FARM AND/OR OUR SITE. IN PARTICULAR, BUT NOT AS A LIMITATION THEREOF, IMG AND EACH COVERED PARTY, IS NOT LIABLE TO YOU OR TO ANY THIRD PARTY FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING DAMAGES FOR LOSS OF BUSINESS, LOSS OF PROFITS, LITIGATION OR THE LIKE), WHETHER BASED ON BREACH OF CONTRACT, BREACH OF WARRANTY, TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY OR OTHERWISE, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE NEGATION OF DAMAGES SET FORTH HEREIN IS A FUNDAMENTAL ELEMENT OF THE BASIS OF THE BARGAIN BETWEEN YOU AND IMG. THE PROGRAM, ADVERTISING CAMPAIGNS, CREATIVES, FARM AND OUR SITE, AND ANY INFORMATION CONTAINED THEREIN, WOULD NOT BE PROVIDED TO YOU WITHOUT SUCH LIMITATIONS. NO ADVICE OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED BY YOU FROM IMG THROUGH ANY OTHER MEANS SHALL CREATE ANY WARRANTY, REPRESENTATION OR GUARANTEE NOT EXPRESSLY CONTAINED WITHIN THIS AGREEMENT.

17. **Confidentiality.**

As used herein, "Confidential Information" shall mean: (a) IMG's proprietary information; (b) information marked or designated by IMG as confidential; (c) information otherwise disclosed in a manner consistent with its confidential nature; and (d) information of IMG conveyed to Distributor, whether or not in written form and whether or not designated as confidential, that is known, or should reasonably be known, by Distributor to be treated as confidential. Distributor acknowledges that, as a result of this Agreement and its participation in the Program, IMG may disclose Confidential Information to Distributor. Distributor agrees to hold Confidential Information in trust and strictest confidence and agrees that same shall be used solely for purposes set forth in this Agreement and not disclosed and/or transferred to any third party for any reason, whatsoever, without IMG's prior written authorization. In particular, but not as a limitation thereof, Distributor explicitly agrees not to share Confidential Information with IMG's competitors. Moreover, Distributor hereby represents and warrants that it is not a competitor of IMG. Additionally, Distributor will restrict disclosure of Confidential Information to its employee(s), authorized agent(s) and independent contractors to whom disclosure is absolutely required, and ensure that such employee(s), authorized agent(s) and/or independent contractor(s) will use reasonable care, but not less care than they use with respect to their own information of like character, to prevent disclosure of any Confidential Information. Nothing contained in this Agreement shall be construed as granting or conferring rights by license or otherwise in any Confidential Information disclosed under this Agreement. This Section 17 shall survive any termination of this Agreement for a period of three (3) years thereafter. Distributor agrees that monetary damages for breach of confidentiality under this Section 17 may not be adequate and that IMG shall be further entitled to injunctive relief.

128

18. **Non-Circumvention.**
As a Distributor in our Program, you hereby agree that neither you, nor your respective members, shareholders, directors, officers, employees, affiliates, agents, representatives, successors and assigns, without limitation, will circumvent, or attempt to circumvent, IMG with respect to entering into any business transaction or communicating or marketing or making any contact with any third party that provides products and/or services for any of the Advertising Campaigns offered and/or marketed by IMG during the period that you are a Distributor, and for a period of at least two (2) years from the time that this Agreement is terminated, without first obtaining the prior written consent of IMG.

19. **Legal Warning.**
Any attempt by any individual, whether or not a Distributor, to damage, destroy, tamper with, vandalize and/or otherwise interfere with the operation of this our Site and/or Program, is a violation of criminal and civil laws and IMG will diligently pursue any and all remedies in this regard against any offending individual or entity to the fullest extent permissible by law and in equity.

