1    ROBERT J. SIEGEL
     Attorney At Law
2    1325 Fourth Avenue
     Suite 940
3    Seattle, WA 98101
     (206) 624-9410
4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT
9           FOR THE EASTERN DISTRICT OF WASHINGTON

10

11   **JAMES S. GORDON, JR.,**          NO. CV-04-5125-FVS

12                    **Plaintiff,**     **RESPONSE IN OPPOSITION
                                         TO DEFENDANTS' <u>SECOND</u>**
13   v.                                  **MOTION TO DISMISS**

14   **IMPULSE MARKETING**               **[HEARING: OCTOBER 10,
15   GROUP, INC., et al.,**              2006]**
                     **Defendants.**
16

17

18   _____

19       Plaintiff respectfully responds as follows to Defendant's Second Motion To

20   Dismiss as follows:

21              <u>**IMG's Quibbling Over Tradenames Is Moot**</u>

22       The Defendant, Impulse Marketing Group, Inc. (IMG), complains that the

23   Plaintiff, James S. Gordon, Jr., (Gordon), has added "dba

24   GORDONWORKS.COM" to the caption of Gordon's complaint.  Gordon notes

25   that IMG's objection is not timely.  IMG failed to lodge this objection at the time

26

RESPONSE TO DEFENDANTS'              **MERKLE SIEGEL & FRIEDRICHSEN, P.C.**
<u>SECOND</u> MOTION TO DISMISS - 1          ATTORNEYS AT LAW
                                          1325 FOURTH AVENUE, SUITE 940
                                          SEATTLE, WASHINGTON 98101-2509
                                      PHONE: (206) 624-9392  FAX: (206) 624-0717

J:\RJS\CLIENTS\COLE\CAPTION.DOC

Gordon moved to amend Gordon's complaint, when this d/b/a first appeared in the caption. Nevertheless, it was an error for Gordon to describe "gordonworks.com" as a "d/b/a" of Gordon's interactive computer services. "Gordonworks.com" was instead merely the domain name and Internet address where Gordon provided those interactive computer services. Accordingly, Gordon has amended the caption of Gordon's complaint, and paragraph 1.1, to state as such. IMG's complaints about Gordon's use of the d/b/a in Gordon's caption, and IMG's allegations that Gordon lacks standing to bring an action on behalf of a tradename, are therefore moot.

### Gordon Has Standing To Bring All Claims Asserted In This Action

IMG's claim that Gordon lacks standing to bring an action as an interactive computer service under CEMA and CPA, and that Gordon lacks standing to bring an action under CAN SPAM, is without merit. With respect to CEMA, Gordon, as a result of his operation of the gordonworks.com website, easily fits the definition of an "interactive computer service" under CEMA and CPA. Impulse incorrectly cites RCW 19.190.010(5) as the definition of an "interactive computer service." The definition is actually found at RCW 19.190.010(8), which states that an

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 2

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 940
SEATTLE, WASHINGTON 98101-2509
PHONE: (206) 624-9392  FAX: (206) 624-0717

J:\RJS\CLIENTS\COLE\CAPTION.DOC

"interactive computer service means <u>any information service</u>, system, or access

software provider <u>that provides</u> or enables <u>computer access by multiple users to a</u>

<u>computer server</u>, including specifically a service or system that provides access to

the internet and such systems operated or services offered by libraries or

educational institutions." (emphasis added).

Gordon, as a result of his operation of gordonworks.com, indisputably is an

"information service" that provides "computer access by multiple users to a

computer server." Thousands, if not millions, of users have "accessed" the

information made available by Gordon through his service. Each and every time

each and every one of those multiple users "accessed" the information services

provided by Gordon, they did so by accessing the "computer server" where

gordonworks.com was located. At all times, Gordon provided all of these users

access to those servers and the information provided thereon, as in all cases

Gordon controlled these servers by virtue of Gordon having leased them for that

purpose. Included among these users were multiple individuals who accessed

email on Gordon's servers, all of whom utilized email addresses using the

gordonworks.com domain name. Plainly, the only difference between Gordon and

any other entity that could possibly fit the definition of "interactive computer

service" is one of scale, not of substance.