20. **Publicity.**
You shall not in any way publish or distribute any written material that refers to IMG without first submitting such material to IMG for written approval, which shall not be unreasonably withheld. Further, you agree to give IMG a non-exclusive license to use your name(s), URL(s), titles, logos, etc. to advertise, market, promote and/or publicize in any manner our rights hereunder; provided, however, that we shall not be required to do so.

21. **Equipment.**
You shall be solely responsible for obtaining and maintaining all telephone and computer hardware, and any and all other equipment needed for access to, and use of, the Program, and any and all charges related thereto.

22. **Force Majeure.**
You agree that IMG will not be liable for, or be considered to be in breach of this Agreement on account of, IMG's delay or failure to perform as required by this Agreement as a result of any causes or conditions that are beyond IMG's reasonable control and that IMG is unable to overcome through the exercise of commercially reasonable diligence (a "Force Majeure Event"). If any such Force Majeure Event occurs including, without limitation, acts of God, fire explosion, vandalism, storm or other natural occurrences, national emergencies, insurrections, riots, wars, strikes, lockouts, work stoppages or other such labor difficulties, or any act or omission of any other person or entity, IMG will give you notice and will use commercially reasonable efforts to minimize the impact of such event.

23. **Arbitration and Choice of Law.**
This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, without giving effect to its conflict of laws provisions. Should a dispute arise concerning the terms and conditions of this Agreement, or the breach of same by any party hereto, the parties agree to submit their dispute for resolution by arbitration before the American Arbitration Association in New York, New York, in accordance with the then current Commercial Arbitration rules of the American Arbitration Association. Any award rendered shall be final and conclusive to the parties and a judgment thereon may be entered in any court of competent jurisdiction. Nothing in this Section 23 shall be construed to preclude any party from seeking injunctive relief in order to protect its rights pending arbitration.

24. **Relationship of the Parties.**
It is understood and agreed that you and IMG are independent contractors, and nothing contained herein shall be construed or deemed to make us partners or joint venturers, nor shall either of us, or any of our respective agents and/or employees, be construed or deemed to be an agent and/or employee of the other. You have no authority to make or accept any offers or representations on our behalf. You will not make any statement, whether on your Site or otherwise, that reasonably would contradict anything in this Section 24.

25. **Entire Agreement.**
Unless otherwise agreed to in writing by the parties hereto, this Agreement constitutes the entire agreement between us as to the subject matter hereof and supersedes all prior or contemporaneous written or oral agreements or representations between the parties. The invalidity, illegality or non-enforceability of any provision of this Agreement shall not affect the validity, legality or enforceability of any other provisions of this Agreement, all of which shall remain in full force and effect. No failure or delay by us to exercise, and no course of dealing with respect to, any of our rights regarding your obligations under this Agreement shall operate as a waiver thereof. Any single or partial exercise by us of any of our rights shall not preclude us from any other or further exercise of any such right or the exercise of any other right. Any single or partial waiver by us of any of your obligations under this Agreement shall constitute a waiver of such obligation only as specified in such waiver and shall not constitute a waiver of any other

129

of your obligations. If any part of this Agreement is found invalid or unenforceable, the Agreement will be enforced to the maximum extent permitted by law, and all other parts of this Agreement will remain in full force and effect.

### 26. Modifications.

IMG reserves the right to modify any and all of the terms and conditions of this Agreement, at any time and in our sole discretion, by posting a change, notice or a new agreement on our Site. Modifications may include, but will not necessarily be limited to, changes in the scope of referral fees, fee schedules, payment procedures and/or Program rules. Your continued participation in the Program three (3) days following the posting of a notice of any changes on our Site to this Agreement will constitute the binding acceptance by you of any such changes and/or modifications.

### 27. Assignment.

This Agreement shall be binding upon and inure to the benefit of the parties hereto and each of their respective successors, permitted assigns and legal representatives, including the purchaser of the stock or assets of either party hereto. Nothing in this Agreement is intended to confer any rights or remedies on any person or entity that is not a party to this Agreement. Except as contained herein, neither this Agreement, nor any obligation arising hereunder, may be assigned, transferred, or delegated, voluntarily or by operation of law, by you, without the prior written consent of IMG.