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 3

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 940
SEATTLE, WASHINGTON 98101-2509
PHONE: (206) 624-9392 FAX: (206) 624-0717

J:\RJS\CLIENTS\COLE\CAPTION.DOC

However, Gordon need prove none of the forgoing for purposes of this motion. For purposes of defeating IMG's motion under Fed R. Civ. P. 12(b)(6), all of Gordon's allegations are taken as true. Gordon has plainly plead that he "was doing business as an interactive computer service." To defeat the instant motion, Gordon need not *prove* facts that would support this allegation. Rather, Gordon need only to show that facts *might* exist that would support Gordon's claims.

A complaint may be dismissed as a matter of law for only two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. (*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533 34 (9th Cir. 1984) (citing 2A J. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.08 at 2271 (2d ed. 1982)).) "A court may dismiss a complaint only if it is clear that no relief could be granted under <u>any set of facts that could be proved</u> consistent with the allegations." (*Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *see also Argabright v. United States*, 35 F.3d 472, 474 (9th Cir. 1994).) Motions to dismiss generally are viewed with disfavor under this liberal standard and are granted rarely. (*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).) For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff. (*Jenkins v. McKeithen*, 395 U.S. 411,

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 4

J:\RJS\CLIENTS\COLE\CAPTION.DOC

1
2
3
4

421 (1969); *Argabright, supra*, 35 F.3d at 474.) "[T]he central issue is whether, in

the light most favorable to the plaintiff, the complaint states a valid claim for

relief." (*Hughes v. Tobacco Institute, Inc.,* 278 F.3d 417, 420-21 (5th Cir.2001).)

5
6
7
8

Plainly, Gordon has shown that sufficient facts *might* exist that would

support his allegation that he is an "interactive computer service" as Gordon has

shown that these facts *actually* exist.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Finally, in addition to again using the wrong citations, IMG has grossly

mischaracterized both the facts and the legislative intent behind the definitions for

the terms "webpage" and "domain name."  In the first instance, IMG is simply

lying to the Court when IMG states that "CEMA was later amended to define the

terms "Internet domain name"…  In fact, both the exact term and the current

definition of the term "Internet domain name" have always been a part of CEMA

since its original passage in 1998.  The legislature did add the definition of "web

page" in 2005, but that was because the legislature added a new provision to

CEMA, RCW 19.190.080, which made it, (among other things), a violation of the

chapter to "solicit, request, or take any action to induce a person to provide

personally identifying information by means of a web page…" The legislature

explicitly made clear that it did not intend to effect the already existing provisions

25
26

**MERKLE SIEGEL & FRIEDRICHSEN, P.C.**
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 940
SEATTLE, WASHINGTON 98101-2509
PHONE: (206) 624-9392  FAX: (206) 624-0717

J:\RJS\CLIENTS\COLE\CAPTION.DOC

of CEMA when it added the definition of "web page" and RCW 19.190.080 in the

note to RCW 19.190.080 which states:

Severability -- 2005 c 378: "If any provision of this act or its application to any
person or circumstance is held invalid, the remainder of the act or the application
of the provision to other persons or circumstances is not affected." [2005 c 378 §
6.]

Plainly, there is no evidence whatsoever that the legislature intended to limit

CEMA's definition of an "interactive computer service" beyond the plain language

of the definition, and Gordon plainly fits within that definition.

<u>Gordon Is An "Internet Access Service" Under Section 231(E)(4) Of The</u>

<u>Communications Decency Act Of 1934</u>

With respect to CAN SPAM, IMG's claim that Gordon is not a "internet

access service" (IAS) under Section 231(e)(4) of the Communications Decency

Act of 1934 (the "CDA') is also without merit.  Under Section 231(e)(4) of the

CDA, (which is incorporated by reference into CAN SPAM) the term "Internet

access service" means "a service that enables users to access content, information,

electronic mail, or other services offered over the Internet, and may also include

access to proprietary content, information, and other services as part of a package

of services offered to consumers."  Gordon plainly meets that definition.