### 28. Captions.

Each caption of this Agreement shall be used as a heading only and shall in no way be construed to limit the meaning and/or interpretation of each Section of this Agreement with regard to its function, use and/or understanding.

### 29. Review and Acceptance.

You acknowledge that you have read this Agreement and agree to all of its terms and conditions and have the opportunity to seek the advice of legal counsel. You also understand and agree that this Agreement is not exclusive to you, that we may operate multiple Sites and affiliate programs that may be different from, and compete directly with, this Program. Further, you agree that you are relying solely on this Agreement in making your decision to enroll in the Program and that you are not relying on any representation, guarantee or statement other than those contained in this Agreement.

Back to Top

Copyright © 2005 Impulse Makering Group, Inc. All rights reserved.
Privacy Policy | Report Spam

130

**E-mail Approval Form**

Please answer the following questions, sign, date and fax to (678) 805-2101.

IMG Acct #(s): _____ IMG Rep Name: _____

Domain name to be used in the E-mail "from"
line:_____

Type of Mailing: _____ Stand Alone _____ E-Newsletter _____ E-Zine

_____ Text _____ HTML _____ Both

Identify the mailing list(s) you intend to use with this e-mail campaign:
_____

E-mail Specifications (if applicable): _____

_____

With respect to each mailing list, state how the e-mail addresses were collected, what permissions were granted by the prospective recipients and the method of confirmation employed:

_____

Registration site URL: _____

Statement contained in the e-mail disclosing how the recipient's e-mail address was obtained from them:

_____

_____

Statement contained in the e-mail instructing the recipient how to opt-out from receiving future mailings:

_____

_____

Explain how your automated removal process works and the time frame for completing opt-out requests:

_____

_____

IMG 000011

131

Explain how your manual removal process works and the time frame for completing opt-out requests from the time the recipient manually transmits an opt-out request:

_____

_____

The contact person in your company for SPAM-related Complaints (contact person should not be a sales representative): _____

Telephone Number: _____

E-mail Address: _____

Mailer agrees to:

• Have a correct and working "FROM" address that can be replied to.

• Have a correct and visible dot.com name inserted in the e-mail.

• Have the mailers physical address inserted in the email in addition to the product physical address.

• Include a disclaimer provided by IMG where necessary.

• Limit use of redirected links. (Note: If redirect links are necessary, please contact Dawn Landers (dawn@impulsemg.com) or (678) 805-2117

• Not use hidden frames.

• Mail to a working IMG e-mail address during each drop.

• Otherwise comply with the CAN-SPAM Act of 2003 in every respect while conducting its e-mail marketing campaigns.
•
• Fully comply with the IMG Anti-Spam Policy.

• Respond to all Spam complaints within 1 business day with at least the **REQUIRED** and any additional parameters available.

(Please check the REQUIRED and available parameters below)

_____Name

_____IP Address (**REQUIRED**)

_____Confirmation Method

_____Site Registered At (**REQUIRED**)

IMG 000012

132

_____Time and Date of Registration (**REQUIRED**)

_____List Name

_____Number of Times E-mailed

_____Other (describe)
_____

I have read, understand and agree to abide by IMG's Terms and Conditions and the IMG Anti-Spam Policy found at http://www.impulsemg.com/impulsedn_terms.html unless otherwise agreed to in writing as attached hereto.

Signature: _____Date: _____

Print Name: _____Company: _____

(Note: Failure to complete this form, including checking the REQUIRED FIELDS, as well as signing and dating will delay approval and issuance of the Creatives requested.

**IMG 000013**

133

AUG-12-99 THU 2:35 PM  CDS NEVADA          FAX NO. 17028840493          P. 3

FILED # C19999-99

**DEAN HELLER**
**Secretary of State**
101 North Carson Street, Suite 3
Carson City, Nevada 89701-4786
(775) 684 5708

AUG 12 1999

IN THE OFFICE OF
DEAN HELLER SECRETARY OF STATE

Important: Read attached instructions before completing form.