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 6

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 940
SEATTLE, WASHINGTON 98101-2509
PHONE: (206) 624-9392  FAX: (206) 624-0717

J:\RJS\CLIENTS\COLE\CAPTION.DOC

1  As has already been demonstrated, Gordon "enables users to access content,
2
3  information, and electronic mail over the Internet."  Under CAN SPAM, nothing
4  more is required.  IMG freely admits that the corporations AOL, Mircrosoft and
5  Earthlink are internet access services, but IMG offers only "common sense" as its
6
7  authority for the proposition that an "individual person" cannot be an internet
8  access service.  Perhaps IMG is unfamiliar with the business form of a "sole
9  proprietorship."  IMG offers no explanation whatsoever for their apparent
10  contention that only a corporate form of business can be considered an internet
11
12  access service under CAN SPAM.

13  In fact, as is plainly evident from the definition, CAN SPAM defines an
14  internet access service by what it does, rather than what (or who) it is.  As such,
15
16  CAN SPAM makes no distinction between internet access services organized as
17  corporations, limited liability companies, partnerships, or sole proprietors.  All that
18  matters is whether the business enables users to access content on the Internet,
19
20  which Gordon clearly does.

21  **IMG's Objection With Respect To The Prize Statute Is Moot**
22
23  IMG raises the objection that Gordon has failed to allege damages with
24  respect to the prize statute.  Gordon's Second Amended Complaint filed
25  concurrently herewith now alleges damages, thereby rendering IMG's objection
26  moot.

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 7

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 940
SEATTLE, WASHINGTON 98101-2509
PHONE: (206) 624-9392  FAX: (206) 624-0717

J:\RJS\CLIENTS\COLE\CAPTION.DOC

1

**Plaintiff Has Clearly Articulated A Claim Against Goldstein And Adamson**

2

3          IMG rests its entire argument that Gordon has failed to state a claim against

4     Goldstein and Adamson on the premise that Gordon's claims must pierce the

5     corporate veil.  This premise is false.  As argued in Gordon's Motion For Leave To

6
7     File a First Amended Complaint (Ct. Rec. 313), defendants Goldstein and

8     Adamson are directly liable for their own actions in "inducing" or "assisting"

9     defendant IMG and/or other third parties in sending e-mails that violate CEMA,

10
11    CPA, and CAN SPAM.  To the extent that Gordon's First Amended Complaint was

12    not as clear as Gordon's brief on this point, Gordon has now provided that clarity in

13    Gordon's Second Amended Complaint filed concurrently herewith.  In Gordon's

14
15    Second Amended Complaint, Gordon clearly and concisely makes the allegation

16    that defendants Goldstein and Adamson are personally liable for actions taken by

17    them as individuals.

18
19         The statutory authority for Gordon's claims against Goldstein and Adamson

20    is clear.  CEMA and CAN SPAM clearly provide a direct cause of action against

21    any person who "assists" others in sending commercial electronic mail messages

22
23    that violate CEMA, CPA, and CAN SPAM.  CEMA, at RCW 19.190.020, provides

24    in pertinent part:

25

26

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 8

**MERKLE SIEGEL & FRIEDRICHSEN, P.C.**
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 940
SEATTLE, WASHINGTON 98101-2509
PHONE: (206) 624-9392  FAX: (206) 624-0717

J:\RJS\CLIENTS\COLE\CAPTION.DOC

(1) No person may initiate the transmission, <u>conspire with another to initiate the transmission, or assist the transmission</u>, of a commercial electronic mail message … (emphasis added)

CAN SPAM, at 15 U.S.C. § 7702 (9) and (12), also provide a direct cause of action against persons who induce others to send commercial email that violates CAN SPAM.  15 U.S.C. § 7702 (9) and (12) provides in pertinent part:

(9) Initiate

The term "initiate", when used with respect to a commercial electronic mail message, means to originate or transmit such message or to procure the origination or transmission of such message, but shall not include actions that constitute routine conveyance of such message.  For purposes of this paragraph, more than one person may be considered to have initiated a message.

(12) Procure

The term "procure", when used with respect to the initiation of a commercial electronic mail message, means intentionally to pay or provide other consideration to, or <u>induce, another person to initiate such a message on one's behalf</u>. (emphasis added)

Further, even without the explicit extension of liability set forth within both the plain text of CEMA and CAN SPAM, Washington courts have long recognized the liability of corporate officers in circumstances such as that presented by this action.