**1. Name of Corporation:** Impulse Marketing Group, Inc.

**2. Resident Agent Name and Street Address:** Capitol Document Services, Inc.
Name: 202 South Minnesota Street   City: Carson City   NEVADA   Zip Code: 89703

**3. Shares:** Number of shares with par value: 1,000   Par value: $.01   Number of shares without par value: ___

**4. Governing Board:** Shall be styled as: xxx Directors or ___ Trustees
The First Board of Directors/Trustees shall consist of 1 members whose names and addresses are as follows:
Name: Steve Wadley   Address: 2445 Sandy Plains Rd. Bldg. 6 Marietta, GA 30066

**5. Purpose:**

**6. Other Matters:** Number of additional pages attached: 0

**7. Names, Addresses and Signatures of Incorporators:**
Robert D. Axelrod
5300 Memorial Dr. #700 Houston, TX 77007

**8. Certificate of Acceptance of Appointment of Resident Agent:** I Capitol Document Services, Inc. hereby accept appointment as Resident Agent for the above named corporation.
Date: August 12, 1999

This form must be accompanied by appropriate fees. See attached fee schedule.

Aug-12-99 03:56P   P.03

IMG 000014

134

COPY

Liebler, Ivey, Conner, Berry & St. Hilaire
Floyd E. Ivey
1141 N. Edison, Suite C
P.O. Box 6125
Kennewick, Washington 99336
Local Counsel for Defendant/Third Party Plaintiff
Impulse Marketing Group, Inc.
509 735 3581
509 735 3585(fax)

Klein, Zelman, Rothermel, & Dichter, L.L.P.
Sean Moynihan, Esq.; Peter Glantz, Esq.
485 Madison Avenue
New York, New York 10022
Attorneys for Defendant/Third Party Plaintiff
Impulse Marketing Group, Inc.

## UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES S. GORDON, JR., | No. CV-04-5125-FVS |
| Plaintiff, | DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS |
| vs. | |
| IMPULSE MARKETING GROUP, INC., | |
| Defendant | |
| IMPULSE MARKETING GROUP, INC., | |
| Third-Party Plaintiff,s. | |
| BONNIE GORDON, et al., | |
| Third-Party Defendants. | |

Defendant's Supplemental Response to Plaintiff's Second
Request for Production of Documents
Page 1 of 11

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

135

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF JAMES GORDON'S SECOND REQUEST FOR THE PRODUCTION OF DOCUMENTS

Defendant, Impulse Marketing Group, Inc. ("Impulse" or "Defendant"), pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, hereby supplements its response to plaintiff, James Gordon's ("Plaintiff" or "Gordon") Second Request For the Production of Documents ("Second Request") as follows:

## PRELIMINARY STATEMENT

Impulse's supplemental responses are made without in any way waiving either: (a) the right to object on the grounds of competency, relevance, materiality, hearsay or any other proper ground, to the use of any information provided in these responses for any purpose in any stage or proceeding in this or any other action; (b) the right to object on any and all grounds, at any time, to any discovery procedure relating to the subject matter of these documents; or (c) the right to assert the attorney-client privilege, the work-product doctrine, or any other privilege or right. Impulse has not completed its discovery or factual investigation in this action. Accordingly, the supplemental responses set forth herein are provided without

Defendant's Supplemental Response to Plaintiff's Second
Request for Production of Documents
Page 2 of 11

LIEBLER, IVEY, CONNOR, BERRY & ST HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

136

1   prejudice to Impulse's right to add, modify, or otherwise change or amend the

2
3   responses herein in accordance with Rule 26(e).