"Although the trial court improperly pierced Nordic's corporate veil on the alter ego theory, we nonetheless find that personal liability was properly imposed on Bergstrom under the rule enunciated in STATE **v.** RALPH WILLIAMS'

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 9

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 940
SEATTLE, WASHINGTON 98101-2509
PHONE: (206) 624-9392 FAX: (206) 624-0717

NORTH WEST CHRYSLER PLYMOUTH, INC., 87 Wn.2d 298, 553 P.2d 423

(1976**).** If a corporate officer participates in wrongful conduct or with knowledge

approves of the conduct, then the officer, as well as the corporation, is liable for

the penalties. STATE **v.** RALPH WILLIAMS' NORTH WEST CHRYSLER

PLYMOUTH, INC., SUPRA; JOHNSON **v.** HARRIGAN-PEACH LAND DEV.

CO., 79 Wn.2d 745, 489 P.2d 923 (1971). In RALPH WILLIAMS, this court

considered a deceptive practice in violation of the Consumer Protection Act to be a

type of wrongful conduct which justified imposing personal liability on a

participating corporate officer." Id. (emphasis added.)

Thus, not only do CEMA and CAN SPAM explicitly provide a direct cause

of action against any person who "assists" others in sending commercial electronic

mail messages, the relevant case law interpreting CPA does so as well.  Gordon's

Second Amended Complaint alleges that defendants Goldstein and Adamson did

exactly that.  As already noted, for purposes of Rule 12(b)(6), the allegations in

Gordon's pleading are taken to be true, and the affidavits of Goldstein and

Adamson do not contradict this allegation within Gordon's pleading.  Accordingly,

Gordon's Second Amended Complaint plainly states an uncontradicted claim

directly against defendants Goldstein and Adamson upon which relief can be

granted.

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 10

J:\RJS\CLIENTS\COLE\CAPTION.DOC

### The Court Has Jurisdiction over Goldstein and Adamson

IMG's motion to dismiss for lack of jurisdiction is based entirely on the presumption that Gordon's claims are limited to the allegation that Goldstein and Adamson sent illegal e-mail, or that illegal e-mail was sent on their behalf. This presumption is ill-founded. As shown above, Gordon's complaint instead alleges that Goldstein and Adamson are liable because they "assisted others" in sending illegal e-mail to Gordon, a Washington resident. As set forth above, "assisting" others in sending illegal e-mail is a cognizable claim under both CEMA and CAN SPAM. Notably, within their declarations, neither Goldstein nor Adamson have denied that they "assisted" others who sent illegal e-mail to Gordon. This is not surprising. For them to deny such would be laughable. IMG has already admitted that it is a business engaged in marketing using e-mail. Goldstein is the president of IMG, and Adamson has admitted to being IMG's employee. There can be no doubt that both Goldstein and Adamson "assist" IMG in IMG's e-mail marketing activities. The e-mails aren't sending themselves.

Thus, the question before the Court is whether special jurisdiction is proper over an out-of-state defendant who "assists" another in sending illegal email to residents of the State of Washington. Since the liability under both CEMA and CAN SPAM for "sending" illegal email is identical to the liability for "assisting"

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 11

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 940
SEATTLE, WASHINGTON 98101-2509
PHONE: (206) 624-9392 FAX: (206) 624-0717

J:\RJS\CLIENTS\COLE\CAPTION.DOC

another in sending email, the question of whether special jurisdiction is proper over an out-of-state defendant who "assists" in sending illegal email is the same as the question of whether special jurisdiction is proper over an out-of-state defendant who "sends" illegal e-mail.

The question of special jurisdiction over a "sender" has already been decided in the affirmative, not only by the appellate courts of Washington, but also by this court in *Gordon v. Ascentive, LLC*, (Slip Op.), 2005 WL 3448025 (E.D. Washington, December 15, 2005). Applying the facts of this case to the Court's analysis in Ascentive, it is clear that special jurisdiction is proper.