4                           **GENERAL OBJECTIONS**

5
6       1.      Impulse objects to each Second Request For Production of Documents

7   to the extent that it seeks material or information that is privileged as an attorney-

8
9   client communication.   This objection hereinafter will be referred to as the

10  "Attorney-Client Privilege Objection."

11
12      2.      Impulse objects to each Second Request For Production of Documents

13  to the extent that it seeks material or information prepared by or developed at the

14
15  direction of counsel insofar as it is protected and privileged as attorney work

16  product.   This objection hereinafter will be referred to as the "Attorney Work

17  Product Objection."

18
19      3.      Impulse objects to each Second Request For Production of Documents

20  to the extent that it seeks information that is protected as being prepared in

21
22  anticipation of litigation or for trial.  This objection hereinafter will be referred to

23  as the "Material Prepared in Anticipation of Litigation Objection."

24
25      4.      Impulse objects to each Second Request For Production of Documents

26  to the extent that it seeks information irrelevant to the parties' claims or defenses in

27  this case.   This objection hereinafter will be referred to as the "Irrelevancy

28

Defendant's Supplemental Response to Plaintiff's Second
Request for Production of Documents
Page 3 of 11

LIEBLER, IVEY, CONNOR, BERRY & ST HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

137

Objection."

5.     Impulse objects to each Second Request For Production of Documents to the extent that it calls for information that would impose a vexatious and undue burden on the grounds that the request is oppressive and/or is intended to harass the Impulse.  This objection hereinafter will be referred to as the "Undue Burden Objection."

6.     Impulse objects to each Second Request For Production of Documents to the extent that it is vague, ambiguous, or otherwise lacks sufficient precision to permit a response.  This objection hereinafter will be referred to as the "Ambiguity Objection."

7     Impulse objects to each Second Request For Production of Documents to the extent that it seeks information outside the allegations of the Complaint in this action.  This objection hereinafter will be referred to as the "Overbreadth Objection."

8.     Impulse objects to each Second Request For Production of Documents to the extent that it seeks information that is in Plaintiff's possession. This objection hereinafter will be referred to as the "Plaintiff's Possession Objection."

9.     Impulse objects to each Second Request For Production of Documents to the extent that it repeats a request made elsewhere in Plaintiff's Demand.  This

Defendant's Supplemental Response to Plaintiff's Second
Request for Production of Documents
Page 4 of 11

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

138

objection hereinafter will be referred to as the "Redundancy Objection."

10.    Impulse objects to each Second Request For Production of Documents to the extent that it seeks information relating to unspecified periods of time outside the scope of Plaintiff's Complaint. This objection hereinafter will be referred to as the "Time Frame Objection."

11.    Impulse objects to each Second Request For Production of Documents to the extent that it seeks information that constitutes a trade secret or proprietary information. This objection hereinafter will be referred to as the "Trade Secret Objection."

12.    Defendant objects to Plaintiff's Second Request insofar as it improperly calls for, or presupposes, a conclusion of law. This objection hereinafter will be referred to as the "Legal Conclusion Objection."

13.    Insofar as any request seeks information falling within the scope of the foregoing General Objections, except as provided above, it is specifically noted below by reference to the General Objection defined herein. To the extent an answer is required to a request for admission for which an objection is lodged, it shall be deemed denied.

## SUPPLEMENTAL RESPONSE AND OBJECTIONS TO PLAINTIFF'S SECOND REQUEST

Defendant's Supplemental Response to Plaintiff's Second
Request for Production of Documents
Page 5 of 11

LIEBLER, IVEY, CONNOR, BERRY & ST HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1   SECOND REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1: Pursuant to
2   CR 34, please produce copies of html code for all emails sent by Defendants, or
    anyone on their behalf to Plaintiff at his 'gordonworks.com' domain during the last
3   4 years.