As stated by the Court in Ascentive, "Plaintiff bears the burden of establishing that personal jurisdiction exists. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)(citation omitted). Where, as here, the Court is asked to resolve the motion on the parties' briefs and affidavits, rather than hold an evidentiary hearing, Plaintiff need only make a prima facie showing of personal jurisdiction. *Rano v. Sipa Press, Inc.*, 987 F.2d 580 n. 3 (9th Cir. 1993). "That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (quotations and citation omitted). In determining whether Plaintiff has made a prima facie showing, the Court is bound by the following principles: (1)

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 12

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 940
SEATTLE, WASHINGTON 98101-2509
PHONE: (206) 624-9392  FAX: (206) 624-0717

J:\RJS\CLIENTS\COLE\CAPTION.DOC

1
2
3
4
5
6
7

uncontroverted allegations in Plaintiff's Complaint are taken as true; (2) conflicts between the facts contained in the parties' affidavits must be resolved in Plaintiff's favor; and (3) all evidentiary materials are construed in the light most favorable to Plaintiff. *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002)."

8
9
10
11
12
13

Applying the procedure articulated by the Court in Ascentive to the facts before the Court in the instant case, it is clear that special jurisdiction is proper. Gordon's allegation that Goldstein and Adamson "assisted" others in sending illegal e-mail to Gordon must be taken as true, as it is uncontroverted by Goldstein and Adamson's affidavits.

14
15
16
17

As was the case in Ascentive, Gordon has plead that specific jurisdiction is created by RCW 4.28.185. *See e.g., Raymond*, 104 Wash. App. at 636-37, 15 P.3d at 701-02 (2001).

18
19

RCW 4.28.185(1)(a) provides in part:

20
21
22

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person ... to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of the said acts:

23
24

(a) The transaction of any business within this state.

25
26

Continuing with this Court's analysis in Ascentive, "to establish that specific jurisdiction exits under the transaction of business portion of Washington's long-

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 13

J:\RJS\CLIENTS\COLE\CAPTION.DOC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

arm statute, RCW 4.28.185(1)(a), Plaintiff must establish three factors: (1) Defendant must have purposefully done some act or consummated some transaction in Washington; (2) Plaintiff's cause of action must arise from, or be connected with, such act or transaction; and (3) the exercise of jurisdiction must be reasonable in that it must not offend traditional notions of fair play and substantial justice. *Raymond*, 104 Wash.App. at 637, 15 P.3d at 702 (citing *Shute v. Carnival Cruise Lines*, 113 Wash.2d 763, 767, 783 P.2d 78 (1999)). Plaintiff bears the burden of satisfying the first two prongs of the test, and if he succeeds, the burden shifts to Defendant to present a compelling case that the exercise of jurisdiction would be unreasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)."

The first and second prongs of this test are easily met in the present case. Assuming the Gordon's uncontroverted allegations to be true, Goldstein and Adamson assisted others in sending illegal e-mail to Gordon, a Washington state resident. Goldstein and Adamson thereby have "done some act… in Washington." Gordon's claims arise from Gordon's receipt of those same e-mails, thereby satisfying the second prong of the test.

Finally, calling Goldstein and Adamson to account for their acts of assisting others in sending thousands of illegal e-mail messages to Gordon, a Washington

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 14

J:\RJS\CLIENTS\COLE\CAPTION.DOC

state resident, in no way offends traditional notions of fair play and substantial

justice.  Other states and the United States Supreme Court concur that employees

and corporate officers personally involved in actionable conduct of the corporation

can be subject to personal jurisdiction based on their acts as employees of a

corporation with contacts in the forum states. (See, e.g., Calder v. Jones, supra, 465

U.S. 783, [employee editor liable for National Enquirer's defamatory acts]; Vikse

v. Flaby (Minn.1982) 316 N.W.2d 276 [assertion of personal jurisdiction in fraud

action over a nonresident individual who was a stockholder, officer, director, and

attorney for an Arizona land development corporation was permissible under the

long-arm statute and did not violate due process where corporation and individual

committed fraudulent acts in Arizona that caused damage in Minnesota]; CPC

Intern. Inc. v. McKesson Corp. (N.Y. 1987) 514 N.E.2d 116; Hammond v. Butler,

Means, Evins & Brown (S.C. 1990) 388 S.E.2d 796, cert. denied, (1990) 498 U.S.