4

5   RESPONSE:     Defendant asserts the Plaintiff's Possession, Irrelevancy,
6   Ambiguity and Time Frame and Overbreadth Objections. Subject to and without
    waiving these objections, Impulse is not in possession of any copies of html code
7   for any emails allegedly sent by Defendant to Plaintiff given that Impulse, upon
8   information and belief, did not itself send any emails to Plaintiff's email address and
    had no knowledge that noncompliant emails would be sent to Plaintiff's email
9   address. Further, Impulse implements a multi-point business practice to ensure
10  compliant email marketing by its third-party marketers including, but not limited to,
    obtaining express representations and warranties from its third-party marketers that
11  said third-party marketers will only transmit emails that comply with any and all
12  state and federal laws such as the CAN-SPAM Act of 2003 and applicable state
    deceptive marketing statutes.
13

14
          _____S/FLOYD E. IVEY_____
15

16  FLOYD E. IVEY

17
    SECOND REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2: Pursuant to
18  CR 34, please produce copies of html code for all emails (identified to you), and
19  alleged as having been received by Plaintiff, and sent by or on behalf of Defendants
    during the last 4 years.
20

21  RESPONSE:     Defendant asserts the Plaintiff's Possession, Redundancy,
22  Irrelevancy, Ambiguity and Time Frame and Overbreadth Objections. Subject to
    and without waiving these objections, Impulse is not in possession of any copies of
23  html code for any emails sent by Defendant to Plaintiff given that Impulse, upon
24  information and belief, did not itself send any emails to Plaintiff's email address and
    had no knowledge that noncompliant emails would be sent to Plaintiff's email
25  address. Further, Impulse implements a multi-point business practice to ensure
26  compliant email marketing by its third-party marketers including, but not limited to,
    obtaining express representations and warranties from its third-party marketers that
27  said third-party marketers will only transmit emails that comply with any and all
28  state and federal laws such as the CAN-SPAM Act of 2003 and applicable state

Defendant's Supplemental Response to Plaintiff's Second
Request for Production of Documents
Page 6 of 11

LIEBLER, IVEY, CONNOR, BERRY & ST HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

140

1  deceptive marketing statutes.

2  _____S/FLOYD E. IVEY_____

3

4  FLOYD E. IVEY

5  SECOND REQUEST FOR PRODUCTION OF DOCUMENTS NO. 3: Pursuant to
6  CR 34, please produce at the offices of counsel for Plaintiff within thirty days of
7  your receipt of this pleading, copies of any and all software and/or "spamware" used
   by Defendants to send commercial email for the past 5 years.
8

9  RESPONSE: Defendant asserts the Irrelevancy, Trade Secret, Ambiguity, Time
   Frame and Overbreadth Objections. Second Request For Production of Documents
10 No. 3 will not lead to discovery of admissible evidence relative to Plaintiff's
11 Complaint. Bushman v. New Holland, 83 Wn. 2d 429, 433-34 (1974); Felix A.
   Thillet, Inc. v. Kelly-Springfield Tire Co., 41 F.R.D. 55 (D.P.R. 1966).
12         _____S/FLOYD E. IVEY_____
13

14 FLOYD E. IVEY

15 SECOND REQUEST FOR PRODUCTION OF DOCUMENTS NO. 4: Pursuant to
16 CR 34, please produce at the offices of counsel for Plaintiff within thirty days of
17 your receipt of this pleading, copies of any and all software used to process
   "unsubscribes", "opt-outs", and/or other requests to be removed from Defendants',
18 or their "partners", or "affiliates" email lists, or subscriber lists.

19
   RESPONSE:     Defendant asserts the Trade Secret, Ambiguity, Time Frame,
20 Overbreadth and Undue Burden Objections.
21         _____S/FLOYD E. IVEY_____
22

23 FLOYD E. IVEY

24 SECOND REQUEST FOR PRODUCTION OF DOCUMENTS NO. 5:  Produce
   copies of all software and/or documents relating to all "java scripts" and/or "java
25 script" mechanisms utilized by Defendants, or anyone on their behalf for the last 5
26 years.