952.) The cause of action need not be a traditional intentional tort. (Chicago

Blower Corp. v. Air Systems Associates (E.D. Mich. 1985) 623 F.Supp. 798, 804

[personal jurisdiction found over Canadian individuals, with few personal physical

contacts with Michigan but contacts with it through business of corporation of

which they were officers and part owners, for their part in corporation's unfair

competition and trademark infringement].)

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 15

Goldstein and Adamson were undoubtedly compensated for providing assistance in sending illegal e-mails, and they were undoubtedly aware that at least a portion of the e-mails were being received by Washington state residents. It is only fair that they defend their actions in the jurisdiction where they directed their illegal e-mails.

## IMG's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and for a More Definite Statement under Fed. R. Civ. P. 12(e) Are Frivolous

IMG complains that they are unable to "identify and defend the specific allegations being lodged against them." Specifically, IMG asks the Court to require Gordon to amend Gordon's complaint to set forth, for each and every e-mail, "1) the e-mail address to which it was sent; 2) the date on which it was sent; 3) the specific ways in which the e-mail is alleged to violate any provision of any statute and the factual basis or bases for such a conclusion; and 4) the factual basis upon which Gordon bases his conclusion that the e-mail was sent or initiated by or on behalf of a particular Defendant."

IMG's request is entirely disingenuous. All of this information is already in the hands of IMG. Gordon has already produced all of the e-mails that form the basis of Gordon's complaint to IMG, as well as a detailed analysis of those e-

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 16

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 940
SEATTLE, WASHINGTON 98101-2509
PHONE: (206) 624-9392  FAX: (206) 624-0717

J:\RJS\CLIENTS\COLE\CAPTION.DOC

mails.[1]  A description of this production was provided in Gordon's Response to

Defendant's Second Motion to Compel (Ct. Rec. 353).  If IMG really wants to

know the "e-mail address to which it (a particular e-mail) was sent," all IMG needs

to do is look at the "to" line of the e-mail in question, as all of the e-mails are in

IMG's possession.  Similarly, if IMG really wants to know the "date on which it

was (a particular e-mail) sent," all IMG needs to do is look at the "date" line of the

e-mail in question as again, all of the e-mails are in IMG's possession.

Gordon has also produced a detailed analysis, over 2,200 pages in length,

where the specific portion of each and every e-mail that violates the statute has

been identified in and highlighted for IMG.  The Court should note that Gordon

has never agreed (and does not agree now) that this extensive and detailed analysis

was required under the Rules of Civil Procedure.  Rather, Gordon has produced

this analysis in the interest of inducing IMG to settle.  However, Gordon's good

faith production appears to have had the opposite effect, as IMG now

disingenuously complains that they cannot even identify basic information present

on these e-mails, such as the e-mail address they were sent to, and the date they

were sent.  IMG has obviously settled into a scorched-earth litigation strategy,

where they deny facts that are indisputable, feign ignorance of facts that are plain

---

[1] IMG continues to send illegal e-mail to Gordon on an ongoing basis.  Therefore, while Gordon had sent all the e-mails received as of the date of Gordon's production, Gordon's production likewise continues on an ongoing basis.

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 17

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 940
SEATTLE, WASHINGTON 98101-2509
PHONE: (206) 624-9392  FAX: (206) 624-0717

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

on their face, and waste judicial resources on motions such as the one before the

Court today.

With respect to IMG' s request that Gordon identify "the factual basis upon

which Gordon bases his conclusion that the e-mail was sent or initiated by or on

behalf of a particular Defendant," the e-mails speak for themselves.  For example,

a typical and exemplary e-mail sent by IMG is shown as exhibit A to the

declaration of James S. Gordon Jr. filed concurrently herewith.  The e-mail is an

advertisement for a product marketed by Commonwealth Marketing Group, known

as "USA platinum." (See Gordon Declaration, filed herewith, ¶ 2).  The Court's

attention is drawn to the line highlighted in yellow within the e-mail, which reads

"USA Platinum c/o Impulse Marketing Group 1100 Hammond Drive NE Suite

410A – 202 Atlanta, GA 30328."  Plainly, Gordon has good reason to believe that

the e-mail in question was sent by or on behalf of IMG, and IMG's request that the

Court compel Gordon to re-write Gordon's complaint to provide a three thousand

page narrative explanation of this obvious conclusion for each and every e-mail

goes well beyond the pleading requirements of the Federal Rules of Civil

Procedure.