27

28
Defendant's Supplemental Response to Plaintiff's Second
Request for Production of Documents
Page 7 of 11

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

141

1  RESPONSE:        Defendant asserts the Irrelevancy, Trade Secret, Ambiguity, Time
2  Frame, Overbreadth and Undue Burden Objections. Second Request For Production
   of Documents No. 5 will not lead to discovery of admissible evidence relative to
3  Plaintiff's Complaint.  Bushman v. New Holland, 83 Wn. 2d 429, 433-34 (1974);
4  Felix A. Thillet, Inc. v. Kelly-Springfield Tire Co., 41 F.R.D. 55 (D.P.R. 1966).

5      ____S/FLOYD E. IVEY_____
6
7  FLOYD E. IVEY

8  SECOND REQUEST FOR PRODUCTION OF DOCUMENTS NO. 6:  Pursuant to
9  CR 34, please produce copies of all source code for "White text" and "Web
   Beacons" used by Defendants for the last 5 years.
10
11 RESPONSE:        Defendant asserts the Irrelevancy, Trade Secret, Ambiguity, Time
12 Frame, Overbreadth and Undue Burden Objections. Second Request For Production
   of Documents No. 6 will not lead to discovery of admissible evidence relative to
13 Plaintiff's Complaint.  Bushman v. New Holland, 83 Wn. 2d 429, 433-34 (1974);
14 Felix A. Thillet, Inc. v. Kelly-Springfield Tire Co., 41 F.R.D. 55 (D.P.R. 1966).

15     ____S/FLOYD E. IVEY_____
16
17 FLOYD E. IVEY

18 SECOND REQUEST FOR PRODUCTION OF DOCUMENTS NO. 7:  Pursuant to
19 CR 34, please produce copies of all customer lists, including any and all individuals
   and/or entities to whom Defendants have sold products and/or services for the last
20 5 years.

21
22 RESPONSE:        Defendant asserts the Irrelevancy, Trade Secret, Ambiguity, Time
   Frame, Overbreadth and Undue Burden Objections. Second Request For Production
23 of Documents No. 7 will not lead to discovery of admissible evidence relative to
24 Plaintiff's Complaint.  Bushman v. New Holland, 83 Wn. 2d 429, 433-34 (1974);
   Felix A. Thillet, Inc. v. Kelly-Springfield Tire Co., 41 F.R.D. 55 (D.P.R. 1966).
25
26     ____S/FLOYD E. IVEY_____
27
28 FLOYD E. IVEY

Defendant's Supplemental Response to Plaintiff's Second          LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Request for Production of Documents                                          Attorneys at Law
Page 8 of 11                                                                    P.O. Box 6125
                                                              Kennewick, Washington 99336-0125
                                                                         (509) 735-3581

142

1

2  SECOND REQUEST FOR PRODUCTION OF DOCUMENTS NO. 8: Pursuant to
   CR 34, please produce copies of all contracts, agreements, and/or other
3  documentation with any and all customers to whom Defendants have sold products
4  and/or services in the State of Washington for the last 5 years.

5  RESPONSE:        Defendant asserts the Irrelevancy, Trade Secret, Ambiguity, Time
6  Frame, Overbreadth and Undue Burden Objections. Second Request For Production
   of Documents No. 8 will not lead to discovery of admissible evidence relative to
7  Plaintiff's Complaint. <u>Bushman v. New Holland</u>, 83 Wn. 2d 429, 433-34 (1974);
8  <u>Felix A. Thillet, Inc. v. Kelly-Springfield Tire Co.</u>, 41 F.R.D. 55 (D.P.R. 1966).