A complaint may be dismissed as a matter of law for only two reasons: (1)

lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 18

**MERKLE SIEGEL & FRIEDRICHSEN, P.C.**
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 940
SEATTLE, WASHINGTON 98101-2509
PHONE: (206) 624-9392  FAX: (206) 624-0717

J:\RJS\CLIENTS\COLE\CAPTION.DOC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

theory. (*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533 34 (9th Cir. 1984) (citing 2A J. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.08 at 2271 (2d ed. 1982)).) "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." (*Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *see also Argabright v. United States*, 35 F.3d 472, 474 (9th Cir. 1994).) Motions to dismiss generally are viewed with disfavor under this liberal standard and are granted rarely. (*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).) For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff. (*Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Argabright, supra*, 35 F.3d at 474.) "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." (*Hughes v. Tobacco Institute, Inc.,* 278 F.3d 417, 420-21 (5th Cir.2001).). In fact, the complaint need not necessarily identify a particular legal theory at all. *Williams v. Seniff,* 342 F. 3d 774, 792 (7th Cir. 2003); *Barrett v. Tallon,* 30 F. 3d 1296, 1299 (10th Cir. 1994). A claim will not generally be dismissed, even though the asserted legal theories are not cognizable or the relief sought is unavailable, as long as other tenable legal claims are evident on the face of the complaint, or the

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 19

**MERKLE SIEGEL & FRIEDRICHSEN, P.C.**
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 940
SEATTLE, WASHINGTON 98101-2509
PHONE: (206) 624-9392 FAX: (206) 624-0717

1
2
3
4
5
6
7
8

pleader is otherwise entitled to any type of relief under another possible legal theory. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L. Ed. 2d 80 (1957); *See also Barrett v. Talon, supra.* For purposes of a motion under FRCP 12(b)(6), even the mere "possibility" of a cognizable claim is sufficient to defeat dismissal. *Carparts Distrib. Ctr. v. Automotive Wholesaler's Ass'n. of Ne England, Inc.,* 37 F. 3d 12, 17 (1st Cir. 1994).

9
10
11
12
13
14
15
16

Further, in considering a Rule 12(b)(6) motion, the court should be particularly hesitant to dismiss at the pleading stage those claims asserting novel legal theories, where the claims could be better examined following the development of the facts through discovery. *McGary v. City of Portland,* 386 F. 3d 1259, 1270 9th Cir. 2004); *Baker v. Cuomo,* 58 F.3d 814, 118-819 (2d. Cir. 1995).

17
18
19
20
21
22
23
24
25
26

Here, it is clear from a reading of Gordon's complaint have it easily satisfies the requirements of pleading under FRCP 12(b)(6). Gordon's claims are statutorily based, and the Statutes set forth the basic elements of a claim brought thereunder. Gordon's claims allege that IMG's acts and conduct met each of the statutory elements individually. Accordingly, despite Defendants' dissatisfaction with this style of complaint, it is patently appropriate and more than sufficient to

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 20

MERKLE SIEGEL & FRIEDRICHSEN, P.C.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, SUITE 940
SEATTLE, WASHINGTON 98101-2509
PHONE: (206) 624-9392  FAX: (206) 624-0717

J:\RJS\CLIENTS\COLE\CAPTION.DOC

quote or paraphrase the statutory language in setting out such a claim, which is precisely what Gordon has done.

## **Conclusion**

Gordon respectfully requests that the Court deny the Defendant's Second Motion to Dismiss in its entirety.

**RESPECTFULLY SUBMITTED** this 11th day of September, 2006.

**MERKLE SIEGEL & FRIEDRICHSEN, P.C.**

/s/ Robert J. Siegel
Robert J. Siegel, WSBA #17312
Attorneys for Plaintiff

RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS - 21

J:\RJS\CLIENTS\COLE\CAPTION.DOC