9
        _____S/FLOYD E. IVEY_____
10

11 FLOYD E. IVEY

12
   SECOND REQUEST FOR PRODUCTION OF DOCUMENTS NO. 9: Pursuant to
13 CR 34, please produce at the offices of counsel for Plaintiff within thirty days of
14 your receipt of this pleading, a copy of all communications between Defendants and
   any and all of its "marketing partners", and/or "affiliates" for the past 5 years.
15

16 RESPONSE:        Defendant asserts the Trade Secret, Ambiguity, Time Frame,
   Overbreadth and Undue Burden Objections. Second Request For Production of
17 Documents No. 9 will not lead to discovery of admissible evidence relative to
18 Plaintiff's Complaint. <u>Bushman v. New Holland</u>, 83 Wn. 2d 429, 433-34 (1974);
   <u>Felix A. Thillet, Inc. v. Kelly-Springfield Tire Co.</u>, 41 F.R.D. 55 (D.P.R. 1966).
19

20      _____S/FLOYD E. IVEY_____

21
22 FLOYD E. IVEY

23 SECOND  REQUEST  FOR  PRODUCTION  OF  DOCUMENTS  NO.  10:
        Please produce copies of all documents and/or software related to or used in
24 the creation and generation of the Headers Defendants use in their commercial email
25 for the past 5 years.

26

27

28
   Defendant's Supplemental Response to Plaintiff's Second          LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
   Request for Production of Documents                                          Attorneys at Law
   Page 9 of 11                                                                   P.O. Box 6125
                                                                       Kennewick, Washington 99336-0125
                                                                               (509) 735-3581

143

1    RESPONSE:         Defendant asserts the Irrelevancy, Trade Secret, Ambiguity, Time
2    Frame, Overbreadth and Undue Burden Objections. Second Request For Production
     of Documents No. 10 will not lead to discovery of admissible evidence relative to
3    Plaintiff's Complaint. <u>Bushman v. New Holland</u>, 83 Wn. 2d 429, 433-34 (1974);
4    <u>Felix A. Thillet, Inc. v. Kelly-Springfield Tire Co.</u>, 41 F.R.D. 55 (D.P.R. 1966).

5    _____S/FLOYD E. IVEY_____

6

7    FLOYD E. IVEY

8

9

10        Pursuant to CR 26(g), Floyd E. Ivey certifies:  That I am the attorney for
     the party answering these discovery requests; that I have read the discovery
11   requests propounded to said answering party and the answers and objections, if
     any, thereto, know the contents thereof and believe the same to be true.

12
                      S/FLOYD E. IVEY
13                    _____
                      Liebler, Ivey, Conner, Berry & St. Hilaire
14                    By:    Floyd E. Ivey
                      1141 N. Edison, Suite C
15                    P.O. Box 6125
                      Kennewick, Washington 99336
16                    Local Counsel for Defendant
                      Impulse Marketing Group, Inc.
17
                      S/Sean Moynihan, Peter Glantz
18                    _____
                      Sean A. Moynihan
19                    Peter J. Glantz
                      Klein, Zelman, Rothermel & Dichter, LLP
20                    485 Madison Avenue, 15th Floor
                      New York, New York 10022
21                    (212) 935-6020
                      (212) 753-8101 (fax)
22

23        I hereby certify that a copy of the foregoing Defendant's Response to
24   Plaintiff's First Interrogatories were mailed this 9th day of June, 2006, to:

25

26   Mr. Robert J. Siegel                    Mr. Robert Pritchett
     Merkle, Siegel & Friedrichsen           1952 Thayer Drive
27   1325 Fourth Ave., Suite 940             Richland, WA 99354
     Seattle, WA 98101
28                                           Ms. Emily Abbey

144

1   Ms. Bonnie Gordon                    1407 2nd Ave. West, #608
    9804 Buckingham Drive                Seattle, WA 98119
2   Pasco, WA 99301

3   Mr. James Gordon, III                Mr. Jonathan Gordon
    9804 Buckingham Drive                9804 Buckingham Drive
4   Pasco, WA 99301                      Pasco, WA 99301

5   Ms. Jamila Gordon
    9804 Buckingham Drive
6   Pasco, WA 99301

7
                    S/FLOYD E. IVEY
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

145